1

Joseph N. Casas [CSB No. 225800]
**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
Telephone No.: (855) 267-4457
Facsimile No.: (855) 220-9626
E-Mail: joseph@talentrights.law

2

3

4

5

6

Dennis Postiglione (*Pro Hac Vice Admission Pending*)
Texas Bar No. 24041711
**THE CASAS LAW FIRM, P.C.**
3801 N. Capital of Texas Highway
Suite E240 Box 446
Austin, Texas 78746
Telephone No.: (512) 806-7699
Facsimile No.: (855) 220-9626
E-Mail: dennis@talentrights.law
*Attorneys for Plaintiff*

7

8

9

10

11

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

13

14

15

16

17

18

19

20

21

22

23

| | |
|---|---|
| BARRY TUBB, an individual, | ) Case No.: |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) |
| PARAMOUNT PICTURES CORPORATION, a | ) **(Jury Trial Demanded)** |
| Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

24

COMES NOW Plaintiff BARRY TUBB ("Tubb" or "Plaintiff") by and through his

25

undersigned counsel, as and for his Complaint against PARAMOUNT PICTURES

26

CORPORATION, ("Paramount" or "Defendant") and respectfully alleges as follows:

27

///

28

///

- 1 -

# I.
## BACKGROUND

1.    This action is for damages and injunctive relief relating to PARAMOUNT's misappropriation and unauthorized publication of the image and likeness of PLAINTIFF. PLAINTIFF is an accomplished actor and performer who was top billed in the movie *Top Gun*, a Paramount Pictures film released in 1986. PLAINTIFF has sixth billing in the opening credits of the original *Top Gun* and the fifth individual card in the closing credits. In connection with his role as the character Lieutenant Junior Grade Henry "Wolfman" Ruth in the original *Top Gun*, PLAINTIFF contractually authorized the limited use of his Image for various purposes related <u>to only</u> the original *Top Gun* movie, released in 1986. The scope of that permission did not include the use of his Image in the sequel, *Top Gun: Maverick*, which was released in May 2022 to a worldwide audience and became one of the highest grossing movies that year and its cumulative take will make it one of the highest grossing movies of all time.[1] When PLAINTIFF entered into his contract with PARAMOUNT, movie sequels were virtually non-existent. This is to indicate that no sequel was contemplated by either PLAINTIFF or PARAMOUNT when the contract between them was entered into on June 5, 1985.

2.    Despite that, PARAMOUNT knowingly featured PLAINTIFF's Image in key scenes of the sequel, using said Image without seeking his permission and without compensation. Any person can reasonably determine that the person depicted in the *Top Gun: Maverick* movie is the PLAINTIFF when viewing his Image with the naked eye. Moreover, PLAINTIFF is represented as an individual rather than a member of a solely defined group in the referred-to scene and image. In fact, the scene, which begins with a shot of the fictional Top Gun Class of 1986, zooms into a four-shot close-up featuring Val Kilmer (Iceman), Anthony Edwards (Goose), Tom Cruise (Maverick),

---

[1] https://www.the-numbers.com/movie/Top-Gun-Maverick-(2022)#tab=summary (showing $1,468,660,704.00 revenue as of the date of this filing).

and Barry Tubb (Wolfman). This remains a four-shot close-up clearly establishing PLAINTIFF. PLAINTIFF's likeness in the scene is essential in a way that is not incidental. The Image of PLAINTIFF is used in a four-shot equal close-up with Maverick, Goose, and Iceman—all top-billed characters in the original *Top Gun*. In short, this usage was a non-incidental, knowing usage of PLAINTIFF's image without consent or compensation.

3.     As detailed below, PARAMOUNT's unauthorized use of PLAINTIFF'S Image constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for a commercial purpose; b) violation of PLAINTIFF's right to privacy, which protects a person's right to privacy and publicity; c) supplants various common law torts.

4.     PARAMOUNT's unauthorized use of PLAINTIFF's Image constitutes Statutory Misappropriation of publicity [Violation of California Civil Code § 3344]; Common Law Misappropriation of Publicity; Negligent Hiring, Supervision, and/or Retention of Employees, and Common Law Breach of Contract. PLAINTIFF is not asserting ANY copyright claims. PLAINTIFF is the owner of his Image and did not release his rights and claims for use of his Image in *Top Gun: Maverick*. He was not asked to appear in the movie, nor did he ask to appear in the movie, yet his Image was used anyway. Moreover, even if a third party owns copyright claims to the photograph used in *Top: Gun Maverick* (none does), PLAINTIFF maintains a separate and distinct right to his Image. PLAINTIFF's claims, therefore, are not preempted by Copyright Law.

5.     Also important is the fact that the original image of PLAINTIFF was removed from its original state and modified or altered by PARAMOUNT. The photograph used in *Top Gun: Maverick* is not in its original format. Assuming a copyright *did* exist, PARAMOUNT substantially

altered the image and thus *destroyed* any purported copyright.  Plaintiff's *persona* is not copyrightable and, thus, his rights of publicity are independent of any copyright.[2]

6.     PARAMOUNT misappropriated PLAINTIFF's Image and/or identity for purely self-serving commercial purposes and their own business interests.

7.     PARAMOUNT is an unapologetic, chronic, and habitual infringer.

8.     PARAMOUNT never sought consent or authority to use PLAINTIFF's Image for any purpose in *Top Gun: Maverick* and the original contract signed by PLAINTIFF and PARAMOUNT did not contemplate use of his Image beyond the original *Top Gun* or in promotions related to *Top Gun: Maverick;* a sequel not contemplated at the time of the original contract and not released until 2022, almost four decades after the original *Top Gun*.

9.     PLAINTIFF never agreed to PARAMOUNT's use of his image, likeness, and/or identity in the movie *Top Gun: Maverick*.

10.    PARAMOUNT's conduct is therefore misleading and deceptive by falsely and fraudulently representing that PLAINTIFF is somehow affiliated with *Top Gun: Maverick*; was contracted to perform in *Top Gun: Maverick*; or was hired to promote, advertise, market, or endorse *Top Gun: Maverick* on behalf of PARAMOUNT.

11.    PARAMOUNT circumvented the typical arms-length negotiation process entirely, and intentionally misappropriated the PLAINTIFF's Image. In doing so, PARAMOUNT has utterly deprived PLAINTIFF of the right and ability to negotiate the price of using his image or, ultimately, to say "no" to its use.  PARAMOUNT, one of the largest film companies in the world, was aware of the need to obtain PLAINTIFF'S permission and, upon information and belief, obtained other actors' permission for similar appearances in *Top Gun: Maverick* prior to using their images.

---

[2] *Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001); *Midler v. Ford Motor Co.* 849 F. 2d 460, 462 (9th Cir. 1988); *Waits v. Frito-Lay*, 978 F. 2d 1093, 1100 (9th Cir. 1992).

