DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
50 California Street, 23rd Floor
San Francisco, California   94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

Attorneys for Defendant
PARAMOUNT PICTURES CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY TUBB, an individual,<br><br>                    Plaintiff,<br><br>     vs.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation,<br><br>                    Defendant. | Case No. **2:24-cv-01417-GW-BFM**<br><br>**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION [C.C.P. § 425.16]**<br><br>[Notice Of Motion And Motion to Dismiss (F.R.C.P. 12(b)(6)); Request For Judicial Notice; Declaration Of Amanda Hutchison With Exhibit A; Declaration Of Dan Laidman With Exhibits D-F; and Notice Of Manual Filing Of DVDs With Exhibits B-C Concurrently Filed; [Proposed] Order Concurrently Lodged]<br><br>Hearing Date:   June 24, 2024<br>Time:               8:30 a.m.<br>Courtroom:      9D<br><br>Action Filed:  February 21, 2024 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2024, at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 9D of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Paramount Pictures Corporation ("Paramount" or "Defendant") will and hereby does move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action in the Complaint brought against it by Plaintiff Barry Tubb ("Plaintiff"), with prejudice.[1]

Plaintiff's Complaint, and each of these causes of action, arises directly from the content of Paramount's 2022 feature film "Top Gun: Maverick" (the "Film" or "Maverick"), a sequel to the iconic 1986 film "Top Gun" ("Top Gun" or "Original Film").[2]  Because all of Plaintiff's claims are based on Paramount's free speech and its conduct in furtherance of the exercise of free speech in connection with matters of public interest, they fall within the broad scope of California Code of Civil Procedure § 425.16 ("SLAPP statute").  See Memorandum Of Points And Authorities, Section III.  Consequently, the burden shifts to Plaintiff to establish a probability that he will prevail on each of his claims.  See C.C.P. § 425.16(b)(1); Memorandum, Section IV.  Plaintiff cannot meet his burden as to any of his claims.

1.     Plaintiff's Third and Fourth Causes of Action for misappropriation of his publicity rights should be stricken for each of the following independent reasons:

---

[1] Paramount concurrently is filing a Motion To Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6) ("MTD"); it also addresses Plaintiff's First and Second Causes of Action, which purport to be based on federal law.  Paramount incorporates by reference the relevant arguments and authorities in that Motion.

[2] DVDs of these films are attached as Exhibits B-C to the concurrently-submitted Notice Of Manual Filing.  See Laidman Decl. ¶ 3; see also concurrently-filed Request For Judicial Notice ("RJN").

a. Under the First Amendment to the U.S. Constitution and California law, the use of Plaintiff's likeness in the Film is constitutionally protected, and cannot give rise to liability for misappropriation.  See Memorandum, Section IV.A.1.

b. Plaintiff's misappropriation claims independently are barred by California's transformative-use defense.  Id., Section  IV.A.2.

c. Plaintiff's misappropriation claims also are preempted by federal copyright law, because they arise solely from the use of a photograph that includes Plaintiff's image, which falls within the subject matter of the Copyright Act, and the rights Plaintiff seeks to control are equivalent to the rights granted to copyright holders under the Act.  17 U.S.C. §§ 102(a), 301(a); Memorandum, Section IV.A.3.

d. Plaintiff's misappropriation claims fail because he contractually agreed that Paramount owns all rights to the character Plaintiff portrayed in the Original Film, and the agreement (which is attached to the Complaint) gives Paramount the right to use Plaintiff's likeness in connection with that character.  Id., Section IV.A.4.

2. Plaintiff's Third Cause of Action for statutory misappropriation also fails for each of the following reasons:

a. Plaintiff's claim does not involve an alleged use of his image in connection with products, goods, or merchandise, as required by Cal. Civ. Code § 3344.  Id., Section IV.A.5.

b. Plaintiff's claim is barred by the statute's exemption for depictions of a person as part of a definable group, where the individual is not singled out.  Cal. Civ. Code § 3344(b)(2)-(3); Memorandum, Section IV.A.5.

3. Plaintiff's Fifth Cause of Action for "negligent hiring, supervision, and/or retention" fails for each of the following independent reasons:

a. The claim is entirely derivative of Plaintiff's misappropriation claims,

and fails for the same reasons as those claims.  Memorandum, Section IV.B.

    b.  Plaintiff has not pleaded (and cannot plead) that Paramount owed him any legally-cognizable duty, as required to give rise to any kind of negligence claim.  Id.

4.    Plaintiff's Sixth Cause of Action for breach of contract fails for each of the following independent reasons:

    a.  Plaintiff has not identified (and cannot identify) any provision in the parties' 1985 Agreement that Paramount purportedly breached.[3] Id., Section IV.C.

    b.  Under the Agreement, Paramount owns all rights to the character Plaintiff portrayed in the Original Film, and Paramount has the right to use Plaintiff's likeness in connection with that character.  Id.

5.    Plaintiff's Seventh Cause of Action for injunctive relief fails because this is a remedy, not a separate cause of action; in addition, granting injunctive relief in this case would be an unconstitutional prior restraint under the First Amendment and California law.  Id., Section IV.D.

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Request For Judicial Notice, Declaration Of Amanda Hutchison With Exhibit A, Declaration Of Dan Laidman With Exhibits D-F, and Notice Of Manual Filing Of DVDs With Exhibits B-C; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action, including the concurrently-filed Motion To Dismiss; and on such argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local

---

[3] Plaintiff's attempt to assert any claim under the 1985 Agreement also is inconsistent with his allegation that the Agreement has no application to this case. Cmplt. ¶ 34.

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Rule 7-3, which took place on April 11, 2024.  See Laidman Decl. ¶ 8.

For all of the reasons stated, Paramount respectfully requests that this Court strike Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action in their entirety, with prejudice, and further requests this Court to find that Paramount is entitled to recover its reasonable attorneys' fees and costs incurred in defending against Plaintiff's meritless claims.[4]

DATED: April 18, 2024

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT

By: /s/ Kelli L. Sager
Kelli L. Sager

Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

---

[4] The SLAPP statute mandates that a prevailing party on a SLAPP motion "shall" recover its attorneys' fees and costs.  C.C.P. § 425.16(c).  If the Court grants this Motion, Paramount will file a separate noticed motion to recover the fees and costs that it has incurred in connection with its SLAPP Motion.  E.g., Ketchum v. Moses, 24 Cal. 4th 1122, 1131-1132 (2001); Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1209 (9th Cir. 2005) ("California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court").