PARAMOUNT negotiated with PLAINTIFF in 1985 for the use of his image and likeness in the original *Top Gun* and its promotional materials yet failed to do so for *Top Gun: Maverick*. PARAMOUNT knew, or should have known, through diligence that PLAINTIFF's permission was required, and compensation should have been offered for the use of his Image in *Top Gun: Maverick*.

12.     PARAMOUNT prevented PLAINTIFF from engaging in arms-length negotiations regarding the terms and conditions of use of PLAINTIFF's Image, including the term of any release, remuneration per Image or use, or the ability to decline the business opportunity entirely. In short, PARAMOUNT deprived PLAINTIFF of the ability to protect his image, brand, and reputation on an unprecedented, global basis.

13.     In the end, PARAMOUNT gained--and will continue to gain--an economic windfall by using the Image of PLAINTIFF for PARAMOUNT's own commercial purposes without having to compensate PLAINTIFF for such usage.

14.     Having operated one of the world's largest and most successful movie studios PARAMOUNT is aware of the standard negotiation process over terms of use, conditions of release, licensing, and other contractual incidents related to use and exploitation of Images for PARAMOUNT's commercial benefit.  PARAMOUNT is aware of the clearances required and the vetting necessary on every movie set to confirm permission to use the image and likeness of any person in one of its movies.  PARAMOUNT ignored its obligations and PLAINTIFF was damaged as a result.

15.     Based on the above, PLAINTIFF seeks actual, punitive, and exemplary damages set forth below.

///

///

## II.
## JURISDICTION AND VENUE

16.     This Court has original federal jurisdiction pursuant to 28 U.S.C. § 1331 because PLAINTIFF has stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B). This Court also has subject matter jurisdiction because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00). This Court has supplemental jurisdiction over the California state law claims alleged herein pursuant to 28 U.S.C. § 1367.

17.     The Court also has personal jurisdiction over PARAMOUNT based on its contact with the State of California, including but not limited to PARAMOUNT's registration to conduct business in California, its physical location and principal place of business in California, and upon information and belief, committed, facilitated, assisted, encouraged, or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of California.

18.     As set forth immediately below, PLAINTIFF is, and at all times relevant to this action, has been, a professional actor, director, and entertainer residing in the State of Texas.

19.     According to publicly available records, PARAMOUNT is a Delaware Corporation with a principal place of business in Los Angeles, California.

20.     Venue is proper in the United States District Court for the Central District of California Western Division because Los Angeles County is the principal place of business for PARAMOUNT.

21.     Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in the Central District of California.

22.     The parties have minimum contacts with Los Angeles County, a significant portion of the alleged causes of action arose and accrued in Los Angeles County, California, and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominantly located in Los Angeles County.

### III.
### PARTIES

**A.      Plaintiff Barry Tubb**

23.      PLAINTIFF BARRY TUBB is an individual residing in the State of Texas.

24.      As set forth immediately below, PLAINTIFF is a well-known professional actor, director, and entertainer who has earned his livelihood in the entertainment industry over the past 40 years.

25.      PLAINTIFF was born in Snyder, Texas, in 1963.  He has appeared in over **70 movies, television shows, commercials, and Broadway performances.**  For example, he starred, co-starred, or had recurring roles in *Hill Street Blues, Top Gun, Legend of Billie Jean, Lonesome Dove, Mask, and Return to Lonesome Dove.*  He was also a World Champion Junior bull rider.  After graduating from Snyder High School in 1981, he began stage training in San Francisco. PLAINTIFF moved to Hollywood in the early 1980's to begin his screen- and television-acting career.

26.      After moving to Hollywood, PLAINTIFF initially drew attention on television, earning a role on the series *Bay City Blue*s, leading to a recurring role as a rookie cop on *Hill Street Blues*. He later received critical praise for a lead role in the social drama, *Consenting Adult*, followed by a supporting role in *Mask* and starring roles in *The Legend of Billie Jean*, *Valentino Returns*, and *Top Gun*, in which he played radar intercept officer Henry "Wolfman" Ruth. PLAINTIFF was later cast in *Billionaire Boys Club*, then as cowboy Jasper Fant in the epic western mini-series *Lonesome Dove* and in its sequel *Return to Lonesome Dove*.

27.      In 1988, PLAINTIFF also debuted on Broadway co-starring with Mary Tyler Moore and Lynn Redgrave in *Sweet Sue* by A.R. Gurney.

28.      PLAINTIFF then moved to France in the early 1990s and starred in a resurrection of *Buffalo Bill's Wild West Show*.  Returning to the United States, he continued his successes, writing,

producing, directing, and starring in the family fare feature *Grand Champion*, starring Emma Roberts in her first lead role. He also starred, directed, produced and co-wrote the western *Blood Trail*; wrote and directed the comedy *Clown Hunt*; starred in *Baghdad Texas*; directed and produced the horror opus *Javelina*; and starred in the romantic dramedy *Dear Sidewalk*, the crime thriller *Two Step*, and the critically acclaimed biopic *Temple Grandin*, alongside Claire Danes. He also starred in a recurring role in seasons four and five on the television series *Friday Night Lights* and had a recurring role in the television series *Revolution*.

29.     PLAINTIFF was also Executive Producer on the award-winning documentary on the Discovery Channel *Moon of the Desperados* and directed *Suberbull '91* for HSE Sports.

30.     To this day, PLAINTIFF continues to write, perform, and direct. He will be seen in the upcoming film *Daisy* in 2024.

**B.     Defendant Paramount Pictures**

31.     According to publicly available records, PARAMOUNT is a Delaware company with its principal place of business in the State of California and in the district where this lawsuit is filed.

32.     According to its website, PARAMOUNT "delivers premium content to audiences across platforms worldwide."[3]     It connects with billions of people—through its studios, networks, streaming services, live events, merchandise and more. PARAMOUNT purports to create content for all audiences, across every genre and format. (*Id.*). It has a global reach of more than 4.3 million subscribers in more than 180 countries. (*Id.*). In Paramount's Business Conduct Statement, its *Bible*, PARAMOUNT encourages its leaders and managers to "know the rules. Be aware of laws, regulations, policies, procedures, and processes pertinent to your responsibilities."[4]     PARAMOUNT instructs its leaders and managers to "empower your teams by ensuring that they have the

---

[3] https://www.paramount.com/about

[4] Exhibit E, *Paramount Global Business Conduct Statement*, p. 1.

- 8 -

knowledge, training, and resources necessary to follow the law, this Statement and Paramount policies and procedures." (*Id.*). It demands that its leadership "foster an atmosphere where employees feel comfortable approaching you with behavioral and compliance-related questions (seeking assistance, if required, from a more senior person, HR or the Legal Department)." (*Id.*). Finally, PARAMOUNT admonishes its leaders to be aware that "you set the expectations and tone for employees who report to you; we therefore expect you to be visibly engaged" to "promote a culture of integrity and legal compliance through personal leadership." (*Id.*).