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ........................................................ 1

II.   STATEMENT OF FACTS ........................................................... 2

III.  THE SLAPP STATUTE APPLIES TO PLAINTIFF'S CLAIMS................. 4

    A.    Plaintiff's Claims Fall Under Section 425.16. .................................. 5

    B.    The Film Involves Matters Of Public Interest.................................... 6

IV.   PLAINTIFF CANNOT SHOW A PROBABILITY OF PREVAILING. ....... 7

    A.    Plaintiff's Right of Publicity Claims Fail............................................ 7

        1.    The First Amendment Bars Misappropriation Claims
            Arising From Expressive Works.................................... 7

        2.    Plaintiff's Claims Independently Are Barred By The
            Transformative Use Defense.................................... 10

        3.    Plaintiff's Claims Are Preempted By The Copyright Act. ...... 12

            a.    The Work Is Within the Subject Matter of
                Copyright. .................................... 13

            b.    The Rights Here Are Equivalent To Exclusive
                Rights Under Copyright Law.................................... 13

        4.    Plaintiff's Contract Permitted The Use.................................... 17

        5.    Plaintiff's Statutory Misappropriation Claim Fails For
            Additional Reasons. .................................... 19

    B.    Plaintiff's Derivative Negligence Claim Is Meritless. ....................... 20

    C.    Plaintiff's Contract Claim Fails.......................................................... 21

    D.    Plaintiff Cannot Maintain A Claim For "Injunctive Relief."............. 21

V.    CONCLUSION......................................................................... 22

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

<u>Alaska Stock v. Houghton-Mifflin-Harcourt Publ. Co.</u>,
  747 F.3d 673 (9th Cir. 2014) ................................................................. 16

<u>Baugh v. CBS</u>,
  828 F. Supp. 745 (N.D. Cal. 1993) ....................................................... 20

<u>Braun v. Chronicle Publ'g</u>,
  52 Cal.App.4th 1036 (1997) .................................................................. 4

<u>Brodeur v. Atlas Entertmt.</u>,
  248 Cal.App.4th 665 (2016) ........................................................... 5, 6, 7

<u>Callaway v. Mercedes-Benz USA</u>,
  2016 WL 11756827 (C.D. Cal. May 12, 2016) ..................................... 21

<u>Cardtoons v. MLBPA</u>,
  95 F.3d 959 (10th Cir. 1996) ................................................................ 11

<u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>,
  25 Cal.4th 387 (2001) ...................................................................... 8, 10

<u>Daniel v. Wayans</u>,
  8 Cal.App.5th 367 (2017) .......................................................... 5, 11, 17

<u>de Havilland v. FX Networks</u>,
  21 Cal.App.5th 845 (2018) ...................................................... 5, 9, 10, 19

<u>Del Madera Props. v. Rhodes & Gardner</u>,
  820 F.2d 973 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>Fogerty
  v. Fantasy, Inc.</u>, 510 U.S. 517 (1994) ........................................... 12, 13

<u>Doe v. Gangland Prods.</u>,
  730 F.3d 946 (9th Cir. 2013) ............................................................ 6, 20

<u>Dryer v. NFL</u>,
  55 F.Supp.3d 1181 (D. Minn. 2014) .................................................... 15

<u>Felton v. Schaeffer</u>,
  229 Cal.App.3d 229 (1991) .................................................................. 20

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Garcia v. Google,
   786 F.3d 733 (9th Cir. 2015) ................................................................ 22

Guglielmi v. Spelling-Goldberg Prods.,
   25 Cal.3d 860 (1979) .................................................................. 8, 9, 10

Herring Networks v. Maddow,
   8 F.4th 1148 (9th Cir. 2021) ...................................................... 4, 5, 7, 22

Hilton v. Hallmark Cards,
   599 F.3d 894 (2010).............................................................................. 6

In re Jackson,
   972 F.3d 25 (2d Cir. 2020)................................................................... 16

Joseph Burstyn, Inc. v. Wilson,
   343 U.S. 495 (1952) .............................................................................. 5

Jules Jordan Video v. 144942 Canada,
   617 F.3d 1146 (9th Cir. 2010) ....................................................... 13, 14

Kinney v. Oppenheim,
   2011 WL 13217573 (C.D. Cal. Mar. 3, 2011).................................... 14

Klamath Water Users Prot. Ass'n v. Patterson,
   204 F.3d 1206 (9th Cir. 1999) ....................................................... 17, 18

Kronemyer v. IMDB,
   150 Cal.App.4th 941 (2007) ................................................................. 6

Kuhn v. Vortex,
   747 F.2d 1022 (5th Cir. 1984) ............................................................ 17

Landham v. Lewis Galoob Toys,
   227 F.3d 619 (6th Cir. 2000) .............................................................. 11

Laws v. Sony Music Entm't,
   448 F.3d 1134 (9th Cir. 2006) ................................................. 12, 13, 14

Levi Strauss & Co. v. Aetna Cas. & Sur. Co.,
   184 Cal.App.3d 1479 (1986) .............................................................. 18

Lightbourne v. Printroom,
   307 F.R.D. 593 (C.D. Cal. 2015) ................................................... 19, 20

Maloney v. T3Media,
    853 F.3d 1004 (9th Cir. 2017) ....................................................... 13, 15

Maloney v. T3Media,
    94 F.Supp.3d 1128 (C.D. Cal. 2015), aff'd, 853 F.3d 1004 (9th Cir.
    2017) ..................................................................................... 15, 16

MDY Indus., v. Blizzard Entertainment,
    629 F.3d 928 (9th Cir. 2010) ............................................................ 21

Navellier v. Sletten,
    29 Cal.4th 82 (2002) ........................................................................ 5

NBA v. Motorola,
    105 F.3d 841 (2d Cir. 1997)............................................................ 13

Nicosia v. De Rooy,
    72 F.Supp.2d 1093 (N.D. Cal. 1999) .................................................. 1

Olivia N. v. NBC,
    126 Cal.App.3d 488 (1981) ............................................................. 20

Olson v. NBC,
    855 F.2d 1446 (9th Cir.1988) .......................................................... 14

Page v. Something Weird Video,
    960 F.Supp. 1438 (C.D. Cal. 1996) .................................................. 10

Polydoros v. Twentieth Century Fox,
    67 Cal.App.4th 318 (1997) .................................................. 5, 8, 9, 20

Ray v. ESPN,
    2014 WL 2766187 (W.D. Mo. Apr. 8, 2014), aff'd, 783 F.3d 1140
    (8th Cir. 2015) ............................................................................... 15

Ray v. ESPN,
    783 F.3d 1140 (8th Cir. 2015) ......................................................... 15

Ross v. Roberts,
    222 Cal.App.4th 677 (2013) ...................................................... 10, 11

Sarver v. Chartier,
    813 F.3d 891 (9th Cir. 2016) ................................................... passim

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Seelig v. Infinity Broad.,
    97 Cal.App.4th 798 (2002) ................................................................. 5, 6

Somerson v. McMahon,
    956 F.Supp.2d 1345 (N.D. Ga. 2012) .................................................. 14

Tamkin v. CBS,
    193 Cal.App.4th 133 (2011) ............................................................... 5, 6

Universal City Studios v. Film Ventures Intern.,
    543 F.Supp. 1134 (C.D. Cal. 1982) ....................................................... 17

Winter v. DC Comics,
    30 Cal.4th 881 (2003) ............................................................... 2, 10, 11

**Statutes**

17 U.S.C.
    §§ 101, 102(a) ........................................................................................ 13
    §§ 101, 103 ............................................................................................ 16
    §§ 102 and 103 ...................................................................................... 12
    § 102(a) ................................................................................................. 12
    § 103(b) ................................................................................................. 16
    § 106 ............................................................................................... 12, 13
    § 106(1)-(3) ........................................................................................... 12
    § 201(a) ................................................................................................. 17
    § 301(a) ................................................................................................. 12

California Civil Code
    § 1638 ................................................................................................... 17
    § 3344(a) ............................................................................................... 19
    § 3344(b)(2) .......................................................................................... 19
    § 3344(b)(3) ..................................................................................... 19, 20