**IV.**
**FACTUAL ALLEGATIONS**

33.     On June 5, 1985, a 22-year-old Barry Tubb entered into a Memorandum of Agreement with Paramount Pictures Corporation to appear in the "Picture" named "Top Gun" in the role of "Wolfman".[5]  In the Agreement, "Picture" is defined as "the motion picture 'Top Gun'."  The term "Picture" is used throughout the entire Agreement in its singular form.  In no place in the Agreement is the word "sequel" mentioned or contemplated.  In fact, "Picture" is never used in its plural form throughout the Agreement and no reasonable interpretation of the Agreement leads to the conclusion that PLAINTIFF was signing away Image rights for an unwritten, uncontemplated sequel to be released in 2022, much less into perpetuity.  In fact, the riders used in the agreement were taken from boilerplate forms created in April of 1975 and August of 1976, well before sequels were commonplace in Hollywood.

34.     In that stand alone agreement, it is patently clear that PLAINTIFF agreed to render his services as an actor in the 1986 movie *Top Gun* only. The services obtained for consideration by PARAMOUNT included principal photography, filming, post-production, looping and/or dubbing, and other services required to complete and promote the Picture. PLAINTIFF was paid a base rate

---

[5] Exhibit A, *Memorandum of Agreement*.

in weekly installments and then an overage rate of compensation in addition to being entitled to residual pay into perpetuity.

35. As mentioned above, attached to the Agreement after the signature page was an unsigned "Rider to Additional Terms and Conditions" with boilerplate pages dated April 1, 1975, and August 25, 1976. In that Rider, the Parties agreed that PLAINTIFF's "services are special, unique, unusual, extraordinary, and of an intellectual character giving them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law and that [PARAMOUNT], in the event of any breach by the [PLAINTIFF], shall be entitled to equitable relief by way of injunction or otherwise."

36. The Rider states that:

> [PARAMOUNT] shall be the sole and exclusive owner of all results and proceeds of [PLAINTIFF]'s services, including, without limitation, all literary and musical material, designs, and inventions of [PLAINTIFF] hereunder, for all purposes ***in connection with the distribution, advertising, and exploitation of the Picture*** or any part thereof. [PLAINTIFF] acknowledges and agrees that [PARAMOUNT] will be the sole and exclusive owner of all rights in the role or character portrayed by [PLAINTIFF], including name, likeness and distinctive characterizations thereof, and the right to merchandise and exploit such role or character, and the right to use [PLAINTIFF]'s name and likeness in connection therewith, and [PLAINTIFF] shall have no right at any time to portray, exploit, merchandise or make any use of such role or character portrayed by [PLAINTIFF]. [PARAMOUNT] shall have the right to use and permit others to use [PLAINTIFF]'s name, photograph, likeness, voice (or simulation thereof) and biography ***in connection with advertising, publicizing and exploiting the Picture . . . .***[6]

37. In 2020, PLAINTIFF became aware through friends and associates in Hollywood that a sequel to the original 1986 movie *Top Gun* was in the works. Despite his on-screen credit[7] and his key role in the original, PLAINTIFF was not contacted by anyone from PARAMOUNT or by any third-party purporting to work with PARAMOUNT to appear in *Top Gun: Maverick*. At no time

---

[6] Exhibit A, p. 6, para. A (emphasis added).

[7] Exhibit B, *Image from Top Gun featuring Tubb's fifth card from ending credit.*

was he consulted regarding the use of his Image in Top *Gun: Maverick*. PLAINTIFF was not consulted by PARAMOUNT or any representative of PARAMOUNT regarding the use of his Image in *Top Gun: Maverick*, nor did PLAINTIFF request involvement in the movie.

38.     When *Top Gun: Maverick* was released in May of 2022, PLAINTIFF immediately began receiving text and phone messages from friends and acquaintances about seeing him in the movie. In July of 2022, PLAINTIFF returned from an extended trip to Europe and viewed the movie *Top Gun: Maverick* in a New York City theater. PLAINTIFF confirmed the unauthorized use of his Image in *Top Gun: Maverick*. As dialogue is being spoken, a shot of the fictional Top Gun Class of 1986, the doctored original photograph, focuses solely on the four-shot, full-screen close-up featuring Val Kilmer (Iceman), Anthony Edwards (Goose), Tom Cruise (Maverick), Barry Tubb (Wolfman), and eventually to a four-shot partial close-up of PLAINTIFF after he has been established by the prior close-up. Specifically, in this four-shot close-up, approximately 40 minutes into the movie, the character "Hangman" is looking at the image on the wall and says to "Coyote", "[t]ake a look at this. The man, the legend."  "Coyote" responds, "[t]here he is."  "Hangman" responds, "[n]o, no, no, next to him." This shot occurs while two of the movie's main characters, Hangman (Glen Powell) and Coyote (Tarzan Davis), discover that Bradley "Rooster" Bradshaw (Miles Teller) is the surviving son of Maverick's deceased Radar Intercept Officer, Nicholas "Goose" Bradshaw, played by Anthony Edwards in the original movie.  This is the most pivotal scene in the movie and a key turning point in the plot.[8]

39.     Upon investigation, PLAINTIFF discovered that the image used in the sequel was altered from a behind-the-scenes photograph taken of the original *Top Gun* actors and the actual U.S. Navy, non-actor, military pilots and consultants who trained the actors and consulted on the original movie.  This image was not, in fact, used in the original *Top Gun*; rather, it was a behind-

---

[8] Exhibit D, Screenshot.

the-scenes shot taken by famed photographer Herb Ritts in connection with the United States Navy members who flew in and consulted on the movie. The image was altered by PARAMOUNT and then featured in *Top Gun: Maverick*.[9] The original was an interior shot in front of a gray scrim featuring actors and United States Navy pilots in the original *Top Gun*. The image was altered to depict an exterior location, the Top Gun logo was added behind it, and it was significantly cropped in the offending scenes. Any purported copyright was destroyed by this alteration.

40.    While PLAINTIFF did, in fact, agree to the use of his image as the "Wolfman" character in the original *Top Gun* <u>in connection with the distribution, advertising and exploitation of the Picture</u> [*Top Gun*] <u>only</u>, he did not agree to the use of an off-camera, behind-the-scenes photograph featuring Barry Tubb, Tom Cruise, Anthony Edwards, Val Kilmer, and others to be used in a pivotal scene in *Top Gun: Maverick*. In fact, in the original image, although PLAINTIFF can be seen wearing Wolfman's signature cowboy hat, he is also wearing a red bandana around his neck and his personal watch.[10] The watch and bandana are not part of the "costume" he wore as Wolfman in *Top Gun*, unlike the signature cowboy hat. In short, the image of PLAINTIFF is not one featuring him in costume as a fictional character among other fictional characters; rather, it is a personal picture of him, his fellow stars, and the behind-the-scenes U.S. Navy members who consulted on *Top Gun*, and, as such, it is not an expression protected by the First Amendment.