California Code of Civil Procedure
    § 425.16 ..................................................................................... 1, 4, 5, 6
    § 425.16(b)(1) .................................................................................... 5, 7

**Rules**

Fed. Rule Civ. Proc. 8 ............................................................................. 7

Fed. Rule Civ. Proc. 12 ........................................................................... 7

vi

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Constitutional Provisions**

First Amendment............................................................................*passim*

**Other Authorities**

J. Thomas McCarthy, <u>The Rights of Publicity and Privacy</u> § 8:47 (2d
  ed. 2023)............................................................................... 9

Restatement Third, Unfair Competition § 47, Comment c (2024) ........................... 9

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

This action arises entirely from one scene in Paramount's film "Top Gun: Maverick" (the "Film"), a sequel to the iconic 1986 film "Top Gun" ("Top Gun" or "Original Film"), about a group of young pilots in the Navy's elite Top Gun training program.  Plaintiff played a character in the Original Film; his character's <u>only</u> appearance in the sequel is in an old photograph depicting the 1986 "Top Gun" class, which appears for a few seconds in a scene connecting part of the Film's storyline to events in the Original Film.  Plaintiff now seeks to turn the brief depiction of a group photograph into a massive personal payday, even seeking to enjoin the Film.

His entire lawsuit is without merit.  Courts have made clear that right-of-publicity claims like Plaintiff's, which purport to arise from the content of expressive works, are constitutionally barred.  This and other defects in his overlapping state law claims justifies their immediate dismissal.

California's anti-SLAPP statute (C.C.P. § 425.16) allows for the "fast and inexpensive unmasking and dismissal" of such meritless claims that target expressive conduct.  <u>Nicosia v. De Rooy</u>, 72 F.Supp.2d 1093, 1109 (N.D. Cal. 1999).  Courts consistently have held that Section 425.16 applies to claims arising from the content of expressive works like the Film.  Section III.  The burden therefore shifts to Plaintiff to establish a "probability" of prevailing on the merits of each claim.  C.C.P. § 425.16(b); Section IV.  He cannot meet that burden.

<u>First</u>, Plaintiff's right-of-publicity claims are barred under the First Amendment and related California law.  Section IV.A.1-2.  Courts consistently have rejected misappropriation claims based on expressive works like films, given the heightened constitutional protection that applies to content-based claims.  Section IV.A.1.  Plaintiff's claims also are barred under California's "transformative use" defense, because his image was, at most, a small piece of the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"raw material" utilized in the Film.  <u>Winter v. DC Comics</u>, 30 Cal.4th 881, 888 (2003); Section IV.A.2.

<u>Second</u>, these claims are preempted by copyright law, because the work at issue falls within the subject matter of copyright, and Plaintiff's claims arise solely from acts equivalent to exclusive rights under the Copyright Act – namely, the reproduction and display of a photograph.  Section IV.A.3.

<u>Third</u>, the parties' 1985 Agreement also gave Paramount the right to use Plaintiff's image in connection with the character he portrayed.  Section IV.A.4. Moreover, California's misappropriation statute does not apply to expressive works (Section IV.A.5) and it has an express exemption for group photographs.  <u>Id.</u>

<u>Fourth</u>, Plaintiff's tack-on negligence claim is derivative of his right-of-publicity claims, and barred on the same grounds.  Section IV.B.  In addition, Plaintiff cannot plead any legally-cognizable duty Paramount owed to him.  <u>Id.</u>

<u>Fifth</u>, Plaintiff's contract claim fails because Paramount did not breach any term of the parties' Agreement; moreover, it expressly authorizes the "use" here. Section IV.C.

<u>Finally</u>, Plaintiff's injunctive relief claim does not state a separate cause of action; an injunction also would be unconstitutional.  Section IV.D.

For all of these reasons, Paramount respectfully requests that this Court grant the Motion, and strike Plaintiff's state law claims with prejudice.[5]

## II.   STATEMENT OF FACTS

In the film "Top Gun," Tom Cruise portrayed a talented, arrogant fighter pilot (nicknamed "Maverick"), participating in the Navy's elite "Top Gun" training program.  Anthony Edwards' character ("Goose") was Maverick's wingman and best friend; Val Kilmer played "Iceman," Maverick's rival.  During a training

---

[5] Plaintiff's federal claims are addressed in Paramount's concurrently-filed MTD.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exercise, Maverick's plane suffers engine failure, resulting in an accident in which Goose dies; Maverick has to overcome his guilt to save Iceman's life when the trainees face actual combat.  Ex. C at 1:04:00-1:09:15; 1:28:01-1:41:29.

Plaintiff appeared in "Top Gun" as "Wolfman," another trainee, who is depicted wearing a cowboy hat and silver watch.  E.g., Ex. C at 26:49; 33:41-33:48.  Plaintiff had a written agreement ("Agreement") to participate in the Original Film.  Cmplt. ¶ 113 & Ex. A.  Among other things, it provides that Paramount is "the sole and exclusive owner of all rights in the role or character portrayed by [Plaintiff], including name, likeness and distinctive characterizations thereof"; Paramount's rights include "the right to merchandise and exploit such role or character, and the right to use [Plaintiff]'s name and likeness in connection therewith...."  Cmplt. ¶ 117 & Pl. Ex. A at 7 ¶ A (emphasis added).

Plaintiff alleges that during the filming of "Top Gun," photographer Herb Ritts took a "behind-the-scenes" picture ("Photograph") depicting cast members (including Cruise, Edwards, Kilmer, and Plaintiff) and Navy pilots whom he says "flew in and consulted on the" film.  Cmplt. ¶ 39; Pl. Ex. C.  (Ritts was hired by Paramount, which owns the copyright to his photographs.  Ex. A.)  The Photograph depicts cast members wearing the flight suits their characters wore during much of the film, with some members of the group in military garb.  Pl. Ex. C.  Plaintiff also is wearing his character's "signature" cowboy hat and a silver watch.  Cmplt. ¶ 46; see Pl. Ex. C; Ex. D.

The "Maverick" Film was released in 2022.  It takes place 30 years later, with Maverick now training young fighter pilots, including Goose's son, Rooster.  Ex. B.  Maverick secretly promised Rooster's mother to stop him from becoming a fighter pilot, and Rooster is angry about Maverick's interference.  Rooster's rival ("Hangman") and another classmate learn about the relationship between Rooster's father and Maverick when they see a photograph with a plaque identifying the

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fictional members of the 1986 Top Gun class,[6] with Maverick and Goose standing next to each other, and realize Goose and Rooster have the same last name.  See Ex. B at 44:22-44:44.

The Film shows a slightly altered version of the Photograph.[7]  It appears for only a few seconds, starting with the depiction of the entire "Class of 1986" before zooming in briefly on Maverick and Goose, as Hangman points them out to his classmate.  Ex. B at 44:22-44:28.  Wolfman is standing partly behind Maverick in the class photo.  Ex. D.

Plaintiff's claims all arise solely from the inclusion of his image in the "Class of 1986" photograph, as depicted briefly in that one scene.  Cmplt. ¶¶ 77-126.

### III.      THE SLAPP STATUTE APPLIES TO PLAINTIFF'S CLAIMS.

The California Legislature enacted Code of Civil Procedure § 425.16 "to nip SLAPP litigation in the bud[,]" by quickly disposing of meritless claims that target the exercise of free-speech rights.  Braun v. Chronicle Publ'g, 52 Cal.App.4th 1036, 1042 (1997).  The SLAPP statute applies in this Circuit's federal courts, which must construe its application "broadly."  Herring Networks v. Maddow, 8 F.4th 1148, 1155 (9th Cir. 2021).