41.    It is not normal for any performer to be expected to give up publicity rights in one contract (in perpetuity, no less) for "the Picture" allowing a studio such as PARAMOUNT to transfer his rights to another completely different film made and released almost four decades after the original. Under no circumstances is that a reasonable interpretation of the Agreement entered by PLAINTIFF and PARAMOUNT in 1985.

---

[9] <u>Exhibit C</u>, Original Image.

[10] *See* Tubb in <u>Exhibit C & D</u>.

42.     Moreover, Paragraph 10 states that the Agreement is the "entire agreement."  There is no mention of any sequel, and the term "Picture" is used in its singular form and defined in Paragraph 1 as "*TOP GUN*."   Moreover, it would be disingenuous to say that a sequel was implied or discussed with PLAINTIFF in 1985.  After all, there was no way to predict the success of the original movie.  Indeed, the sequel was neither made nor released until decades after the original. Additionally, the Agreement states that any modification of the Agreement (for example, extending the terms of the Agreement to apply to a sequel) would require "a written instrument signed by each party."[11]  No such instrument exists.

43.     By using PLAINTIFF's Image to promote a totally separate picture (*Top Gun: Maverick*) nearly four decades after "the Picture", PARAMOUNT violated the terms of the Agreement because it did not obtain PLAINTIFF's approval to exploit his Image in "a written instrument signed by each party" as required by Paragraph 10.

44.     Under the terms of the Agreement PARAMOUNT owned "Wolfman" and the right to exploit him for *Top Gun*, but NOT for *Top Gun: Maverick* or any other film for that matter. Moreover, PARAMOUNT certainly did not bargain for the use of a personal picture of Barry Tubb to be used in *Top Gun* or any sequel. If PARAMOUNT wanted that right, PLAINTIFF's consent was required. Any right secured by PARAMOUNT in the Agreement was specifically tied to and limited to *Top Gun*, or "the Picture."

45.     Moreover, even if PLAINTIFF released every conceivable legal right he could assert with respect to his identity, image, or the Wolfman character, he released it only "*in connection with the distribution, advertising and exploitation of the Picture*" and not a sequel released decades later. PLAINTIFF's Image was placed into play without his permission in a pivotal scene in *Top Gun: Maverick* in an altered image of him that was not featured in the original *Top Gun*.

---

[11] Exhibit A, para 10.

46.    There is no question that PARAMOUNT or parties acting on its behalf, including but not limited to the Producers, Executive Producers, and Associate Producers on the project, misappropriated the Image of PLAINTIFF for the purpose of using the PLAINTIFF's Image for the value associated with it.  PLAINTIFF is internationally known for his career in television, stage, and film. PLAINTIFF is easily identifiable at a glance, in particular, as Wolfman wearing his signature cowboy hat. Moreover, PARAMOUNT undoubtedly received a benefit from its unauthorized use of the PLAINTIFF's Image. PLAINTIFF suffered damages because of PARAMOUNT's conduct.

47.    PLAINTIFF is informed and believes and, on such information, this belief alleges that certain third parties now and at all times mentioned herein were the agents and or employees of PARAMOUNT responsible for creating, curating, and maintaining PARAMOUNT movies, promotions, and advertising, including *Top Gun: Maverick*.  This includes individuals responsible for clearing the use of the Image of any individual used in its movies and the compensation of these individuals, including PLAINTIFF.  Thus, in doing the acts alleged herein, these individuals were acting within the course and scope of said agency, service, and/or employment as well as acting with the permission, ratification, and consent of PARAMOUNT.

48.    PLAINTIFF is informed and believes, and thereon alleges, that at all times mentioned herein, these currently unknown third parties were the agents, servants, employees, joint venturers, partners, subsidiaries, and/or co-conspirators of PARAMOUNT and were involved in the making, production, and promotion of *Top Gun: Maverick.*  In performing or failing to perform the acts herein alleged, each person was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary and/or conspiracy, and each currently unknown third party and PARAMOUNT ratified and affirmed the acts and omissions of each other.

49.     PLAINTIFF is further informed and believes that PARAMOUNT, in taking the actions alleged herein and/or ratifying the actions alleged herein, acted within the course and scope of such authority and, at the same time, for its own financial and individual advantages, as well as in the course and scope of such employment, agency, and as an alter ego therein.

## V.
## PARAMOUNT'S MISUSE OF PLAINTIFF'S IMAGE

**A. Paramount Pictures**

50.     PLAINTIFF is informed and believes, and on that basis alleges that PARAMOUNT holds itself out and has held itself out to be one of the world's largest film producers selling its titles in theaters, streaming services, retail and rental markets, on-line, and mail-order sites and in any other place where motion pictures are available. In addition, PARAMOUNT distributes its films to cable and satellite channels and offers pay-per-view access via satellite and via Internet.

51.     PARAMOUNT uses a variety of advertising, marketing, and promotional techniques to lure patrons to its content, including, but not limited to, flyers, billboards, newspaper advertisements, and through the internet (including its website and various social media accounts and platforms).

52.     PARAMOUNT's policies and procedures call for:

"Respecting intellectual property rights . . .We treat the intellectual property rights of others with the same respect that we hope and ask others to pay to our own intellectual property rights.

Why it matters . . .As a company with significant intellectual property assets that we vigorously protect, **_we are highly respectful of the intellectual property rights of others._** We recognize that acts of piracy and other types of infringement not only impact our bottom line but also have negative impacts on the economy as a whole. In addition to being illegal, such acts result in loss of jobs, wages and revenue. These losses affect us individually, as well as our friends and colleagues. **_We each have a responsibility to refrain from any activity that violates the intellectual property rights of anyone, including Paramount._**

What's included in intellectual property? Intellectual property includes, among other things, copyrights, patents, **_rights of publicity, rights of privacy, rights to reputation_**

(i.e., right not to be defamed), open-source licensing, service marks, trademarks, and trade secrets.

Respecting intellectual property rights. . . Examples of intellectual property infringement:

○ ***Uploading, downloading, streaming, emailing or otherwise distributing music, movies, television shows, books, articles, software, photographs, interactive games, or other copyrighted materials without first obtaining permission to do so from the relevant rights holder(s).***

○ ***Duplicating, distributing, selling or performing the intellectual property of others without first obtaining permission from the relevant right holder(s).***

○ ***Developing or producing new material such as music, movies, television shows, books, articles, software, interactive games or photographs using/incorporating/or otherwise based on the intellectual property of others without first obtaining permission from the relevant rights holder(s) or otherwise securing approval from the Legal Department***.[12]

53.     PLAINTIFF is informed and believes, and on that basis alleges that PARAMOUNT at all times promotes its business by and through the use of various other advertising and marketing its movies, including *Top Gun: Maverick*.   As further described below, PARAMOUNT misappropriated and used the Image of the PLAINTIFF in the movie *Top Gun: Maverick*.