Courts use a two-step process to evaluate SLAPP motions.  First, the "defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."  Id.  If that requirement is met, the "burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to

_____

[6] Ex. B at 44:22.

[7] Cmplt. ¶ 38.  There is no allegation that any of the individuals' images were altered; the version used in the Film replaced a blank background with a depiction of a fighter jet in front of a building emblazoned with the words "TOP GUN." Compare Pl. Ex. C with Ex. B at 44:22.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

survive dismissal." Id.  Where, as here, the plaintiff cannot meet this burden, his claims must be stricken.  C.C.P. § 425.16(b)(1).

**A.     Plaintiff's Claims Fall Under Section 425.16.**

Plaintiff's state law claims arise solely from the content of the Film, and fall squarely within the broad scope of the SLAPP statute.  C.C.P. § 425.16(e)(3)-(4); Cmplt. ¶¶ 77-126.

"Film is a 'significant medium for the communication of ideas' and, … is protected by constitutional guarantees of free expression."  Polydoros v. Twentieth Century Fox, 67 Cal.App.4th 318, 323-24 (1997) (quoting Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501-02 (1952)).  Both "[p]opular entertainment" and "works of fiction" are as constitutionally protected as "political treatises and topical news stories."  Id. at 324 (quotation omitted).  Thus "[t]he creation of a television show is an exercise of free speech," and the constitution "protects the creative elements of an artistic work."  Tamkin v. CBS, 193 Cal.App.4th 133, 143 (2011).

Courts consistently have held that claims arising from the content and/or creation of a constitutionally-protected expressive work are protected by the SLAPP statute.  E.g., id. at 142-43 (statute applied to claims arising from episode of fictional TV show); Sarver v. Chartier, 813 F.3d 891, 901-02 (9th Cir. 2016) (claims based on film "The Hurt Locker"); de Havilland v. FX Networks, 21 Cal.App.5th 845, 856-57 (2018) (claims involving TV show "Feud"); Brodeur v. Atlas Entertmt., 248 Cal.App.4th 665, 674 (2016) (claims based on film "American Hustle"); Daniel v. Wayans, 8 Cal.App.5th 367, 374 (2017) (claims involving fictional film "A Haunted House 2").  Plaintiff's claims similarly arise from protected conduct.[8]

_____

[8] The SLAPP statute applies to any state claim arising from speech or conduct in furtherance of speech, regardless of its label.  E.g., Navellier v. Sletten, 29 Cal.4th 82, 92 (2002) (breach of contract); Seelig v. Infinity Broad., 97 Cal.App.4th 798, 808 (2002) (negligent hiring, retention, and supervision).

**B.     The Film Involves Matters Of Public Interest.**

The SLAPP statute's "public interest" requirement also must be construed "broadly." Sarver, 813 F.3d at 901. See also Seelig, 97 Cal.App.4th at 808 ("public interest" requirement, "like all of section 425.16, is to be construed broadly"). Accord Hilton v. Hallmark Cards, 599 F.3d 894, 905-06 (2010) ("the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice"). This broad standard is easily satisfied here.

First, courts regularly have found that the creation of expressive works is a matter of public interest. E.g., Brodeur, 248 Cal.App.4th at 675 ("case precedent confirms that there is a public interest 'in the writing, casting and broadcasting' of an episode of a popular television program"); Kronemyer v. IMDB, 150 Cal.App.4th 941, 949 (2007) ("the motion picture My Big Fat Greek Wedding was a topic of widespread public interest").

Similarly, the Film is a popular work of widespread public interest, as demonstrated by extensive press coverage. See Ex. F; Cmplt. ¶ 1 (alleging Film was "one of the highest grossing movies [of 2022]" and likely to be "one of the highest grossing movies of all time"). Media coverage emphasized the public's nostalgia for Top Gun as the quintessential 80's movie, and the Film's success was itself a subject of robust public discussion (see Ex. F at 1-10, 28-48); director Steven Spielberg proclaimed that it "might have saved theatrical distribution." See id. at 7-8. The SLAPP statute's requirements are met for this reason alone. See Tamkin, 193 Cal.App.4th at 139.

Second, the Film's subject matter involves issues of public interest. This inquiry focuses on "whether the broad topic of defendant's conduct, not the plaintiff, is connected to a public issue or an issue of public interest." Doe v. Gangland Prods., 730 F.3d 946, 956 (9th Cir. 2013) (emphasis added). The Film addresses undeclared military conflicts between the U.S. and foreign adversaries seeking nuclear capabilities, as well as concepts of duty, honor, and the role of

1  individuals in an increasingly technology-dependent military.  These are also topics
2  of manifest public interest.  Ex. B; Ex. F at 11-33.

3      <u>Third</u>, the Complaint's allegations show that Plaintiff, and the characters he
4  portrays, are a subject of public interest.  Cmplt. ¶¶ 24-30, 46, 124 (detailing
5  Plaintiff's prominence in the entertainment field).  <u>See</u> <u>Brodeur</u>, 248 Cal.App.4th at
6  675 (plaintiff's allegations about his own prominence satisfied public interest test).

7      Plaintiff's claims easily fall within the broad scope of the SLAPP statute.

8  **IV.      PLAINTIFF CANNOT SHOW A PROBABILITY OF PREVAILING.**

9      Because the SLAPP statute applies, Plaintiff must establish a probability of
10  prevailing.  C.C.P. § 425.16(b)(1).  Application of the SLAPP statute in federal
11  court is consistent with the F.R.C.P. because where, as here, a defendant "move[s]
12  to strike on purely legal arguments," the court "analyze[s] the motion pursuant to
13  Rules 8 and 12."  <u>Herring Networks</u>, 8 F.4th at 1155.  Consequently, a "district
14  court must grant the defendant's motion and dismiss the complaint if the plaintiff
15  presents an insufficient legal basis for the claims or no reasonable jury could find
16  for the plaintiff."  <u>Id.</u>

17  **A.      Plaintiff's Right of Publicity Claims Fail.**

18      Plaintiff's Third and Fourth Causes of Action for misappropriation arise
19  entirely from the alleged use of his image in the Film (<u>e.g.</u>, Cmplt. ¶¶ 78,  89).  Both
20  are barred by well-established First Amendment principles and applicable
21  California law.

22      **1.      The First Amendment Bars Misappropriation Claims Arising**
23          **From Expressive Works.**

24      The Ninth Circuit has held that a right-of-publicity claim targeting expressive
25  speech is "presumptively unconstitutional."  <u>Sarver</u>, 813 F.3d at 903.  "State laws,
26  including state common law, may not restrict expression because of its message, its
27  ideas, its subject matter, or its content."  <u>Id.</u> (quotation omitted).  Because
28  California's right-of-publicity law "clearly restricts speech based upon its content,"

it is subject to the highest level of constitutional scrutiny; it "may be justified only if the government proves that [application is] narrowly tailored to serve compelling state interests." Id.  Under controlling Ninth Circuit law, and similar pronouncements from California's highest court (and consistent with decisions from across the country), there is no such countervailing interest where, as here, a right-of-publicity claim targets the content of an expressive work.