54.     PARAMOUNT misappropriated PLAINTIFF's Image and placed it into the movie *Top Gun: Maverick*. The Image of PLAINTIFF was deliberately positioned to create the false impression with the public that he either worked for PARAMOUNT or that he endorsed *Top Gun: Maverick*.

55.     As of the date of filing this Complaint, the Image remains in *Top Gun: Maverick* and continues to be re-published with each showing of the movie on a global basis. PLAINTIFF discovered that PARAMOUNT knowingly and without prior consent (and in violation of California

---

[12] Exhibit E, *Paramount Global Business Conduct Statement*, p. 38 (emphasis added).

Civil Code § 3344 as well as in violation of common law) invaded PLAINTIFF's publicity rights by using his Image in *Top Gun: Maverick*.

56.     PLAINTIFF is informed and believes and, on such information, alleges that at all times mentioned herein PARAMOUNT, via itself, its agents, or third parties at its direction and/or control are responsible for misappropriating the PLAINTIFF's Image and using it in *Top Gun: Maverick* in direct violation of California Civil Code § 3344 and or common law.

57.     At no time did PLAINTIFF, or any third party acting on his behalf, grant permission to PARAMOUNT to use his Image to benefit PARAMOUNT's businesses, services, and or companies in the movie *Top Gun: Maverick*.

58.     PARAMOUNT never paid the PLAINTIFF anything to use his Image in *Top Gun: Maverick* or its associated promotions and marketing.

59.     PARAMOUNT never contacted PLAINTIFF (directly or indirectly) to request his permission to use the Image.

60.     PARAMOUNT misappropriated PLAINTIFF's Image and in doing so violated the PLAINTIFF's right to publicity as protected under common law and California Civil Code § 3344.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF

61.     PLAINTIFF realleges and incorporates by reference paragraphs 1 through 60 inclusive, as though fully set forth herein. By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between the PLAINTIFF and PARAMOUNT regarding whether, pursuant to the Memorandum of Agreement, PARAMOUNT has the right to merchandise and exploit such role or character, and the right to use PLAINTIFF's Image in connection with *Top Gun: Maverick*.[13]

---

[13] Exhibit A, p. 6, para. A (emphasis added).

62.     By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between the PLAINTIFF and PARAMOUNT regarding whether, pursuant to the Memorandum of Agreement, PARAMOUNT has the right to use and permit others to use PLAINTIFF's name, photograph, likeness, or voice (or simulation thereof) in connection with advertising, publicizing, and exploiting *Top Gun: Maverick*.

63.     PLAINTIFF contends that the Memorandum of Agreement applies solely to the original *Top Gun* and not its sequel.

64.     PLAINTIFF contends that the use of his image in the movie *Top Gun: Maverick* was not incidental, nor was it a protected First Amendment usage.

65.     PLAINTIFF therefore desires a judicial determination that the use of his image in the 2022 sequel, *Top Gun: Maverick* does not include the usage rights PLAINTIFF agreed to surrender in the Memorandum of Agreement applicable to *Top Gun*.

66.     PLAINTIFF further desires a judicial determination that PARAMOUNT does not have any rights to make, exploit, or distribute his image in *Top Gun: Maverick* or any other derivative work based in whole or in part on *Top Gun.*

67.     A declaration of the Court is necessary and appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., so that PLAINTIFF may ascertain his rights with respect to *Top Gun: Maverick* and any future derivative works based in whole or in part on it.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Association)

68.     PLAINTIFF hereby repeats and **realleges** each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     The provisions of the Lanham Act, 215 U.S.C. §1125, et seq. apply to PARAMOUNT, and protect PLAINTIFF from the conduct described herein. PARAMOUNT used

PLAINTIFF's Image, *inter alia*, to create the false impression with the public that PLAINTIFF either worked for or was associated with PARAMOUNT or endorsed PARAMOUNT's movie *Top Gun: Maverick*. This was done to promote and attract moviegoers, and thereby generate revenue for PARAMOUNT.

70.     Thus, this was done in furtherance of PARAMOUNT's commercial benefit.

71.     Despite the fact that PARAMOUNT was at all times aware that the PLAINTIFF neither worked at, nor endorsed PARAMOUNT or agreed to appear in *Top Gun: Maverick*, PARAMOUNT, nevertheless used PLAINTIFF's Image to mislead potential customers as to PLAINTIFF's employment at and/or affiliation with PARAMOUNT.

72.     PARAMOUNT knew or should have known that its use of PLAINTIFF's Image would cause consumer confusion as to PLAINTIFF's sponsorship and/or employment by PARAMOUNT.

73.     PLAINTIFF is in the business of commercializing his identity and selling his Image and acting talents to reputable brands and companies for profit. PARAMOUNT's customers are the exact demographic that view PLAINTIFF's images in movies and television productions. By virtue of PLAINTIFF's use of his Image and identity to build his brand, PLAINTIFF has acquired a distinctiveness through secondary meaning. PLAINTIFF's Image either suggests the basic nature of his product or service, identifies the characteristic of his product or service, or suggests the characteristics of his product or service that requires an effort of the imagination by the consumer to be understood as descriptive. As such, PLAINTIFF's brand – the reason clients seek to hire him – is unique in that it is encompassed in PLAINTIFF's identity, *i.e.*, his persona.

74.     PLAINTIFF and PARAMOUNT compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

75.        Upon information and belief, PARAMOUNT's use of PLAINTIFF's Image did in fact cause consumer confusion as to PLAINTIFF's employment at and/or endorsement of PARAMOUNT, and the goods and services provided by PARAMOUNT, including *Top Gun: Maverick*.

76.        Due to PARAMOUNT's unauthorized use of PLAINTIFF's Image to create a false endorsement prohibited by section 43 of the Lanham Act, PLAINTIFF has been damaged in an amount to be determined at trial, but in all events, not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### STATUTORY MISAPPROPRIATION OF PUBLICITY
### [Violation of California Civil Code § 3344]

77.        PLAINTIFF hereby repeats and **realleges** each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.        PLAINTIFF discovered that PARAMOUNT was knowingly and without PLAINTIFF's consent invading the publicity rights of PLAINTIFF by using his Image in *Top Gun: Maverick*, based upon information and belief.

79.        In the Image used by PARAMOUNT, PLAINTIFF is readily identifiable in that any person seeing the photographs with the naked eye can reasonably determine that the individual depicted is PLAINTIFF (as specifically identified above; and is hereby incorporated by reference). PLAINTIFF's face and body are shown in each photograph, and he is clearly lighted and readily distinguishable. PLAINTIFF has identified himself as depicted in the Exhibits attached to this Complaint.

80.        PARAMOUNT knowingly used PLAINTIFF's Image without his permission. PARAMOUNT knowingly did so to promote *Top Gun: Maverick*. PARAMOUNT's actions and conduct were in violation of California Civil Code § 3344.

81.     PARAMOUNT's use of PLAINTIFF's Image did not occur in connection with news, public affairs, a sports broadcast or account, or with a political campaign.