For example, in Guglielmi v. Spelling-Goldberg Prods., 25 Cal.3d 860, 866 (1979), the California Supreme Court rejected a right-of-publicity claim brought by actor Rudolph Valentino's heirs, based on a fictional film.  Id. at 866.  In a concurrence the Court has recognized as controlling,[9] then-Chief Justice Bird explained that because the film was an expressive work entitled to the highest degree of First Amendment protection, there was no countervailing interest that could "clearly outweigh the value of free expression in this context." Id. at 871 (Bird, C.J., concurring).  Consequently, a "cause of action for the appropriation of Valentino's right of publicity through the use of his name and likeness in respondents' film may not be maintained." Id. at 872 (emphasis added).  See also Polydoros, 67 Cal.App.4th at 320-21, 324-25 (rejecting misappropriation claim based on alleged use of the plaintiff's likeness in a fictional film; "[b]ecause respondents were creating a fictionalized artistic work, their endeavor is constitutionally protected" and "Guglielmi unequivocally prevents appellant from proceeding on his claim for commercial appropriation of identity").

In Sarver, the Ninth Circuit applied this strict First Amendment scrutiny to a right-of-publicity claim alleging the unauthorized use of the plaintiff's identity in "The Hurt Locker," a fictional film about the Iraq war.  813 F.3d at 903-04.  The court granted the filmmakers' SLAPP motion, finding that "'The Hurt Locker' is

---

[9] The Chief Justice's opinion "commanded the support of the majority of the court," because it was joined or endorsed by three other Justices.  Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 396 n.7 (2001).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

speech that is fully protected by the First Amendment," and there was no

"compelling state interest in preventing the defendants' speech." Id. at 905-06.

Similarly, a state appeals court applied heightened First Amendment scrutiny in

striking actress Olivia de Havilland's right-of-publicity claim based on the portrayal

of her in the TV docudrama "Feud." de Havilland, 21 Cal.App.5th at 860-61. The

court noted that federal and state courts consistently have followed Guglielmi and

its progeny, and "Feud is as constitutionally protected as was the film in Sarver, The

Hurt Locker." Id. at 860. As the court explained,

> That Feud's creators did not purchase or otherwise procure de
> Havilland's 'rights' to her name or likeness does not change this analysis.
> Producers of films and television programs may enter into agreements
> with individuals portrayed in those works for a variety of reasons,
> including access to the person's recollections or 'story' the producers
> would not otherwise have, or a desire to avoid litigation for a reasonable
> fee. But the First Amendment simply does not require such acquisition
> agreements.

Id. at 861 (emphasis added; citing Polydoros, 67 Cal.App.4th at 326).[10]

Plaintiff's right-of-publicity claims hinge entirely on the inclusion of his

image in the Film. Cmplt. ¶¶ 77-101. But as a matter of law, the creators of the

Film could show Plaintiff "without acquiring [the] rights" to his image. de

Havilland, 21 Cal.App.5th at 861. There is no countervailing interest that could

---

[10] Courts consistently have applied this constitutional principle. See Restatement Third, Unfair Competition § 47, comment c (2024) ("[t]he constitutional right of free speech extends to entertainment and other expressive works, including fiction"; collecting "[c]ases recognizing a right to use another's identity in entertainment and fiction"); J. Thomas McCarthy, The Rights of Publicity and Privacy § 8:47 (2d ed. 2023) ("[t]he majority view is that fictional works are protected by the First Amendment as being informative or entertaining 'speech,' such that fictional uses of identity cannot be actionable").

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"outweigh the value of free expression in this context"; thus, Plaintiff's right of publicity claims "may not be maintained."  <u>Guglielmi</u>, 25 Cal.3d at 872 (Bird, C.J., concurring).[11]

**2.  Plaintiff's Claims Independently Are Barred By The Transformative Use Defense.**

The use of Plaintiff's likeness in the Film also is protected under California law, which recognizes an "'affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame.'"  <u>Winter v. DC Comics</u>, 30 Cal.4th 881, 890 (2003) (quoting <u>Comedy III</u>, 25 Cal.4th at 407).

In <u>de Havilland</u>, the court observed that it often is unnecessary to reach this test where, as here, the claims arise from an expressive work (as opposed to "products and merchandise" like the t-shirts in <u>Comedy III</u>).  21 Cal.App.5th at 863. Nonetheless, the court applied the test in the alternative, holding that a television program portraying the plaintiff was sufficiently transformative because her likeness was but one of the "raw materials" used to create the series.  <u>Id.</u>  Thus, the series' "marketability and economic value" did not "derive primarily from [plaintiff's] fame" but rather "[came] principally from … the creativity, skill, and reputation" of the series' creators and actors."  <u>Id.</u> at 864.  <u>See also</u> <u>Ross v. Roberts</u>, 222 Cal.App.4th 677, 687-88 (2013) (rap musician's use of famous criminal's name

---

[11] Plaintiff vaguely alludes to his image being used to 'market and promote' the Film, but does not (and cannot) identify any form of promotional material that would support a claim.  <u>E.g.</u>, Cmplt. ¶¶ 10, 80, 90, 94.  Even assuming, <u>arguendo</u>, the Photograph was used to promote the Film, Plaintiff would have no viable claim, because "[a]dvertising for constitutionally protected expressive media shares the constitutional immunity of the media use itself."  McCarthy at § 8:66.  <u>Accord</u> <u>de Havilland</u>, 21 Cal.App.5th at 862 ("use of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of publicity"); <u>Page v. Something Weird Video</u>, 960 F.Supp. 1438, 1444 (C.D. Cal. 1996) (same).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and biography in song was transformative because "[the defendant] created original artistic works" and "[i]t defies credibility to suggest that [he] gained success primarily from appropriation of plaintiff's name and identity, instead of from the music and professional persona that he (and the other defendants) created").

Here, Plaintiff's image appears for a few seconds of a two-hour film, in a group photograph, where the focus is on Maverick and Goose.  As in Ross, it "defies credibility" to suggest the Film derived economic value "primarily" "from appropriation of plaintiff's name and identity" instead of "the creativity, skill, and reputation" of the Film's creators and performers.  222 Cal.App.4th at 688.

The use of Plaintiff's image also is transformative because the Film "do[es] not depict [P]laintiff[] literally" – that is, as Barry Tubb – but rather as a "fanciful, creative character[]" – Wolfman, identifiable to viewers via his "signature" cowboy hat, and in the context in which he appears (alongside other members of the fictional "Top Gun" class of 1986).  Winter, 30 Cal.4th at 890, 892.  See also Cardtoons v. MLBPA, 95 F.3d 959, 962 (10th Cir. 1996) (dismissing right-of-publicity claim based on defendants' "trading cards featuring caricatures of major league baseball players"); Landham v. Lewis Galoob Toys, 227 F.3d 619 (6th Cir. 2000) (actor failed to show that defendant's toy "invokes his own persona, as distinct from that of the fictional character" he portrayed; rejecting misappropriation claim because "the focus of any right of publicity analysis must always be on the actor's own persona and not the character's").

And according to Plaintiff, the Photograph with his likeness was literally transformed; he claims it was adapted from a behind-the-scenes picture from the Original Film, and altered to fit the expressive purpose in the sequel.  See Cmplt. ¶¶ 38-40.  That is a classic example of creative transformation that the Constitution protects.  See Daniel, 8 Cal.App.5th at 396-97 (First Amendment barred right-of-publicity claims brought by actor in film based on the producer's use of actor's image in an Internet post related to the film that "added something new to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  [plaintiff's] image, altering it with a new expression, meaning, or message").  For

2  this additional reason, Plaintiff's claims are barred.