82.     In addition, at no point in time did PLAINTIFF, or anyone acting on his behalf, give PARAMOUNT or any third-party consent to use the PLAINTIFF's Image in any manner at all in association with *Top Gun: Maverick*.  PLAINTIFF expects to be paid for the use of his Image. PARAMOUNT did not pay PLAINTIFF for the use of his Image.

83.     PARAMOUNT's use of the PLAINTIFF's Image was directly connected to PARAMOUNT's commercial purposes. PARAMOUNT is the nexus between the use of the Image and the intended commercial purpose, which is evident in the manner the Image was used. PARAMOUNT intended to make it appear that the PLAINTIFF was either an employee of PARAMOUNT or endorsed *Top Gun: Maverick*. As such, PARAMOUNT knew it would gain and did gain a commercial benefit and other advantages by using the PLAINTIFF's Image.

84.     The publicity interests of PLAINTIFF outweigh the public interest served by PARAMOUNT's use of PLAINTIFF's Image. Here, there was no public interest attached to PLAINTIFF for PARAMOUNT's violation of California laws.

85.     As a direct and proximate result of PARAMOUNT's conduct and misappropriation of PLAINTIFF's Image, PARAMOUNT made profits or gross revenues from said misappropriation. Thus, the PLAINTIFF has been harmed.

86.     PARAMOUNT's conduct was a substantial factor in causing the PLAINTIFF's harm, injuries, and damages. Said injuries and damages include (but are not limited to) the following: the unauthorized use of the PLAINTIFF's Image has damaged PLAINTIFF with respect to the right to control the commercial exploitation of his Image (in an amount to be established by proof at trial); the value of the PLAINTIFF's Image has been diluted due to PARAMOUNT's unauthorized use of the PLAINTIFF's Image; profits or gross revenues that PARAMOUNT received from the unauthorized use; attorneys' fees; and costs of this lawsuit. Said number of

damages will be established by proof at trial; but damages are within the jurisdiction of this Court and in excess of $75,000.00.

87.     In making commercial use of and misappropriating PLAINTIFF's Image and associating the PLAINTIFF with PARAMOUNT's business, PARAMOUNT knew that the use was unauthorized.  Nonetheless, PARAMOUNT intentionally used the Image for its own financial gain in knowing and with reckless disregard of the PLAINTIFF's rights.

**FOURTH CAUSE OF ACTION**
**COMMON LAW MISAPPROPRIATION OF PUBLICITY**

88.     PLAINTIFF hereby repeats and **realleges** each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     PARAMOUNT misappropriated PLAINTIFF's Image. PARAMOUNT did so to promote PARAMOUNT and *Top Gun: Maverick*.

90.     PARAMOUNT's misappropriation of PLAINTIFF's Image was to PARAMOUNT's commercial advantage. PARAMOUNT's conduct misappropriated the PLAINTIFF's Image for PARAMOUNT's purely commercial advantage in that the use of the PLAINTIFF's Image in connection with *Top Gun: Maverick* was for the commercial marketing and promoting of *Top Gun: Maverick*.  PARAMOUNT is the nexus between the use of the Image and the intended commercial purpose, which is evident in the manner PLAINTIFF's Image was used. PARAMOUNT intended to make it appear that the PLAINTIFF was either an employee of PARAMOUNT or endorsed *Top Gun: Maverick*. The misappropriation of PLAINTIFF's Image was for PARAMOUNT's pecuniary advantage.

91.     At no point in time did PLAINTIFF or anyone on his behalf give PARAMOUNT consent to use his Image in any manner at all in connection with *Top Gun: Maverick*. As such, PARAMOUNT lacked consent to use the PLAINTIFF's Image.

92.     PLAINTIFF expects to be paid for the use of his Image.

93.     PARAMOUNT invaded the PLAINTIFF's publicity rights by exploiting his Image when PARAMOUNT published his Image in connection with *Top Gun: Maverick*. PARAMOUNT continues to publish PLAINTIFF's Image.

94.     PARAMOUNT's continuous misappropriation of PLAINTIFF's Image that promotes and markets PARAMOUNT and *Top Gun: Maverick* (as set forth above) reasonably implies that the PLAINTIFF consented and continues to consent to having his Image used in promoting, endorsing, and or marketing PARAMOUNT and *Top Gun: Maverick*. But PLAINTIFF did not consent to this use.

95.     PARAMOUNT did not pay PLAINTIFF for the use of his Image.

96.     PLAINTIFF has been damaged by PARAMOUNT's widespread unauthorized commercial use of the PLAINTIFF's Image (in an amount to be proven at trial).

97.     PLAINTIFF is further informed and believes and herein alleges that discovery will prove that PARAMOUNT **republicized** and continues to publish PLAINTIFF's Image through the filing of this Complaint.

98.     PLAINTIFF is informed and believes and herein alleges that PARAMOUNT's republication of PLAINTIFF's Image and likeness reached a substantially new audience with each republication.

99.     As a direct and proximate result of PARAMOUNT's conduct and misappropriation of the PLAINTIFF's Image, PARAMOUNT made profits or gross revenues. As such, PLAINTIFF suffered harm.

100.    PARAMOUNT's conduct was a substantial factor in causing the PLAINTIFF's harm, injuries, and damages. Said injuries and damages include (but are not limited to) the following: the unauthorized use of PLAINTIFF's Image has damaged PLAINTIFF with respect to the right to control the commercial exploitation of his Image (in an amount to be established by proof at trial); profits or gross revenues that PARAMOUNT received from the unauthorized use; and restitution.

Said number of damages will be established by proof at trial; but damages are within the jurisdiction of this Court and in excess of $75,000.00.

101.   In making commercial use of the Images and associating PLAINTIFF's Image with PARAMOUNT's business, PARAMOUNT knew that the use was unauthorized.   Nonetheless, PARAMOUNT intentionally used the Images for its own financial gain in knowing and with reckless disregard of PLAINTIFF's rights.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT HIRING, SUPERVISION, AND OR RETENTION OF EMPLOYEES AND AGENTS**

102.   PLAINTIFF hereby repeats and **realleges** each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103.   PLAINTIFF alleges that he was harmed by PARAMOUNT employees, agents, and/or servants and that PARAMOUNT is responsible for that harm because PARAMOUNT negligently hired, supervised, and/or retained its employees, agents, and/or servants. PARAMOUNT, including its employees, agents, and/or servants misappropriated PLAINTIFF's Image and used the Image without his permission. PLAINTIFF did not provide any consent to PARAMOUNT any of the PARAMOUNT's employees, agents, and/or servants to use his Image. However, PARAMOUNT, including its employees, agents, and/or servants used PLAINTIFF's Image to directly advertise, market, and or promote *Top Gun: Maverick* solely for financial gain.

104.   These employees, agents, and/or servants include, but are not limited to the Producers, Executive Producers, and Associate Producers of *Top Gun: Maverick*, all of whom bear the responsibility to properly secure all permissions necessary for the use of any image in *Top Gun: Maverick,* including PLAINTIFF's Image.  Discovery in this matter has not begun; however, PLAINTIFF is informed and alleges upon belief that the following persons served as PARAMOUNT's employees, agents, and/or servants on *Top Gun: Maverick*.