### 3.    Plaintiff's Claims Are Preempted By The Copyright Act.

4    The Copyright Act provides the sole remedy for all claims invoking rights

5  "equivalent to any of the exclusive rights within the general scope of copyright …

6  in works of authorship[.]"  17 U.S.C. § 301(a).[12]  Where a state law claim falls

7  within the exclusive sphere of the Copyright Act, it is preempted and must be

8  dismissed.  Id.

9    The Ninth Circuit has articulated "a two-part test to determine whether a state

10  law claim is preempted by the [Copyright] Act."  Laws v. Sony Music Entm't, 448

11  F.3d 1134, 1137 (9th Cir. 2006).  First, a court must determine "whether the

12  'subject matter' of the state law claim falls within the subject matter of copyright as

13  described in 17 U.S.C. §§ 102 and 103."  Id.  This straightforward inquiry focuses

14  on whether the claims concern a "work" covered by the Copyright Act – i.e., one of

15  the categories of "original works of authorship fixed in any tangible medium of

16  expression" in Section 102, such as a literary work, pictorial work or motion

17  picture.  Id. at 1140; 17 U.S.C. § 102(a).  Second, a court determines "whether the

18  rights asserted under state law are equivalent to the rights contained in 17 U.S.C. §

19  106, which articulates the exclusive rights of copyright holders."  Laws, 448 F.3d at

20  1138.  The test considers if the claims seek to "protect rights which are qualitatively

21  different from the copyright rights," and requires preemption unless the claim has

22  "an extra element which changes the nature of the action."  Del Madera Props. v.

23  Rhodes & Gardner, 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds,

24  Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).  Both prongs are met here.

25

26

27

28
    _____

    [12] These include the "exclusive right" to reproduce and distribute the
copyrighted work.  17 U.S.C. § 106(1)-(3).

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### a.  The Work Is Within the Subject Matter of Copyright.

The first prong is met "when the work of authorship being copied or misappropriated 'fall[s] within the ambit of copyright protection.'" NBA v. Motorola, 105 F.3d 841, 848 (2d Cir. 1997).  Here, Plaintiff's claims are based entirely on the Film's depiction of a photograph that includes his image.  See Cmplt. ¶¶ 38, 39, 77, 88.  Photographs indisputably fall within the ambit of copyright protection, which extends to all "original works of authorship fixed in any tangible medium of expression," including "pictorial, … works," which, by definition, include photographs.  17 U.S.C. §§ 101, 102(a).  The initial requirement is met.  See Maloney v. T3Media, 853 F.3d 1004, 1011-16 (9th Cir. 2017) (right-of-publicity claims based on defendant's licensing of photographs depicting plaintiffs fell within subject matter of copyright).

### b.  The Rights Here Are Equivalent To Exclusive Rights Under Copyright Law.

Section 106 of the Copyright Act grants certain rights, including the rights to display works to the public and to reproduce works.[13]  Because Plaintiff seeks to control Paramount's reproduction and display of a photograph containing an image of him – that is, because the rights he seeks to control are equivalent to copyright rights – Plaintiff's claims satisfy the second part of the preemption test.  Laws, 448 F.3d at 1144; Del Madera, 820 F.2d at 976-77 (to survive preemption, claim "must protect rights which are qualitatively different from … copyright rights").

---

[13] Plaintiff concedes that he does not own the copyright in the Photograph. Cmplt. ¶¶ 4, 39.  Ritts' photographs were taken under a work-for-hire agreement with Paramount.  See Hutchison Decl. at 3; Ex. A.  But Plaintiff's claims would be preempted regardless of who owns the copyright.  E.g., Jules Jordan Video v. 144942 Canada, 617 F.3d 1146, 1154 (9th Cir. 2010) ("[i]f a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Plaintiff's attempts to plead around preemption are unavailing.  <u>First</u>, where,

2  as here, the plaintiff's likeness is embodied in a copyrightable work which the

3  defendant uses in its own expressive work, preemption applies regardless of

4  whether the plaintiff purports to protect his "image" or "persona."  <u>See</u> Cmplt. ¶¶ 4-

5  5.  In <u>Laws</u>, the Ninth Circuit rejected the argument that "the subject matter" of

6  copyright claims and right-of-publicity claims "are substantively different" because

7  the former "protect[] ownership rights to a work of art," while publicity claims

8  "concern[] the right to protect one's persona and likeness." 448 F.3d at 1139.  The

9  court rejected this false dichotomy, holding that where a defendant is not exploiting

10  plaintiff's likeness <u>other than</u> as it appears in a fixed copyrightable work, the claim

11  falls within the subject matter of copyright. <u>Id.</u> at 1139.

12  The Ninth Circuit applied the same principle in reaching the "obvious

13  conclusion" that an actor's claim challenging duplication of his "persona," as fixed

14  in a video, was preempted.  <u>Jules Jordan Video</u>, 617 F.3d at 1153.  <u>See also</u> <u>Kinney</u>

15  <u>v. Oppenheim</u>, 2011 WL 13217573, at *8 (C.D. Cal. Mar. 3, 2011)

16  (misappropriation claim predicated on distribution of video containing plaintiff's

17  performance was preempted because the "essence" of the claim was that defendants

18  "displayed the video – a protected work under the Copyright Act – and his

19  performance therein – a copyrightable dramatic work under the Copyright Act –

20  without his permission").

21  Plaintiff's appearance as Wolfman[14] in a work fixed in a tangible medium

22  (the Photograph) is the basis for his right-of-publicity claims, which are therefore

23  preempted.  <u>See also</u> <u>Somerson v. McMahon</u>, 956 F.Supp.2d 1345, 1355 (N.D. Ga.

24  2012) (wrestler's misappropriation claims, arising from reproduction and

25  distribution of videos containing his performances and preparation of derivative

26  _____

27  [14] <u>See</u> <u>Olson v. NBC</u>, 855 F.2d 1446, 1452 (9th Cir.1988) ("copyright

28  protection may be afforded to characters visually depicted in a television series or in
    a movie" for "characters who are especially distinctive").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

works, were preempted); <u>Ray v. ESPN</u>, 783 F.3d 1140, 1143 (8th Cir. 2015) (same; rejecting argument that "focal point" of claim was use of plaintiff's likeness, not the telecast embodying it); <u>Dryer v. NFL</u>, 55 F.Supp.3d 1181, 1201-02 (D. Minn. 2014) (same).

<u>Second</u>, for preemption purposes, "a claim for a violation of the right to publicity against a copyrighted work will lie only if that work is used for advertising, not in an expressive work." <u>Maloney v. T3Media</u>, 94 F.Supp.3d 1128, 1138 (C.D. Cal. 2015), <u>aff'd</u>, 853 F.3d 1004 (9th Cir. 2017) (citation omitted). <u>See also Ray v. ESPN</u>, 2014 WL 2766187, at *5 (W.D. Mo. Apr. 8, 2014), <u>aff'd</u>, 783 F.3d 1140 (8th Cir. 2015), at *5 ("[i]f [a] performer ... objects to the reproduction … of [a work containing his likeness] in an expressive, non-advertising use, then the claim is one of copyright infringement, not of infringement of the right of publicity").  This dooms Plaintiff's claims.