///

Jerry Bruckheimer

Tom Cruise

David Ellison

Christopher McQuarrie

John K. Campbell

Emily Cheung

Dana Goldberg

Don Granger

Tommy Harper

Chad Oman

Mike Stenson

105.     PLAINTIFF alleges that PARAMOUNT employees, agents, and/or servants were unfit and/or incompetent to perform the work for which they were hired.  Based upon information and belief, PLAINTIFF alleges that PARAMOUNT's employees, agents, and/or servants named above and some of whose names are currently unknown at this time) did not have the proper background and or did not have the proper experience to properly and adequately perform the job duties and responsibilities that are required in order to ensure that the advertising, marketing, and or promoting of *Top Gun: Maverick* were properly carried out and were not in violation of any laws such as the violation of laws alleged in this Complaint.

106.     PLAINTIFF further alleges that PARAMOUNT negligently failed to supervise employees, agents, and/or servants named above and some of whose names are currently unknown at this time of PARAMOUNT in performing said job duties and responsibilities, which include but are not limited to providing the necessary training relating to advertising, marketing, and or promoting, especially as it pertains to the use of images in international films.

107.     PLAINTIFF alleges that PARAMOUNT knew or should have known that its employees, agents, and/or servants named above and some of whose names are currently unknown

at this time were unfit and or incompetent and that this unfitness and or incompetence created a particular risk to others.

108.    Based upon information and belief, PLAINTIFF alleges that PARAMOUNT was aware that its employees, agents, and/or servants named above and some of whose names are currently unknown at this time lacked the knowledge, expertise, and training to handle the advertising, marketing, and or promoting of *Top Gun: Maverick*.

109.    PLAINTIFF alleges that PARAMOUNT, its employees, agents, and/or servants named above and some of whose names are currently unknown at this time harmed PLAINTIFF.

110.    Based upon information and belief, PLAINTIFF alleges PARAMOUNT uses a variety of advertising, marketing, and promotional techniques to lure patrons to its movies, including, but not limited to, flyers, billboards, newspaper advertisements, and through the Internet including their website and various social media accounts and platforms.

111.    Based upon information and belief, PLAINTIFF alleges PARAMOUNT's policies and procedures call for:

> Respecting intellectual property rights . . .We treat the intellectual property rights of others with the same respect that we hope and ask others to pay to our own intellectual property rights.
>
> Why it matters . . .As a company with significant intellectual property assets that we vigorously protect, ***we are highly respectful of the intellectual property rights of others.*** We recognize that acts of piracy and other types of infringement not only impact our bottom line but also have negative impacts on the economy as a whole. In addition to being illegal, such acts result in loss of jobs, wages and revenue. These losses affect us individually, as well as our friends and colleagues. ***We each have a responsibility to refrain from any activity that violates the intellectual property rights of anyone, including Paramount.***
>
> What's included in intellectual property? "Intellectual property" includes, among other things, copyrights, patents, ***rights of publicity, rights of privacy, rights to reputation*** (i.e., right not to be defamed), open-source licensing, service marks, trademarks and trade secrets.
>
> Respecting intellectual property rights. . . Examples of intellectual property infringement:

- ○ ***Uploading, downloading, streaming, emailing or otherwise distributing music, movies, television shows, books, articles, software, photographs, interactive games, or other copyrighted materials without first obtaining permission to do so from the relevant rights holder(s).***

- ○ ***Duplicating, distributing, selling or performing the intellectual property of others without first obtaining permission from the relevant right holder(s).***

- ○ ***Developing or producing new material such as music, movies, television shows, books, articles, software, interactive games or photographs using/incorporating/or otherwise based on the intellectual property of others without first obtaining permission from the relevant rights holder(s) or otherwise securing approval from the Legal Department.***[14]

112.    PLAINTIFF alleges that PARAMOUNT's negligence in hiring, supervising, and or retaining its employees, agents, and/or servants named above and some of whose names are currently unknown at this time was a substantial factor in causing PLAINTIFF's harm.  Said number of damages will be established by proof at trial; but damages are within the jurisdiction of this Court and in excess of $75,000.00.

## SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT

113.    There are four standard elements required to establish a claim for breach of contract in California: (i) the existence of a valid contract, (ii) the plaintiff's performance or excuse for nonperformance, (iii) the PARAMOUNT's breach of contract, and (iv) resulting damages.

114.    On June 5, 1985, PLAINTIFF entered into a Memorandum of Agreement with PARAMOUNT to appear in the "Picture" named "Top Gun" in the role of "Wolfman".[15]   In the Agreement, "Picture" is defined as "the motion picture 'Top Gun'". The term "Picture" is used throughout the entire Agreement in its singular form.  In no place is a sequel contemplated or mentioned.  In fact, "Picture" is never used in its plural form throughout the Agreement and no

---

[14] Exhibit E, *Paramount Global Business Conduct Statement*, p. 38 (emphasis added).
[15] Exhibit A, *Memorandum of Agreement*).

reasonable interpretation of the Agreement leads to the conclusion that PLAINTIFF was signing away his image rights into perpetuity much less into perpetuity for a sequel released in 2022.

115.    In that stand alone agreement, it is patently clear that PLAINTIFF agreed to render his services as an actor in the movie *Top Gun* only. The services obtained for consideration by PARAMOUNT included principal photography, filming, post-production, looping and/or dubbing, and other services required to complete and promote the Picture. PLAINTIFF was paid a base rate in weekly installments and then an overage rate of compensation in addition to being entitled to residual pay.

116.    Attached to the Agreement after the signature page was an unsigned "Rider to Additional Terms and Conditions" with pages dated 1975 and 1976.  In that Rider, the Parties agreed that that PLAINTIFF's "services are special, unique, unusual, extraordinary, and of an intellectual character giving them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law and that [PARAMOUNT], in the event of any breach by the [PLAINTIFF], shall be entitled to equitable relief by way of injunction or otherwise."

117.    The Rider states that:

> [PARAMOUNT] shall be the sole and exclusive owner of all results and proceeds of [PLAINTIFF]'s services, including, without limitation, all literary and musical material, designs, and inventions of [PLAINTIFF] hereunder, for all purposes ***in connection with the ·distribution, advertising and exploitation of the Picture*** or any part thereof. [PLAINTIFF] acknowledges and agrees that [PARAMOUNT] will be the sole and exclusive owner of all rights in the role or character portrayed by [PLAINTIFF], including name, likeness and distinctive characterizations thereof, and the right to merchandise and exploit such role or character, and the right to use [PLAINTIFF]'s name and likeness in connection therewith, and [PLAINTIFF] shall have no right at any time to portray, exploit, merchandise or make any use of such role or character portrayed by [PLAINTIFF]. [PARAMOUNT] shall have the right to use and permit others to use [PLAINTIFF]1s name, photograph, likeness, voice (or simulation thereof)

and biography ***in connection with advertising, publicizing and exploiting the Picture. . . .***[16]

118.     In 2020, PLAINTIFF became aware through friends and associates in Hollywood that a sequel to the original *Top Gun* was in the works. Despite his on-screen credit[17] and his key role in the original, PLAINTIFF was not contacted by anyone from PARAMOUNT or by any third-party purporting to work with PARAMOUNT to appear in *Top Gun: Maverick*.  At no time was he consulted regarding the use of his Image in the movie. He was not consulted by any PARAMOUNT or any representative of PARAMOUNT regarding the use of his Image in *Top Gun: Maverick*.