Despite his vague references to promotions (<u>e.g.</u>, Cmplt. ¶¶ 10, 80, 90, 94), Plaintiff does not assert any facts showing a promotional use of his image, nor could he do so.  The Complaint arises entirely from the use of the Photograph in one scene <u>in the Film itself</u>.  Cmplt. ¶ 38.  <u>Accord id.</u> ¶ 54 (alleging Paramount misappropriated Plaintiff's image by "plac[ing] it <u>into the movie</u>") (emphasis added).  <u>See Maloney</u>, 853 F.3d at 1016 (misappropriation claim preempted where plaintiff was "objecting to the unauthorized distribution and republication of a copyrighted work, not the exploitation of his likeness on an unrelated product or in advertising").[15]

---

[15] That expressive works "are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." <u>Dryer</u>, 55 F.Supp.3d at 1193.  <u>Accord Maloney</u>, 853 F.3d at 1016 n. 9 ("[t]he fact that the [challenged works] were sold for a profit … does not alter our analysis").

Moreover, even a cursory review of the Film demonstrates that the Photograph served an expressive purpose. As Plaintiff concedes, it shows "the fictional Top Gun Class of 1986," including three of the primary characters in the Original Film – Iceman, Goose, and Maverick – standing next to each other, left of Plaintiff. Cmplt. ¶ 38; Exs. D-E. Plaintiff also necessarily concedes that the Photograph in the Film shows him in character "as Wolfman." Cmplt. ¶ 46. The Photograph is used to explain how Maverick's trainees learned the connection between him and Rooster, by identifying Rooster's father Goose as a member of Maverick's Top Gun class. Ex. B at 44:38. This expressive purpose does not seek an advantage from Plaintiff's personal image, weighing in favor of preemption. See In re Jackson, 972 F.3d 25, 48-49 (2d Cir. 2020) (when "the advantage sought by the defendant flows from the reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff)" that "argues in favor of preemption").

Third, Plaintiff's assertion that Paramount "destroyed any purported copyright" when it "altered the image" is nonsensical. Cmplt. ¶ 5. No authority is cited for this proposition, which is contrary to the plain terms of the Copyright Act. See 17 U.S.C. §§ 101, 103 ("subject matter of copyright … includes … derivative works"; derivative works include those "based upon one or more preexisting works, such as … [an] art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted"). Altering a work does not diminish the owner's copyright in the preexisting material. See 17 U.S.C. § 103(b). It has no bearing whatsoever on the preemption analysis.

Finally, Plaintiff's theory effectively would give any individual depicted in a photograph "veto power" over its use and monopoly control over the copyright. Maloney, 94 F. Supp. 3d at 1138. But copyright in a photograph vests in the photographer, not the subject. See Alaska Stock v. Houghton-Mifflin-Harcourt Publ. Co., 747 F.3d 673, 678 (9th Cir. 2014) ("[w]hen a photographer has fixed an

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

image in a tangible medium of expression, he owns the copyright"); 17 U.S.C. § 201(a).  Plaintiff's misappropriation claims are preempted and must be dismissed.

### 4.    Plaintiff's Contract Permitted The Use.

Plaintiff's claims independently fail because the parties' Agreement gave Paramount the right to use Plaintiff's likeness in connection with the "Wolfman" character.  See Pl. Ex. A; see also Daniel, 8 Cal.App.5th at 393-394 (dismissing actor's misappropriation claims on alternative grounds that contract permitted use).

Under California law, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."  Klamath Water Users Prot. Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999).[16]

The Agreement states unambiguously that Paramount "will be the sole and exclusive owner of all rights in the role or character portrayed by [Plaintiff], including name, likeness and distinctive characterizations thereof," and has "the right to merchandise and exploit such role or character, and the right to use [Plaintiff's] name and likeness in connection therewith …."  Pl. Ex. A at 7 ¶ A. Nothing in that sentence limits Paramount's exploitation of the Wolfman character – or its exploitation of Plaintiff's likeness "in connection therewith" – to the Original Film.[17]  Indeed, the reference to "merchandis[ing]" rights conclusively

---

[16] See also Cal. Civ. Code § 1638 ("[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); id. § 1639 ("[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible …").

[17] Because this language is unambiguous, Plaintiff cannot add new limitations that are not part of the contract.  In any event, his claim that "movie sequels were virtually non-existent" at the time (Cmplt. ¶ 1), is plainly wrong.  E.g., Kuhn v. Vortex, 747 F.2d 1022, 1023 (5th Cir. 1984) (case involving "film sequel agreements" from 1981); Universal City Studios v. Film Ventures Intern., 543 F.Supp. 1134, 1139 (C.D. Cal. 1982) (copyright action over blockbuster 1978 "sequel to 'Jaws' entitled 'Jaws 2'").

demonstrates that Paramount's rights were *not* limited to the Original Film (or even to expressive works).  Id.  And as Plaintiff concedes, the Photograph in the Film shows him "as Wolfman, wearing his signature cowboy hat."  Cmplt. ¶ 46 (emphasis added).  This use of Plaintiff's image is expressly permitted by the Agreement (Pl. Ex. A);[18] he is not depicted anywhere else in the Film.  See Cmplt. ¶ 38; Ex. B.

Plaintiff references two other sentences, neither of which assists him.  One grants Paramount rights to use Plaintiff's "name, photograph, likeness, voice … and biography in connection with advertising, publicizing, and exploiting the Picture," but that pertains only to a separate use of Plaintiff's own persona in promoting the Original Film – hence the reference to his personal "biography."  Cmplt. ¶ 36 (citing Pl. Ex. A at 7 ¶ A).  The other makes Paramount the owner of all results and proceeds of Plaintiff's "services" on the Original Film, but that applies to "literary and musical material" and "designs and inventions of" Plaintiff, i.e., additional rights beyond the exploitation of the character.  Id.  Neither line restricts the separate clause explicitly granting Paramount broader rights in the character – including any use of Plaintiff's image in connection with the character – which is not limited to uses in "the Picture."  See Levi Strauss & Co. v. Aetna Cas. & Sur. Co., 184 Cal.App.3d 1479, 1486 (1986) (the court "does not have the power to ... insert in the contract language which [Plaintiff] now wishes were there").  Because the Agreement explicitly authorizes the complained-of use, Plaintiff's claims fail.