119.     PLAINTIFF fully performed every obligation he had under his contract with PARAMOUNT.

120.     Paragraph 10 states that the Agreement is the "entire agreement". There is no mention of any sequel, and, as mentioned earlier in this Complaint, the term "Picture" is used in its singular form and defined in Paragraph 1 as "*TOP GUN*." Additionally, the Agreement states that any modification of the Agreement (for example, extending the terms of the Agreement to apply to a sequel decades away) would require "a written instrument signed by each party."

121.     By using PLAINTIFF's Image to promote a totally separate picture (*Top Gun: Maverick*) PARAMOUNT has breached the terms of the Agreement because it did not obtain PLAINTIFF's approval to exploit his Image in "a written instrument signed by each party" as required by Paragraph 10.[18]

122.     Under the terms of the Agreement PARAMOUNT owned "Wolfman" and the right to exploit him for *Top Gun*, but NOT for *Top Gun: Maverick* or any other film for that matter. PARAMOUNT did not bargain for the use of a personal picture of PLAINTIFF, Barry Tubb, to be

---

[16] Exhibit A, p. 6, para. A (emphasis added).

[17] Exhibit B, *Image from Top Gun featuring Tubb's fifth card from ending credit.*

[18] Exhibit A, para 10.

used in *Top Gun* or any sequel. If PARAMOUNT wanted that right, PLAINTIFF's consent was required.  Any right secured by PARAMOUNT in the Agreement was specifically tied to and limited to *Top Gun*, or "the Picture".

123.     Moreover, even if PLAINTIFF released every conceivable legal right he could assert with respect to his identity, image, or the Wolfman character, he released it only "*in connection with the ·distribution, advertising and exploitation of the Picture*" and not a sequel released decades later.  PLAINTIFF's Image was placed into play in an either/or scenario without his permission in the pivotal scene in *Top Gun: Maverick* in an altered image of him that was not featured in the original *Top Gun*.

124.     There is no question that PARAMOUNT or parties acting on its behalf, including but not limited to the Producers, Executive Producers, and Associate Producers on the project, misappropriated the Image and likeness of the PLAINTIFF for the purpose of using the PLAINTIFF'S Image for the value associated with it in breach of the contract. PLAINTIFF suffered harm as a result. PLAINTIFF is internationally known for his career in television and film. PLAINTIFF is easily identifiable at a glance. Moreover, PARAMOUNT undoubtedly received a benefit from their unauthorized use of the PLAINTIFF'S Image. PLAINTIFF suffered damages because of PARAMOUNT's conduct.

## SEVENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF

125.     PLAINTIFF **realleges** and incorporates by reference paragraphs 1 through 124 inclusive, as though fully set forth herein. Unless enjoined and restrained by order of the Court, PARAMOUNT's conduct will infringe the PLAINTIFF's interests. By reason of PARAMOUNT's ongoing misappropriation of PLAINTIFF's Image, PLAINTIFF has sustained and, unless and until PARAMOUNT is enjoined, will continue to sustain substantial imminent and irreparable injury, loss, and damage, including repeated violation of his right of publicity, privacy, and other interests

associated with his right to exploit his Image commercial, loss of customers, dilution of goodwill, and injury to his brand.  PLAINTIFF has no adequate remedy at law for these injuries in that such injuries cannot be reasonably, adequately, or precisely measured or compensated in damages if such wrongful conduct is not restrained and is allowed to continue unabated.

126.     PLAINTIFF is entitled to a preliminary injunction during the pendency of this action and a permanent injunction ordering that PARAMOUNT, its agents, employees, licensees, and assigns be enjoined from producing, reproducing, distributing, exploiting, or authorizing the production, reproduction, distribution, or exploitation of his Image in *Top Gun: Maverick* or any other PARAMOUNT movie, promotion, or advertisement.

## IX.
## EXEMPLARY DAMAGES

127.     These acts constituted malicious conduct which was carried on by PARAMOUNT with willful and conscious disregard for the PLAINTIFF's rights with the intention of misappropriating PLAINTIFF's Image or otherwise causing injury and was despicable conduct that subjected the PLAINTIFF to cruel and unjust hardship to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against PARAMOUNT to punish it and deter it and other such persons from committing such wrongful and malicious acts in the future.

## DEMAND FOR JURY TRIAL

128.     PLAINTIFF demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against PARAMOUNT as follows:

1.     For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to PLAINTIFF's first through sixth causes of action;

2.      For an order permanently enjoining PARAMOUNT from using PLAINTIFF's Image for any reason without his prior permission;

3.      For punitive damages, in an amount to be determined at trial;

4.      For all costs and attorneys' fees incurred by PLAINTIFF in the possession in this action (in an amount to be proven at trial);

5.      For such other relief that this Court considers and deems just and proper;

6.      For damages as provided in California Civil Code § 3344 (in an amount to be proven at trial);

7.      For general damages (in an amount to be proven at trial);

8.      For special damages (in an amount to be proven at trial);

9.      For consequential and incidental damages (in an amount to be proven at trial);

10.     For the amount due, owing, and unpaid to PLAINTIFF (in an amount to be proven at trial plus interest rate at the legal rate);

11.     For attorney's fees as provided in California Civil Code § 3344 (in an amount to be proven at trial);

12.     For prejudgment interest (according to law).


Dated: February 21, 2024                    Respectfully submitted,

                                            By: /s/ Joseph N. Casas
                                            Joseph N. Casas [CSB No. 225800]
                                            THE CASAS LAW FIRM, P.C.
                                            402 West Broadway Street, Suite 400
                                            San Diego, California 92101
                                            Telephone No.: (855) 267-4457
                                            Facsimile No.: (855) 220-9626
                                            E-Mail: joseph@talentrights.law

                                            By: /s/ Dennis Postiglione
                                            Dennis Postiglione (Pro Hac Vice Admission Pending)
                                            Texas Bar No. 24041711
                                            THE CASAS LAW FIRM, P.C.

3801 N. Capital of Texas Highway
Suite E240 Box 446
Austin, Texas 78746
Telephone No.: (512) 806-7699
Facsimile No.: (855) 220-9626
E-Mail: dennis@talentrights.law

*Attorneys for Plaintiff*