---

[18] Plaintiff's characterization of the underlying Photograph as a "personal picture" is irrelevant; he admits that it was used it in the Film to portray him in character as Wolfman, not as Barry Tubb, and Plaintiff does not (and cannot) allege that he owns the copyright in the Photograph.  Cmplt. ¶¶ 40, 46.  His attempt to distance his appearance in the Photograph from his character also fails; he admits wearing Wolfman's "signature cowboy hat" in the Photograph, and the character's flight suit.  Cmplt. ¶¶ 40, 46.  He claims that he was wearing a "personal watch," but to the extent it is visible at all, it is virtually indistinguishable from the watch Wolfman wears in "Top Gun."  Compare Ex. D with Ex. C at 33:41-33:48.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**5.      Plaintiff's Statutory Misappropriation Claim Fails For Additional Reasons.**

Section 3344 only applies to the nonconsensual use of a likeness "on or in <u>products, merchandise, or goods</u>, or for purposes of advertising or selling, or soliciting purchases of, <u>products, merchandise, goods, or services</u>." Cal. Civ. Code § 3344(a) (emphasis added).  Consequently, the court in <u>de Havilland</u> raised the "preliminary question of whether the portrayal of a real person in a television program (or a book, play, or film) constitutes the 'use' of that person's … 'likeness' 'on or in' a product, merchandise, or good." 21 Cal. App. 5th at 857.  The court strongly suggested that the answer is "no," citing the Ninth Circuit's observation that a film is a constitutionally-protected expressive work, "'not speech proposing a commercial transaction.'" <u>Id.</u> (quoting <u>Sarver</u>, 813 F.3d at 905).  Because the court found de Havilland's claims were constitutionally barred, it did not decide the issue. <u>Id.</u>  But for the same reasons, this Court can and should hold that Plaintiff has failed to allege an actionable "use" of his likeness because he appears only in the Film itself, not in connection with a product or other commercial item.  <u>Id.</u>

In addition, Plaintiff's Section 3344 claim fails under the statute's "definable group" exemption.  The statute expressly states that plaintiffs bringing claims over photographs must "be represented as individuals rather than solely as members of a definable group represented in the photograph." Cal. Civ. Code § 3344(b)(2).  "A person or persons shall be considered to be represented as members of a definable group if they are represented in the photograph solely as a result of being present at the time the photograph was taken and have not been singled out as individuals in any manner." <u>Id.</u> § 3344(b)(3).

The Photograph is a classic "group" image; the unaltered version shows cast members from the Original Film posing with their Navy trainers; in the Film, it is portrayed as Maverick's Top Gun class.  <u>See</u> Ex. B at 44:22; Pl. Ex. C; Cmplt. ¶¶ 38, 39; <u>Lightbourne v. Printroom</u>, 307 F.R.D. 593, 602 (C.D. Cal. 2015) ("photos of

football and crew teams posing ... fit ... definition" of definable group).  The Film shows the entire group photograph, with 20 people visible, then three close-ups that focus primarily on <u>Maverick and Goose</u>, with Plaintiff partly visible on the side.  <u>See</u> Ex. B at 44:22, 44:28, 44:34; 44:43.  The dialogue focuses <u>exclusively</u> on Maverick and Goose, not Wolfman.  <u>Id.</u>  Because Plaintiff is not "singled out as [an] individual[] in any manner" (Cal. Civ. Code § 3344(b)(3)),[19] his claim fails on this additional ground.

**B.     Plaintiff's Derivative Negligence Claim Is Meritless.**

Plaintiff's claim for "Negligent Hiring, Supervision, and/or Retention" is entirely reliant on his right-of-publicity claims, and fails for the same reasons.  <u>See</u> Cmplt. ¶ 103 (alleging Paramount "negligently hired, supervised, and/or retained ... employees, agents, and/or servants [who] misappropriated PLAINTIFF's Image…"); <u>Polydoros</u>, 67 Cal.App.4th at 326 (dismissing similar tack-on negligence claim where right-of-publicity claims were barred by the First Amendment); <u>Olivia N. v. NBC</u>, 126 Cal.App.3d 488, 493 (1981) (rejecting negligence liability).

Plaintiff's negligence claim independently fails because he has not pleaded any cognizable duty owed by Paramount.  <u>See</u> <u>Felton v. Schaeffer</u>, 229 Cal.App.3d 229, 239 (1991) (declining to recognize "negligence duty" where claim was based on allegedly false publication); <u>Gangland</u>, 730 F.3d at 961 (plaintiff failed to show that "[d]efendants had a legal duty not to reveal private facts about him during the broadcast"); <u>Baugh v. CBS</u>, 828 F. Supp. 745, 758 (N.D. Cal. 1993) (no legal duty between TV producers and interviewee).  This tack-on claim must be stricken.

---

[19] The screenshot attached to Plaintiff's Complaint (Exhibit D) appears to have been cropped to make Plaintiff appear more prominent; no such close-up shot of Maverick, Goose, and Wolfman is in the Film.  <u>See</u> Exs. D-E.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## C.     Plaintiff's Contract Claim Fails.

Plaintiff's Sixth Cause of Action also fails, because Plaintiff's own pleading makes clear that there was no breach by Paramount.

As discussed above, Paramount's use of Plaintiff's image is authorized under the express language of the Agreement.  See Section IV.A.4, supra.  That alone forecloses Plaintiff's contract claim.  But even without this express authorization, Plaintiff's contract claim fails because he does not, and cannot, identify any obligation in the Agreement that Paramount purportedly breached.

As Plaintiff repeatedly notes, the Agreement only obligated Paramount to compensate Plaintiff for "services" he rendered on "Top Gun" – i.e., "principal photography, filming, post-production, looping and/or dubbing, and other services required to complete and promote the [Original Film]."  Cmplt. ¶ 115.  Accord Cmplt. ¶¶ 33, 42, 114, 120.  Plaintiff does not, and cannot, allege that Paramount failed to perform any such obligations, nor is there anything in the Agreement that prohibited Paramount from using his likeness in another film.  He cites a boilerplate term stating that modifications must be in writing (Cmplt. ¶ 121 (citing Pl. Ex. A, p. 3 ¶ 10)), but that does not create any additional obligation.  See Section IV.A.4.[20] Plaintiff's contract claim fails as a matter of law.

## D.     Plaintiff Cannot Maintain A Claim For "Injunctive Relief."

Plaintiff's attempt to plead a separate claim for "injunctive relief" fails because it "is a remedy, not a cause of action."  Callaway v. Mercedes-Benz USA, 2016 WL 11756827, at *3 (C.D. Cal. May 12, 2016).

---

[20] Plaintiff is like a licensor arguing that a licensee who exceeded the scope of the license was in "breach."  Courts consistently hold that does not give rise to a contract claim.  E.g., MDY Indus., v. Blizzard Entertainment, 629 F.3d 928, 939 (9th Cir. 2010) (breach of contractual terms limiting a license constitutes copyright infringement, not breach of contract).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

14

It also seeks an unconstitutional prior restraint, which would violate the First Amendment.  Cmplt. ¶¶ 125-26; Garcia v. Google, 786 F.3d 733, 747 (9th Cir. 2015) (order requiring takedown of film was "classic prior restraint of speech" against which there is a "historical and heavy presumption").  This claim also must be stricken.

## V.    CONCLUSION

In Garcia, the Ninth Circuit rejected an actor's attempt to use copyright law to exert control over a film in which she appeared, observing that "a weak copyright claim cannot justify censorship in the guise of authorship." 786 F.3d at 736.  The same principle applies to Plaintiff's even weaker claims.  His state law claims are barred as a matter of law, and should be stricken with prejudice.  See Herring Networks, 8 F.4th at 1161 (affirming grant of SLAPP motion where defendant's conduct was "well within the bounds of what qualifies as protected speech under the First Amendment" and therefore "amendment would have been futile").

DATED: April 18, 2024

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT

By: /s/ Kelli L. Sager
　　　　　Kelli L. Sager
Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Paramount Pictures Corporation, certifies that this brief contains 6,944 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 18, 2024

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT

By: /s/ Dan Laidman
              Dan Laidman
Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

SPECIAL MOTION TO STRIKE
4873-7635-0135v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899