DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
50 California Street, 23rd Floor
San Francisco, California   94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY TUBB, an individual,<br><br>                Plaintiff,<br><br>    vs.<br><br>PARAMOUNT PICTURES<br>CORPORATION, a Delaware<br>corporation,<br><br>             Defendant. | Case No. **2:24-cv-01417-GW-BFMx**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br>**[Fed. R. Civ. Proc. 12(b)(6)]**<br><br>[Notice Of Motion And Special Motion to Strike (C.C.P. § 425.16); Declaration Of Dan Laidman With Exhibits D-F; and Notice of Manual Filing Of DVDs With Exhibits B-C Concurrently Filed; [Proposed] Order Concurrently Lodged]<br><br>Hearing Date:  June 24, 2024<br>Time:          8:30 a.m.<br>Courtroom:   9D<br><br>Action Filed:  February 21, 2024 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2024, at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 9D of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA 90012, defendant Paramount

Pictures Corporation ("Paramount" or "Defendant") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Complaint brought by Plaintiff Barry Tubb ("Plaintiff"), in its entirety, with prejudice.[1]

This Motion is made on the following grounds:  Because all of Plaintiff's claims arise directly from the content of Paramount's 2022 motion picture "Top Gun: Maverick" (the "Film"), a sequel to the iconic 1986 film "Top Gun" ("Top Gun" or "Original Film"),[2] his claims fail as a matter of law for the following reasons:

1.     Plaintiff's Second Cause of Action, which purports to assert a claim under Section 43 of the Lanham Act (15 U.S.C. § 1125), fails for each of the following independent reasons:

    a.  The First Amendment bars Plaintiff's Lanham Act claim because it arises solely from the content of an expressive work, and the use of Plaintiff's likeness is artistically relevant, and not explicitly misleading.  Memorandum, Section III.A.1; <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 999 (2d Cir. 1989).

    b.  Plaintiff's Lanham Act claim also fails as a matter of law because there could be no plausible allegation of likely consumer confusion given the context in which Plaintiff's image appears in the Film.  Memorandum, Section III.A.2.

2.     Plaintiff's Third and Fourth Causes of Action for misappropriation of

---

[1] Defendant concurrently is filing a Special Motion To Strike Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action pursuant to California Code of Civil Procedure § 425.16 ("SLAPP Motion").  This Motion incorporates by reference the relevant arguments and authorities included in the SLAPP Motion.

[2] DVDs of both films are attached as Exhibits B-C to the concurrently-submitted Notice Of Manuel Filing.  <u>See</u> Laidman Decl. ¶ 3; <u>see also</u> concurrently-filed Request For Judicial Notice ("RJN").

---

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

his publicity rights should be dismissed for each of the following independent reasons:

    a. The use of Plaintiff's likeness in the Film is constitutionally protected under the First Amendment, and cannot give rise to liability for misappropriation.  Id., Section III.B.1.

    b. Plaintiff's misappropriation claims independently are barred by California's transformative-use defense.  Id., Section  III.B.2.

    c. Plaintiff's misappropriation claims also are preempted by federal copyright law, because they arise solely from the use of a photograph that includes Plaintiff's image, which falls within the subject matter of the Copyright Act, and the rights Plaintiff seeks to control are equivalent to the rights granted to copyright holders under the Act.  17 U.S.C. §§ 102(a), 301(a); Memorandum, Section III.B.3.

    d. Plaintiff's misappropriation claims fail because he contractually agreed that Paramount owns all rights to the character Plaintiff portrayed in the Original Film, and the agreement (which is attached to the Complaint) gives Paramount the right to use Plaintiff's likeness in connection with that character.  Memorandum, Section III.B.4.

3.    Plaintiff's Third Cause of Action for statutory misappropriation also fails for each of the following additional reasons:

    a. Plaintiff's claim does not involve an alleged use of his image in connection with products, goods, or merchandise, as required by Cal. Civ. Code § 3344.  Id., Section III.B.5.

    b. Plaintiff's claim is barred by the statute's exemption for claims purporting to arise from the depiction of a person as part of a definable group, where the individual is not singled out.  Cal. Civ. Code § 3344(b)(2)-(3); Memorandum, Section III.B.5.

4.    Plaintiff's Fifth Cause of Action for negligent hiring, supervision,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and/or retention fails for each of the following independent reasons:

    a.  The claim is derivative of Plaintiff's misappropriation claims, and fails for the same reasons.  Memorandum, Section III.C.

    b.  Plaintiff has not pleaded (and cannot plead) that Paramount owed him any legally-cognizable duty, as required to give rise to a negligence claim.  Id.

5.    Plaintiff's Sixth Cause of Action for breach of contract fails because he cannot identify any provision in the relevant contract that Paramount breached, and because the Agreement expressly authorizes the challenged use of his image in connection with the character he portrayed in the Original Film.  Id., Section III.D.

6.    Plaintiff's First Cause of Action for declaratory relief fails because it is derivative of Plaintiff's other claims and fails for the same reasons as those claims.  Id., Section III.E.

7.    Plaintiff's Seventh Cause of Action for injunctive relief fails because it is a remedy, not a cause of action; in addition, granting injunctive relief in this case would constitute an improper prior restraint, in violation of Paramount's First Amendment rights.  Id., Section III.F.

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Request For Judicial Notice; Declaration Of Dan Laidman With Exhibits D-F; on the Notice Of Manual Filing Of DVDs With Exhibits B-C; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action, including the concurrently-filed SLAPP Motion; and on such argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 11, 2024.  See Laidman Decl. ¶ 8.

For all of the reasons stated, Paramount respectfully requests that this Court dismiss Plaintiff's lawsuit in its entirety, including its First, Second, Third, Fourth,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Fifth, Sixth, and Seventh Causes of Action, with prejudice.

DATED: April 18, 2024

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT


By: /s/ Kelli L. Sager
                Kelli L. Sager

Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF ARGUMENT ........................................................ 1

II.     STATEMENT OF FACTS ............................................................ 2

III.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.......................... 4

    A.      Plaintiff's Lanham Act Claim Fails.............................................. 4

        1.      The First Amendment Bars Plaintiff's Lanham Act Claim. ....... 4

        2.      There Is No Plausible Lanham Act Claim Here. ..................... 7

    B.      Plaintiff's Misappropriation Claims Fail As A Matter Of Law. .......... 8

        1.      The First Amendment Bars Misappropriation Claims Arising From Expressive Works.............................................. 8

        2.      Paramount's Use Is Transformative...................................... 11

        3.      Plaintiff's Claims Are Preempted. ....................................... 12

        4.      Plaintiff's Contract Permitted The Use................................. 16

        5.      Plaintiff's Statutory Misappropriation Claim Fails For Additional Reasons. ........................................................ 18

    C.      Plaintiff's Derivative Negligence Claim Is Meritless. ..................... 20

    D.      Plaintiff's Breach Of Contract Claim Fails. ................................. 20

    E.      Plaintiff's Declaratory Relief Claim Fails.................................... 21

    F.      Plaintiff Has No "Injunctive Relief" Claim. ................................ 21

IV.     CONCLUSION........................................................................ 22

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

<u>Brown v. Electronic Arts</u>,
   724 F.3d 1235 (9th Cir. 2013) ............................................................. 4, 5, 7, 22

<u>Brown v. Twentieth Century Fox</u>,
   799 F.Supp. 166 (D.D.C. 1992) ...........................................................7

<u>Burnett v. Twentieth Century Fox</u>,
   491 F.Supp.2d 962 (C.D. Cal. 2007) ...................................................8

<u>Burrow-Giles Lithographic v. Sarony</u>,
   111 U.S. 53 (1884)................................................................................ 16

<u>Callaway v. Mercedes-Benz USA</u>,
   2016 WL 11756827 (C.D. Cal. May 12, 2016) ................................. 21

<u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>,
   25 Cal.4th 387 (2001) ......................................................................... 9, 11

<u>Daly v. Viacom</u>,
   238 F.Supp.2d 1118 (N.D. Cal. 2002) ............................................... 11

<u>Daniel v. Wayans</u>,
   8 Cal.App.5th 367 (2017) ................................................................... 12, 16

<u>Davis v. Walt Disney Co.</u>,
   430 F.3d 901 (8th Cir. 2005) ...............................................................8

<u>de Havilland v. FX Networks</u>,
   21 Cal.App.5th 845 (2018) ................................................................ 10, 11, 19

<u>Del Madera Props. v. Rhodes & Gardner</u>,
   820 F.2d 973 (9th Cir. 1987), <u>overruled on other grounds in</u> <u>Fogerty v.</u>
   <u>Fantasy, Inc.</u>, 510 U.S. 517 (1994) ............................................... 13, 14

<u>Dickinson v. Ryan Seacrest Enterprises</u>,
   2018 WL 6112628 (C.D. Cal. Oct. 1, 2018), <u>aff'd</u> 839 Fed.App'x 110 (9th
   Cir. 2020) ...............................................................................................6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Dryer v. NFL,
   55 F.Supp.3d 1181 (D. Minn. 2014) ................................................................. 15

E.S.S. Entertainment 2000 v. Rock Star Videos,
   547 F.3d 1095 (9th Cir. 2008) ...................................................................... 5, 6

Felton v. Schaeffer,
   229 Cal.App.3d 229 (1991) ............................................................................ 20

Fortres Grand v. Warner Bros.,
   763 F.3d 696 (7th Cir. 2014) ........................................................................... 8

Garcia v. Google,
   786 F.3d 733 (9th Cir. 2015) ......................................................................... 21

Gottlieb v. Paramount Pictures,
   590 F.Supp.2d 625 (S.D.N.Y 2008) ................................................................ 8

Guglielmi v. Spelling-Goldberg Prods.,
   25 Cal.3d 860 (1979) ................................................................................. 9, 10

Halicki Films, LLC v. Sanderson Sales & Mktg.,
   547 F.3d 1213 (9th Cir. 2008) ....................................................................... 15

Hammerling v. Google,
   615 F.Supp.3d 1069 (N.D. Cal. 2022) ........................................................... 21

In re Jackson,
   972 F.3d 25 (2d Cir. 2020) ............................................................................. 16

In re Syntex Corp. Sec. Litig.,
   95 F.3d 922 (9th Cir. 1996) ............................................................................. 4

Jack Daniel's Properties v. VIP Products,
   599 U.S. 140 (2023) ........................................................................... 5, 18, 19

Jackson v. Netflix,
   506 F.Supp.3d 1007 (C.D. Cal. 2020) .................................................... 4, 5, 22

Jules Jordan Video v. 144942 Canada,
   617 F.3d 1146 (9th Cir. 2010) ....................................................................... 14

Kinney v. Oppenheim,
   2011 WL 13217573 (C.D. Cal. Mar. 3, 2011) ................................................ 15

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Klamath Water Users Prot. Ass'n v. Patterson,
  204 F.3d 1206 (9th Cir. 1999) ............................................................ 17

Knievel v. ESPN,
  393 F.3d 1068 (9th Cir. 2005) ..............................................................4

Kuhn v. Vortex,
  747 F.2d 1022 (5th Cir. 1984) ............................................................ 17

Landham v. Lewis Galoob Toys,
  227 F.3d 619 (6th Cir. 2000) ............................................................. 12

Laws v. Sony Music Entm't, Inc.,
  448 F.3d 1134 (9th Cir. 2006) ..................................................... 13, 14

Levi Strauss & Co. v. Aetna Cas. & Sur. Co.,
  184 Cal.App.3d 1479 (1986) ............................................................. 18

Lightbourne v. Printroom,
  307 F.R.D. 593 (C.D. Cal. 2015) ....................................................... 19

Louis Vuitton Malletier S.A. v. Warner Bros. Entm't,
  868 F.Supp.2d 172 (S.D.N.Y. 2012) ....................................... 4, 5, 6, 7

Maloney v. T3Media,
  853 F.3d 1004 (9th Cir. 2017) ............................................. 13, 14, 15

Maloney v. T3Media,
  94 F.Supp.3d 1128 (C.D. Cal. 2015), aff'd, 853 F.3d (9th Cir. 2017) ........ 15, 16

Marino v. Countrywide Financial,
  26 F.Supp.3d 955 (C.D. Cal. 2014) ................................................... 21

Mattel, Inc. v. Walking Mountain Prods.,
  353 F.3d 792 (9th Cir. 2003) ...............................................................1

MDY Indus., v. Blizzard Ent.,
  629 F.3d 928 (9th Cir. 2010) ............................................................. 21

NBA v. Motorola,
  105 F.3d 841 (2d Cir. 1997) .............................................................. 13

Polydoros v. Twentieth Century Fox,
  67 Cal.App.4th 318 (1997) ......................................................... 9, 20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Punchbowl v. AJ Press,
   90 F.4th 1022 (9th Cir. 2024) ................................................................................5

Rogers v. Grimaldi,
   875 F.2d 994 (2d Cir. 1989) ........................................................... *passim*

Ross v. Roberts,
   222 Cal.App.4th 677 (2013) .......................................................... 12

Sarver v. Chartier,
   813 F.3d 891 (9th Cir. 2016) ................................................. 9, 10, 19

Sporting Times v. Orion Pictures,
   291 F.Supp.3d 817 (W.D. Ky. 2017) ........................................ 6, 7, 8

Tellabs v. Makor Issues & Rights,
   551 U.S. 308 (2007) ........................................................................4

Twentieth Century Fox v. Empire Distrib.,
   875 F.3d 1192 (9th Cir. 2017) ....................................................... 5, 6

Universal City Studios v. Film Ventures Intern.,
   543 F.Supp. 1134 (C.D. Cal. 1982) ........................................... 17

University of Alabama Bd. of Trustees v. New Life Art,
   683 F.3d 1266 (11th Cir. 2012) ...................................................5

Winter v. DC Comics,
   30 Cal.4th 881 (2003) ........................................................ 2, 11, 12

**Statutes**

17 U.S.C.
   § 101 ............................................................................... 13, 16
   § 102(a) ................................................................................ 13
   § 103(b) ................................................................................ 16
   § 106(1)-(3) ........................................................................ 12
   § 301(a) .............................................................................. 12

California  Civil Code
   § 1638 .................................................................................. 17
   § 3344(a) ............................................................................. 19
   § 3344(b)(2) ........................................................................ 19
   § 3344(b)(3) ................................................................... 19, 20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Lanham Act .......................................................................................... *passim*

**Rules**

Fed. Rule Civ. Proc. Rule 12 .......................................................................5

Fed. Rule Civ. Proc. Rule 12(b)(6) ...................................................... 4, 8

**Constitutional Provisions**

First Amendment ................................................................................. *passim*

**Other Authorities**

J. Thomas McCarthy, The Rights of Publicity and Privacy § 8:47 (2d ed. 2023) ................................................................................................. 10

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

"Recognizing that First Amendment concerns in free expression are particularly present in the realm of artistic works," the Ninth Circuit has adopted a strict test designed to curtail meritless Lanham Act claims targeting the content of expressive works.  <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 807 (9th Cir. 2003).  Such claims must be dismissed unless the use has "no artistic relevance," or if it "explicitly misleads as to the source or the content of the work." <u>Id.</u>  Where it is clear from the Complaint and the work itself that this test is not satisfied, the claim should be dismissed with prejudice.

This is just such a case.  Plaintiff's claims arise from a scene in "Top Gun: Maverick," a sequel to the iconic 1986 film "Top Gun."  Plaintiff acted in the Original Film; he is shown briefly in a group photograph identified as the 1986 Top Gun class, which connects the Film's storyline to events in its predecessor.  Plaintiff does not appear anywhere else in the Film (and is not listed in the credits), or in any related advertising or merchandising.  Paramount's use of Plaintiff's image in this context clearly is protected by the First Amendment, and other well-established law.

<u>First</u>, because Plaintiff's Lanham Act claim arises from the content of an artistic work, it is subject to the constitutionally-based <u>Rogers</u> test (derived from <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989)).  The use of Plaintiff's image in the Film is artistically relevant and not explicitly misleading; consequently, his claim cannot survive constitutional scrutiny.  Section III.A.  Moreover, as a matter of law, this kind of use cannot plausibly cause any likelihood of confusion.  <u>Id.</u>

<u>Second</u>, the First Amendment also bars Plaintiff's statutory and common law misappropriation claims.  Section III.B.1.  Courts consistently have held such claims cannot arise from expressive works like films, given the heightened constitutional protection that applies to such content-based claims.  <u>Id.</u>  Plaintiff's claims also are barred under California's "transformative use" defense, because his

image was, at most, a small piece of the "raw material" utilized in the Film.  <u>Winter v. DC Comics</u>, 30 Cal.4th 881, 888 (2003); Section III.B.2.

    <u>Third</u>, Plaintiff's right-of-publicity claims are preempted by copyright law, because they arise from acts equivalent to the exclusive rights granted under federal law – the reproduction and display of a copyrighted work.  Section III.B.3.

    <u>Fourth</u>, the parties' 1985 Agreement gave Paramount the unfettered right to use Plaintiff's image in connection with the character he played.  Section III.B.4.  And his statutory claim independently fails because Section 3344 applies only to uses connected to products and merchandise, not expressive works like the Film.  Section III.B.5.  The statute also exempts group photographs, like the one here, where the plaintiff is not singled out.  <u>Id.</u>

    <u>Fifth</u>, Plaintiff's tack-on negligence claim duplicates his right-of-publicity claims, and fails for the same reasons.  Section III.C.  Plaintiff also cannot plead any legally-cognizable duty owed to him by Paramount.  <u>Id.</u>

    <u>Sixth</u>, Plaintiff's contract claim fails because Paramount did not breach any term of their Agreement; instead, it expressly authorizes the use here.  Section III.D.

    <u>Seventh</u>, Plaintiff's First Cause of Action for declaratory relief is derivative of Plaintiff's other claims, and fails for the same reasons.  Section III.E.

    <u>Finally</u>, Plaintiff's claim for injunctive relief does not state a separate cause of action, and would be an unconstitutional prior restraint.  Section III.F.

    For all of these reasons, Paramount respectfully requests that this Court grant the Motion, and dismiss Plaintiff's Complaint with prejudice.

## II.   STATEMENT OF FACTS

    In the film "Top Gun," Tom Cruise portrayed a talented, arrogant fighter pilot (nicknamed "Maverick"), participating in the Navy's elite "Top Gun" training program.  Anthony Edwards' character ("Goose") was Maverick's wingman and best friend; Val Kilmer played "Iceman," Maverick's rival.  During a training exercise, Maverick's plane suffers engine failure, resulting in an accident in which

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Goose dies; Maverick has to overcome his guilt and other emotional baggage to
2  save Iceman's life when the trainees face actual combat.  Ex. C at 1:04:00-1:09:15;
3  1:28:01-1:41:29.

4      Plaintiff appeared in "Top Gun" as "Wolfman,"  another trainee, who is
5  depicted wearing a cowboy hat and silver watch.  E.g., Ex. C at 26:49; 33:41-33:48.
6  The Complaint alleges that Plaintiff entered into a contract in 1985 ("Agreement")
7  to participate in the Original Film.  Cmplt. ¶ 113.  It provides that Paramount is "the
8  sole and exclusive owner of all rights in the role or character portrayed by
9  [Plaintiff], including name, likeness and distinctive characterizations thereof";
10  Paramount has the unfettered right "to merchandise and exploit such role or
11  character," and "to use [Plaintiff]'s name and likeness in connection therewith...."
12  Cmplt. ¶ 117; Pl. Ex. A at 7 ¶ A (emphasis added).

13      Plaintiff alleges that photographer Herb Ritts took a "behind-the-scenes"
14  picture ("Photograph") depicting cast members with Navy pilots who "flew in and
15  consulted on the" Original Film.  Cmplt. ¶ 39; Pl. Ex. C.  The Photograph shows
16  cast members wearing the flight suits their characters wore in "Top Gun"; Plaintiff
17  also is wearing his character's "signature" cowboy hat.  See Pl. Ex. C; Ex. D.

18      The Film was released in 2022.  It takes place 30 years later, focusing on a
19  new generation of pilots Maverick must train for a risky mission.  Ex. B.  Much of
20  the Film focuses on Maverick's fraught relationship with trainee Rooster, who is
21  Goose's son.  Rooster's rival ("Hangman") and another classmate learn about this
22  history when they see a photograph of the 1986 Top Gun class, including Maverick
23  and Goose, on a plaque with their characters' names, and realize Goose and Rooster
24  have the same last name.  See Pl. Ex. C; Ex. D.

25      The picture used in the Film is a slightly altered version of the Photograph.  It
26  only appears for a few seconds, starting with the entire "Class of 1986" before
27  zooming in briefly on Maverick and Goose, as Hangman points them out to his
28

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

classmate.  Ex. B at 44:22-44:28.  Wolfman is standing partly behind Maverick in the photo.  Ex. D.

Plaintiff's seven causes of action all arise solely from the inclusion of his image in the Photograph, as depicted briefly in that scene.  Cmplt. ¶¶ 61-126.

### III.   PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  In adjudicating the motion, the court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party.  In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  The court may consider materials referenced in the Complaint, as well as material that may properly be judicial noticed.[3]

Plaintiff's claims arise entirely from the Film's content, which is referenced (along with the Original Film) throughout his Complaint.  E.g., Cmplt. ¶¶ 1-11, 33-48.  The films' content may be considered on a motion to dismiss.  See Brown v. Electronic Arts, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013) (dismissing Lanham Act claim involving video game; "district court properly considered" game "through the 'incorporation by reference' doctrine").[4]  As discussed below, a review of the films' content and the Complaint make clear Plaintiff's claims are baseless.

### A.   Plaintiff's Lanham Act Claim Fails.

### 1.   The First Amendment Bars Plaintiff's Lanham Act Claim.

---

[3] See Tellabs v. Makor Issues & Rights, 551 U.S. 308, 322 (2007) (court may consider "documents incorporated into the complaint by reference"); Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (12(b)(6) motion properly considered web pages referenced in complaint); concurrently-filed RJN.

[4] See also Jackson v. Netflix, 506 F.Supp.3d 1007, 1013 (C.D. Cal. 2020) (taking judicial notice of TV program's content in granting 12(b)(6) motion); Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, 868 F.Supp.2d 172, 176 n.6 (S.D.N.Y. 2012) (same; content of film).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Circuit has "adopted the Second Circuit's approach from <u>Rogers v. Grimaldi</u>, which requires courts to construe the Lanham Act to apply to artistic works **only** where the public interest in avoiding consumer confusion outweighs the public interest in free expression." <u>E.S.S. Entertainment 2000 v. Rock Star Videos</u>, 547 F.3d 1095, 1099 (9th Cir. 2008); <u>see also</u> <u>Brown</u>, 724 F.3d at 1239.  Under the <u>Rogers</u> test, no claim can arise under the Lanham Act "'unless the [use] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use] explicitly misleads as to the source or the content of the work.'"  <u>Id.</u> (quoting <u>Rogers</u>, 875 F.2d at 999).  <u>See also</u> <u>University of Alabama Bd. of Trustees v. New Life Art</u>, 683 F.3d 1266, 1278 (11th Cir. 2012) (test applies to "false endorsement claims") (collecting cases).[5]

The importance of protecting First Amendment rights warrants dismissal of claims involving expressive works at the earliest possible stage.  <u>See</u> <u>Louis Vuitton</u>, 868 F.Supp.2d at 183-84 ("[i]n a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression"); <u>Jackson</u>, 506 F.Supp.3d at 1014 (same; "[t]he Ninth Circuit applies <u>Rogers</u> to Lanham Act claims, often at the Rule 12 stage").  Plaintiff cannot meet his burden under the <u>Rogers</u> test.

**a.    <u>Rogers</u>' Artistic Relevance Threshold Is Easily Met Here.**

In measuring artistic relevance, the "bar is set low: the level of relevance merely must be above zero."  <u>Twentieth Century Fox v. Empire Distrib.</u>, 875 F.3d

---

[5] In <u>Jack Daniel's Properties v. VIP Products</u>, 599 U.S. 140 (2023), the Court limited application of <u>Rogers</u> where a defendant used the plaintiff's trademark to identify the source of its own merchandise; in other words, it "used a trademark as a trademark."  <u>Id.</u> at 146.  That did not alter application of the test to expressive works.  <u>See</u> <u>Punchbowl v. AJ Press</u>, 90 F.4th 1022, 1031 (9th Cir. 2024) (<u>Jack Daniel's</u> "was confined to a 'narrow' point of law, that <u>Rogers</u> does not apply when a mark is used as a mark"; thus "preexisting Ninth Circuit precedent adopting and applying <u>Rogers</u> otherwise remains intact and binding").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1192, 1198 (9th Cir. 2017).  See also Louis Vuitton, 868 F.Supp.2d at 178 (test is satisfied "unless the use 'has **no** artistic relevance to the underlying work **whatsoever**'") (citing Rogers).

Plaintiff's Complaint effectively concedes the issue of artistic relevance.  His claims arise from a scene in the Film in which trainees discover the relationship between Maverick and Rooster's father by looking at a photograph depicting the 1986 Top Gun class.  Cmplt. ¶ 38; Ex. B at 44:22-44:44.  That scene, and the group photograph, is significant to the Film's plot, as Plaintiff asserts.  Cmplt. ¶ 38 (describing scene as "pivotal").  This satisfies the first prong of the Rogers test.  See Sporting Times v. Orion Pictures, 291 F.Supp.3d 817, 825-26 (W.D. Ky. 2017) (test met where "the face of the Complaint describes the artistic connection"); E.S.S., 547 F.3d at 1100 ("low threshold" for artistic relevance met because plaintiff's mark furthered the work's "look and feel"); Louis Vuitton, 868 F.Supp.2d at 178 (use of product in movie scene was artistically relevant to introduce "comedic tension" between characters).

### b.    Nothing In The Film Is Explicitly Misleading.

Plaintiff cannot satisfy the second prong of the Rogers test because the Film does not "explicitly mislead[] as to the source or the content of the work."  Empire, 875 F.3d at 1196.  This inquiry requires "an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that caused such consumer confusion.'"  Id. at 1199 (quoting Rogers, 875 F.2d at 1001; emphasis added).

Plaintiff does not, and cannot, identify any "explicit" or "overt" indication that he endorsed the Film.[6]  Empire, 875 F.3d at 1199.  He tries to claim confusion

---

[6] Plaintiff points to screen credits as an established means of identifying individuals involved with a particular work (e.g., Cmplt. ¶ 37, Ex. B); but he was not mentioned in the Film's credits.  Ex. B at 2:01:36-2:09:43.  See also Dickinson v. Ryan Seacrest Enterprises, 2018 WL 6112628, at *6 (C.D. Cal. Oct. 1, 2018), aff'd 839 Fed.App'x 110 (9th Cir. 2020) (dismissing celebrity's Lanham Act claim under Rogers because her appearance in a TV show was not an "explicit" indication

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

based solely on his image being in a photograph shown briefly in the Film, but "[i]t is well established that the use of a mark alone is not enough to satisfy this prong of the <u>Rogers</u> test." <u>Brown</u>, 724 F.3d at 1245. Nor can it be met by speculation about the "impact of the use"; instead, Plaintiff must point to something in the Film that "<u>explicitly</u>" suggests that he endorsed it. <u>Id.</u> 1246 (original emphasis). Because Plaintiff cannot satisfy the <u>Rogers</u> test, his Lanham Act claim is constitutionally barred.

### 2.   There Is No Plausible Lanham Act Claim Here.

Plaintiff's claim fails even without applying <u>Rogers</u>, because the use here cannot plausibly cause viewers to be confused about endorsement.

In cases largely pre-dating the widespread adoption of <u>Rogers</u>, courts consistently found, as a matter of law, that reasonable viewers would not be confused by seeing a plaintiff's likeness (or trademark) in a fictional film or TV show. Courts "disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so)…." <u>Louis Vuitton</u>, 868 F.Supp.2d at 183.

For example, in <u>Brown v. Twentieth Century Fox</u>, 799 F.Supp. 166 (D.D.C. 1992), the court rejected James Brown's Lanham Act claim, concluding that no "reasonable jury" could conclude, based on a film's inclusion of a 27-second clip of him performing, that Brown "endorsed the film or personally approved the use of the clip …." <u>Id.</u> at 173. Similarly, in <u>Sporting Times</u>, the court found that the Lanham Act claim was constitutionally barred, but independently held, as a matter of law, that there could not be any likelihood of confusion from a film's brief

_____

of any endorsement of the show; noting that plaintiff was not listed in the show's credits).

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

depiction of a magazine with the same title as the plaintiff's publication. 291 F.Supp.3d at 824-25. It was "simply not plausible" that using the fictional publication "in a brief montage, … to inform viewers about the arc of [the protagonist's] career," would "confuse" the plaintiffs' trademark "as being the 'origin' of the film itself." Id. at 824, 825.[7]

Plaintiff's image appears for a few seconds in a group photograph identified as depicting the Top Gun "class" from the Original Film, in a scene explaining the relationship between two other characters in that film. See Cmplt. ¶ 38; Ex. B at 44:22-44:44. Plaintiff is not the focus of the scene and is not specifically mentioned; he is not otherwise depicted in the Film; and he is not listed in its credits. Ex. B at 2:01:36-2:09:43. No reasonable viewer would glean anything from the photograph about Plaintiff, other than that he portrayed "Wolfman" in the Original Film. Plaintiff's Lanham Act claim fails for this additional reason.

**B.    Plaintiff's Misappropriation Claims Fail As A Matter Of Law.**

Plaintiff's Third and Fourth Causes of Action, for statutory and common-law misappropriation, arise entirely from the appearance of his image in the Film. E.g., Cmplt. ¶¶ 78, 89. These claims also fail.

## 1.    The First Amendment Bars Misappropriation Claims Arising From Expressive Works.

---

[7] Accord Burnett v. Twentieth Century Fox, 491 F.Supp.2d 962, 973 (C.D. Cal. 2007) ("no reasonable viewer would mistake the" use of plaintiff's likeness in animated TV show as endorsement); Fortres Grand v. Warner Bros., 763 F.3d 696, 700 (7th Cir. 2014) (affirming Rule 12(b)(6) dismissal of trademark claim based on depiction of trademark in film, "The Dark Knight"); Davis v. Walt Disney, 430 F.3d 901, 905-06 (8th Cir. 2005) (rejecting claims based on alleged use in fictional film, noting "circumstances surrounding the appellees' use of the mark make confusion less likely than in a traditional trademark infringement action"); Gottlieb v. Paramount Pictures, 590 F.Supp.2d 625, 635 (S.D.N.Y 2008) (claim that using plaintiff's pinball machine in fictional film "would confuse ordinarily prudent consumers as to the sponsorship or affiliation … is simply not plausible").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Ninth Circuit has held that a right-of-publicity claim targeting expressive speech is "presumptively unconstitutional." Sarver v. Chartier, 813 F.3d 891 at 903 (9th Cir. 2016). "State laws, including state common law, may not restrict expression because of its message, its ideas, its subject matter, or its content." Id. (quotation omitted). Because "California's right of publicity law clearly restricts speech based upon its content," it is subject to the highest level of constitutional scrutiny; it "may be justified only if the government proves that [application is] narrowly tailored to serve compelling state interests." Id. Under controlling Ninth Circuit and California law (and consistent with cases from across the country), there is no such countervailing interest where a right-of-publicity claim targets the content of an expressive work.

For example, in Guglielmi v. Spelling-Goldberg Prods., 25 Cal.3d 860, 866 (1979), the California Supreme Court rejected a right-of-publicity claim brought by the heirs of actor Rudolph Valentino based on a fictional film. Id. at 866. In a concurrence that the Court has recognized as controlling,[8] then-Chief Justice Bird explained that the film was an expressive work entitled to First Amendment protection, and there was no countervailing interest that could "clearly outweigh the value of free expression in this context." Id. at 871 (Bird, C.J., concurring). Consequently, a "cause of action for the appropriation of Valentino's right of publicity through the use of his name and likeness in respondents' film may not be maintained." Id. at 872 (emphasis added). See also Polydoros v. Twentieth Century Fox, 67 Cal.App.4th 318, at 320-21, 324-25 (1997) (rejecting misappropriation claim based on alleged use of the plaintiff's likeness in a fictional film; "[b]ecause respondents were creating a fictionalized artistic work, their

_____

[8] The Chief Justice's opinion "commanded the support of the majority of the court," because it was joined or endorsed by three other Justices. Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 396 n.7 (2001).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

endeavor is constitutionally protected" and "<u>Guglielmi</u> unequivocally prevents appellant from proceeding on his claim for commercial appropriation of identity").

In <u>Sarver</u>, the Ninth Circuit applied this strict First Amendment scrutiny to a right-of-publicity claim alleging the unauthorized use of the plaintiff's identity in "The Hurt Locker," a fictional film about the Iraq war.  813 F.3d at 903-04.  The court granted the filmmakers' SLAPP motion, finding the movie "is speech that is fully protected by the First Amendment," and there was no "compelling state interest in preventing the defendants' speech."  <u>Id.</u> at 905-06.  Similarly, a state appeals court applied heightened First Amendment scrutiny in striking actress Olivia de Havilland's right-of-publicity claim based on the portrayal of her in the TV docudrama "Feud."  <u>de Havilland v. FX Networks</u>, 21 Cal.App.5th 845, 860-61 (2018).  The court noted that federal and state courts consistently have followed <u>Guglielmi</u> and its progeny, and "Feud is as constitutionally protected as was the film in <u>Sarver</u>, The Hurt Locker."  <u>Id.</u> at 860.[9]

Plaintiff's right-of-publicity claims hinge entirely on the inclusion of his image in the Film.  Cmplt. ¶¶ 77-101.  But as a matter of law, the creators of the Film could show Plaintiff "without acquiring [the] rights" to his image.  <u>de Havilland</u>, 21 Cal.App.5th at 861.  There is no countervailing interest that could "outweigh the value of free expression in this context"; thus, Plaintiff's right of publicity claims "may not be maintained."  <u>Guglielmi</u>, 25 Cal.3d at 872 (Bird, C.J., concurring).[10]

_____

[9] Courts across the country are in accord.  <u>See</u> J. Thomas McCarthy, <u>The Rights of Publicity and Privacy</u> § 8:47 (2d ed. 2023) ("[t]he majority view is that fictional works are protected by the First Amendment as being informative or entertaining 'speech,' such that fictional uses of identity cannot be actionable"; collecting cases); SLAPP Motion, note 17.

[10] Plaintiff vaguely alludes to his image being used to 'market and promote' the Film, but he does not identify any such promotional use.  <u>E.g.</u>, Cmplt. ¶¶ 10, 80.  Even if the Photograph was used in promotions for the Film, however, Plaintiff would not have a viable misappropriation claim, because "[a]dvertising for

## 2. Paramount's Use Is Transformative.

The use of Plaintiff's likeness in the Film also is protected under California's transformative use test. "'[W]hen an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame.'" <u>Winter</u>, 30 Cal.4th at 890 (quoting <u>Comedy III</u>, 25 Cal.4th at 407). In <u>de Havilland</u>, the court observed that typically it is not necessary to reach the transformative use test where, as here, the claims arise from a traditional expressive work like a film or television show (as opposed to "products and merchandise" like the t-shirts at issue in <u>Comedy III</u>). 21 Cal.App.5th at 863.

Nonetheless, the court applied the test in the alternative, holding that a television program portraying the plaintiff was sufficiently transformative because her likeness was but one of the "raw materials from which the [show] is synthesized." <u>Id.</u> Thus, the series' "marketability and economic value" did not "derive primarily from [celebrity's] fame" but rather "[came] principally from … the creativity, skill, and reputation" of the series' creators and actors." <u>Id.</u> at 864 ("[w]hile viewers may have 'tuned in' to see these actors and watch this Hollywood tale, there is no evidence that de Havilland as a character was a significant draw").

Here, Plaintiff's image appears for a few seconds in a two-hour film, in a group photograph where the focus is on Maverick and Goose. It "defies credibility" to suggest that the Film derived any economic value "from appropriation of plaintiff's name and identity" instead of from "the creativity, skill, and reputation,"

---

constitutionally protected expressive media shares the constitutional immunity of the media use itself." McCarthy at § 8:66. <u>Accord</u> <u>Daly v. Viacom</u>, 238 F.Supp.2d 1118, 1123 (N.D. Cal. 2002) (because TV show was "an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of the Film's creators and performers.  <u>Ross v. Roberts</u>, 222 Cal.App.4th 677, 688 (2013).

The use of Plaintiff's image also is transformative because the Film "do[es] not depict [P]laintiff[] literally" – that is, as Barry Tubb – but rather as a "fanciful, creative character[]" – as "Wolfman," identifiable to viewers via the "signature" cowboy hat and the context in which he appears (alongside Maverick, Goose, Iceman, and other members of the fictional "Top Gun" class of 1986).  <u>Winter</u>, 30 Cal.4th at 890, 892.  <u>See</u> <u>also</u> <u>Landham v. Lewis Galoob Toys</u>, 227 F.3d 619 (6th Cir. 2000) (actor failed to show that defendant's toy "invokes his own persona, as distinct from that of the fictional character" he portrayed; rejecting misappropriation claim because "the focus of any right of publicity analysis must always be on the actor's own persona and not the character's").

Moreover, according to Plaintiff, the Photograph was <u>literally</u> transformed: he alleges it was adapted from a behind-the-scenes picture, and altered to fit the Film's storyline.  <u>See</u> Cmplt. ¶¶ 38-40.  That is a classic example of a protected transformation of a likeness.  <u>See</u> <u>Daniel</u>, 8 Cal.App.5th at 396-97 (First Amendment barred right-of-publicity claims brought by actor in film based on producer's use of actor's image in Internet post related to film that "added something new to [plaintiff's] image, altering it with a new expression, meaning, or message").  For this additional reason, Plaintiff's claims are barred.

### 3. Plaintiff's Claims Are Preempted.

The Copyright Act provides the sole remedy for all claims invoking rights "equivalent to any of the exclusive rights within the general scope of copyright … in works of authorship[.]"  17 U.S.C. § 301(a).[11]  Where a state law claim falls within the exclusive sphere of the Copyright Act, it is preempted and must be

---

[11] These include the "exclusive right" to reproduce and distribute the copyrighted work.  17 U.S.C. § 106(1)-(3).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dismissed.

There is "a two-part test to determine whether a state law claim is preempted by the [Copyright] Act." Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137 (9th Cir. 2006). First, a court must determine whether the claims concern a "work" covered by the Copyright Act – i.e., one of the categories of "original works of authorship fixed in any tangible medium of expression" in Section 102, such as a pictorial work or motion picture. Id. at 1140; 17 U.S.C. § 102(a). Second, the court determines "whether the rights asserted under state law are equivalent to … the exclusive rights of copyright holders." Laws, 448 F.3d at 1138. This requires preemption unless the claim has "an extra element which changes the nature of the action." Del Madera Props. v. Rhodes & Gardner, 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). Both prongs are met here.

### a.     The Work Is Within the Subject Matter of Copyright.

The first prong is met "when the work of authorship being copied or misappropriated 'fall[s] within the ambit of copyright protection.'" NBA v. Motorola, 105 F.3d 841, 848 (2d Cir. 1997). Here, Plaintiff's claims are based on the Film's depiction of a photograph that includes his image. Cmplt. ¶¶ 38, 39, 77, 88. Photographs indisputably fall within the ambit of copyright protection, which extends to all "original works of authorship fixed in any tangible medium of expression," including "pictorial … works," which, by definition, include photographs. 17 U.S.C. §§ 101, 102(a). The initial requirement is met. See Maloney v. T3Media, 853 F.3d 1004, 1011-16 (9th Cir. 2017) (right-of-publicity claims based on defendant's licensing of photographs depicting plaintiffs fell within subject matter of copyright).

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### b.     The Rights Here Are Equivalent To Exclusive Rights Under Copyright Law.

Section 106 of the Copyright Act grants certain rights, including the rights to display works to the public and to reproduce works.[12]  Because Plaintiff seeks to control Paramount's reproduction and display of a photograph containing an image of him – that is, because the rights he seeks to control are equivalent to copyright rights – Plaintiff's claims satisfy the second part of the preemption test.  See Del Madera, 820 F.2d at 976-77 (to survive preemption, claim "must protect rights which are qualitatively different from … copyright rights").

Plaintiff cannot plead around preemption.  First, where, as here, the plaintiff's likeness is embodied in a copyrightable work which the defendant uses in its own artistic work, preemption applies regardless of whether the plaintiff purports to protect his "image" or "persona."  See Cmplt. ¶¶ 4-5.  In Laws, the court rejected the plaintiff's attempt to distinguish copyright claims as "protect[ing] ownership rights to a work of art," while publicity claims "concern[] the right to protect one's persona and likeness."  448 F.3d at 1139.  Instead, it held that where the defendant is not exploiting plaintiff's likeness other than as it appears in a fixed copyrightable work, the claim falls within the subject matter of copyright.  Id. at 1139.

The Ninth Circuit applied the same principle in reaching the "obvious conclusion" that an actor's claim challenging duplication of his "persona," as fixed in a video, was preempted.  Jules Jordan Video, 617 F.3d at 1153.  See also Maloney, 853 F.3d at 1007, 1019 (misappropriation claims based on "non-commercial art use" of photographs depicting plaintiffs "challenge control of the

_____

[12] Plaintiff concedes that he does not own the copyright in the Photograph.  Cmplt. ¶¶ 4, 39.  Plaintiff's claims are preempted regardless of the owner.  See Jules Jordan Video v. 144942 Canada, 617 F.3d 1146, 1154 (9th Cir. 2010) ("[i]f a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired").

artistic work itself," not the use of plaintiffs' underlying likenesses); <u>Kinney v. Oppenheim</u>, 2011 WL 13217573, at *8 (C.D. Cal. Mar. 3, 2011) (publicity claim preempted where its "essence" was that defendants "displayed [a] video – a protected work under the Copyright Act – and [plaintiff's] performance therein – a copyrightable dramatic work under the Copyright Act – without his permission").

Plaintiff's appearances as Wolfman[13] in works fixed in a tangible medium (the Photograph and the Film) are the bases for his right-of-publicity claims, which are preempted.  <u>See</u> <u>Dryer v. NFL</u>, 55 F.Supp.3d 1181, 1201-02 (D. Minn. 2014) (football players' misappropriation lawsuit arising from video of them playing was preempted).

<u>Second</u>, for preemption purposes, "a claim for a violation of the right to publicity against a copyrighted work will lie only if that work is used for advertising, not in an expressive work." <u>Maloney v. T3Media</u>, 94 F.Supp.3d 1128, 1138 (C.D. Cal. 2015), <u>aff'd</u>, 853 F.3d at 1004 (9th Cir. 2017) (citation omitted). This dooms Plaintiff's claims.

Despite his vague references to promotions (<u>e.g.</u>, Cmplt. ¶¶ 10, 80), Plaintiff does not assert any <u>facts</u> showing a promotional use of his image, nor could he do so.  The Complaint arises entirely from the use of the Photograph <u>in the Film itself</u>. <u>See</u> Cmplt. ¶¶ 38, 54.  <u>Accord</u> <u>id.</u> ¶ 2 (alleging Plaintiff's image was used in the Film).  <u>See</u> <u>Maloney</u>, 853 F.3d at 1016, n.9 (misappropriation claim preempted where plaintiff is "objecting to the unauthorized distribution and republication of a copyrighted work, not the exploitation of his likeness on an unrelated product or in advertising"; "[t]he fact that the [challenged works] were sold for a profit … does not alter our analysis").

---

[13] <u>See</u> <u>Halicki Films, LLC v. Sanderson Sales & Mktg.</u>, 547 F.3d 1213, 1224 (9th Cir. 2008) (film characters that are "sufficiently delineated" and "display consistent, widely identifiable traits" receive copyright protection).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, even a cursory review of the Film demonstrates that the Photograph served an expressive purpose.  As Plaintiff concedes, it shows "the fictional Top Gun Class of 1986," and is used to explain how Rooster's classmates learned the connection between him and Maverick.  See Cmplt. ¶ 38, Exs. D-E.  This expressive purpose does not seek an advantage from Plaintiff's personal image, weighing in favor of preemption.  See In re Jackson, 972 F.3d 25, 48-49 (2d Cir. 2020) (when "the advantage sought by the defendant flows from the reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff)" that "argues in favor of preemption").

Third, Plaintiff's assertion that Paramount "destroyed any purported copyright" when it "altered the image" is nonsensical.  Cmplt. ¶ 5.  No authority is cited for this proposition, which is contrary to the plain terms of the Copyright Act.  See 17 U.S.C. §§ 101, 103 ("subject matter of copyright … includes … derivative works"; derivative works include those "based upon one or more preexisting works, such as … [an] art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted").  Altering a work does not diminish the owner's copyright in the preexisting material.  See 17 U.S.C. § 103(b).  It has no bearing on the preemption analysis.

Finally, Plaintiff's theory would effectively grant every individual depicted in a photograph "veto power" over its use and monopoly control over the copyright.  Maloney, 94 F.Supp.3d at 1138.  This is contrary to the long-established rule that the copyright in a photograph vests in the photographer, not the subject.  See Burrow-Giles Lithographic v. Sarony, 111 U.S. 53, 60 (1884).  Plaintiffs' misappropriation claims are preempted and must be dismissed.

### 4.    Plaintiff's Contract Permitted The Use.

Plaintiff's claims independently fail because the parties' Agreement gave Paramount the right to use Plaintiff's likeness in connection with the "Wolfman" character.  See Pl. Ex. A; see also Daniel v. Wayans, 8 Cal.App.5th 367 at 393, 394

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    (2017) (dismissing misappropriation claims on First Amendment grounds and,

2    alternatively, because contract permitted use).

3         Under California law, "[c]ontract terms are to be given their ordinary

4    meaning, and when the terms of a contract are clear, the intent of the parties must be

5    ascertained from the contract itself."  <u>Klamath Water Users Prot. Ass'n v. Patterson</u>,

6    204 F.3d 1206, 1210 (9th Cir. 1999).[14]  The Agreement states unambiguously that

7    Paramount "will be the sole and exclusive owner of all rights in the role or character

8    portrayed by [Plaintiff], including name, likeness and distinctive characterizations

9    thereof," and that it has "the right to merchandise and exploit such role or character,

10   and the right to use [Plaintiff's] name and likeness in connection therewith …."  Pl.

11   Ex. A at 7 ¶ A.  Nothing in that sentence limits Paramount's exploitation of the

12   Wolfman character – or its exploitation of Plaintiff's likeness "in connection

13   therewith" – to the Original Film.[15]  Indeed, the reference to "merchandise"

14   conclusively demonstrates that Paramount's rights to the Wolfman character (and to

15   the use of Plaintiff's image in connection therewith) were *not* limited to the Original

16   Film (or even to expressive works).  And as Plaintiff concedes, the Film shows him

17   "<u>as Wolfman</u>, wearing his signature cowboy hat."  Cmplt. ¶ 46 (emphasis added).

18

19

20

21        [14] <u>See</u> <u>also</u> Cal. Civ. Code § 1638 ("[t]he language of a contract is to govern

22   its interpretation, if the language is clear and explicit, and does not involve an

     absurdity"); <u>id.</u> § 1639 ("[w]hen a contract is reduced to writing, the intention of the

23   parties is to be ascertained from the writing alone, if possible …").

24        [15] Because this language is unambiguous, Plaintiff cannot add new limitations

25   that are not in the contract.  In any event, his rationalization that "movie sequels

     were virtually non-existent" in 1985 (Cmplt. ¶ 1), is plainly wrong.  <u>E.g.</u>,

26   <u>Kuhn v. Vortex</u>, 747 F.2d 1022, 1023 (5th Cir. 1984) (case involving "film sequel

27   agreements" from 1981); <u>Universal City Studios v. Film Ventures Intern.</u>, 543

     F.Supp. 1134, 1139 (C.D. Cal. 1982) (case involving 1978 "sequel to 'Jaws'

28   entitled 'Jaws 2'").

This use of Plaintiff's image is expressly permitted by the Agreement.  Pl. Ex. A.[16]
He is not depicted anywhere else in the film.  Cmplt. ¶ 38; Ex. B.

Plaintiff references two other sentences, neither of which assists him.  One grants Paramount rights to use Plaintiff's "name, photograph, likeness, voice … and biography in connection with advertising, publicizing, and exploiting the Picture," but that pertains only to a separate use of Plaintiff's <u>own persona</u> in <u>promoting </u>the Original Film – hence the reference to his personal "biography."  Cmplt. ¶ 36 (citing Pl. Ex. A at 7 ¶ A).  The other makes Paramount the owner of all results and proceeds of Plaintiff's "services" on the Original Film, but that applies to "literary and musical material" and "designs and inventions of" Plaintiff, <u>i.e.</u>, additional rights beyond the exploitation of the <u>character</u>.  <u>Id.</u>  Neither line restricts the separate clause explicitly granting Paramount broader rights in the character – including any use of Plaintiff's image in connection with the character – which is not limited to uses in "the Picture."  <u>See</u> <u>Levi Strauss & Co. v. Aetna Cas. & Sur. Co.</u>, 184 Cal.App.3d 1479, 1486 (1986) (the court "does not have the power to ... insert in the contract language which [Plaintiff] now wishes were there").  Because the Agreement explicitly authorizes the complained-of use, Plaintiff's claims fail.

### 5.    Plaintiff's Statutory Misappropriation Claim Fails For Additional Reasons.

Section 3344 only applies to the nonconsensual use of a likeness "on or in <u>products, merchandise, or goods</u>, or for purposes of advertising or selling, or

---

[16] Plaintiff's characterization of the underlying Photograph as a "personal picture" is irrelevant; he admits Paramount <u>used</u> it in the Film to portray him as "Wolfman," not as Barry Tubb (Cmplt. ¶¶ 40, 46), and Plaintiff does not (and cannot) allege that he owns the copyright in the Photograph.  His attempt to distance his appearance in the Photograph from his character also fails, because he admits wearing Wolfman's "signature cowboy hat" in the Photograph, and the character's flight suit.  Cmplt. ¶¶ 40, 46.  His claim that he was wearing a "personal watch" is irrelevant; it is virtually indistinguishable from the watch Wolfman wears in "Top Gun."  <u>Compare</u> Ex. D with Ex. C at 33:41-33:48.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

soliting purchases of, <u>products, merchandise, goods, or services</u>." Cal. Civ. Code § 3344(a) (emphasis added). Consequently, the court in <u>de Havilland</u> raised the "preliminary question of whether the portrayal of a real person in a television program (or a book, play, or film) constitutes the 'use' of that person's … 'likeness' 'on or in' a product, merchandise, or good." 21 Cal.App.5th at 857. The court strongly suggested that the answer is "no," citing the Ninth Circuit's observation that a film is a constitutionally-protected expressive work, "'not speech proposing a commercial transaction.'" <u>Id.</u> (quoting <u>Sarver</u>, 813 F.3d at 905). For the same reasons, this Court should hold that Plaintiff has failed to allege an actionable "use" of his likeness because it was not in connection with a product or other commercial item. <u>Id.</u>

In addition, Plaintiff's Section 3344 claim fails under the statute's "definable group" exemption. Plaintiffs suing over photographs must "be represented as individuals rather than solely as members of a definable group represented in the photograph"; plaintiffs are in a "definable group if they are represented in the photograph solely as a result of being present at the time the photograph was taken and have not been singled out as individuals in any manner." Cal. Civ. Code §§ 3344(b)(2)-(3).

The Photograph is a classic "group" image; the unaltered version shows cast members from the Original Film posing with their Navy trainers; in the Film, it is portrayed as Maverick's Top Gun class. <u>See</u> Ex. B at 44:22; Pl. Ex. C; Cmplt. ¶¶ 38, 39; <u>Lightbourne v. Printroom</u>, 307 F.R.D. 593, 602 (C.D. Cal. 2015) ("photos of ... teams posing" fit definition of definable group). The Film shows the entire group photograph, with 20 people visible, then three close-ups that focus primarily on <u>Maverick and Goose</u> (as does the dialogue), with Plaintiff's character visible in part. <u>See</u> Ex. B at 44:22, 44:28, 44:34; 44:43. Because Plaintiff is not "singled out as

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

[an] individual[] in any manner" (Cal. Civ. Code § 3344(b)(3)),[17] his Section 3344 claim fails on this additional ground.

## C.  Plaintiff's Derivative Negligence Claim Is Meritless.

Plaintiff's Fifth Cause of Action for Negligent Hiring Etc. is entirely duplicative of his misappropriation claims (see Cmplt. ¶ 103), and fails for the same reasons.  See Polydoros, 67 Cal.App.4th at 326 (dismissing similar tack-on negligence claim where right of publicity claims were barred by the First Amendment).  Plaintiff's negligence claim also fails because he has not pleaded any cognizable duty owed by Paramount.  See Felton v. Schaeffer, 229 Cal.App.3d 229, 239 (1991) (declining to recognize "negligence duty" where claim was based on allegedly false publication).

## D.  Plaintiff's Breach Of Contract Claim Fails.

Plaintiff's Sixth Cause of Action also fails, because Plaintiff's own pleading makes clear that there was no contractual breach by Paramount.  Paramount's use of Plaintiff's image is authorized by the Agreement, which alone forecloses this claim.  See Section III.B.4 supra.  But even without this express authorization, Plaintiff's contract claim fails because he cannot identify any obligation in the Agreement that Paramount purportedly breached.

Plaintiff acknowledges that the Agreement only obligated Paramount to compensate Plaintiff for "services" he rendered on Top Gun – i.e., "principal photography, filming, post-production, looping and/or dubbing, and other services required to complete and promote the [Original Film]."  Cmplt. ¶ 115.  Accord Cmplt. ¶¶ 33, 42, 114, 120.  Plaintiff does not, and cannot, allege that Paramount failed to perform its obligations, nor does the Agreement prohibit Paramount from using his likeness in another film.  Plaintiff cites a boilerplate term stating that

---

[17] The screenshot attached to Plaintiff's Complaint (Exhibit D) appears to be cropped to make Plaintiff appear more prominent; the Film has no such close-up shot of Maverick, Goose, and Wolfman.  See Exs. D-E.

modifications must be in writing (Cmplt. ¶ 121 (citing Pl. Ex. A, p. 3 ¶ 10)), but that does not create any additional obligation.  See Section III.B.4.[18]  Plaintiff's contract claim fails as a matter of law.

## E.      Plaintiff's Declaratory Relief Claim Fails.

Plaintiff's First Cause of Action for Declaratory Relief is wholly derivative of his other claims.  Cmplt. ¶¶ 61-67.  The "Declaratory Judgment Act does not provide an independent theory for recovery; if the underlying claims are dismissed, ... there is no basis for any declaratory relief." Hammerling v. Google, 615 F.Supp.3d 1069, 1097 (N.D. Cal. 2022). Plaintiff's declaratory relief claim fails along with the underlying claims.  Sections III.A-III.D.[19]

## F.      Plaintiff Has No "Injunctive Relief" Claim.

Plaintiff's attempt to plead an "injunctive relief" claim fails because it "is a remedy, not a cause of action." Callaway v. Mercedes-Benz USA, 2016 WL 11756827, at *3 (C.D. Cal. May 12, 2016).  An injunction also would be an unconstitutional prior restraint on speech.  Cmplt. ¶¶ 125-26; Garcia v. Google, 786 F.3d 733, 747 (9th Cir. 2015) (ordering takedown of film "is a classic prior restraint of speech" against which there is a "historical and heavy presumption").

---

[18] Plaintiff is like a licensor arguing that a licensee who exceeded the scope of the license was in "breach."  Courts consistently hold that does not give rise to a contract claim. E.g., MDY Indus., v. Blizzard Ent., 629 F.3d 928, 939 (9th Cir. 2010) (breach of contractual terms limiting license constitutes copyright infringement, not breach of contract).

[19] If Plaintiff seeks a declaration about "merchandise" or "advertising" for the Film (Cmplt. ¶¶ 61-62), there is no justiciable controversy; he does not, and cannot, allege that Paramount used (or sought to use) his image in that way.  See Marino v. Countrywide Financial, 26 F.Supp.3d 955, 961-62 (C.D. Cal. 2014) (declaratory relief claim not ripe where it was "contingent" on "events that may not occur as anticipated, or indeed at all").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# IV.   CONCLUSION

Where, as here, claims targeting the use of the plaintiff's likeness in an artistic work meet the requirements of the <u>Rogers</u> test, "the public interest in free expression outweighs the public interest in avoiding consumer confusion," and the claims should be dismissed on the pleadings.  <u>Brown</u>, 724 F.3d at 1248 (affirming dismissal without leave to amend); <u>Jackson</u>, 506 F.Supp.3d at 1016-17 (dismissing trademark and derivative claims with prejudice because TV show was "protected under <u>Rogers</u>," so "amendment would be futile").  Plaintiff's Complaint similarly should be dismissed with prejudice.

DATED: April 18, 2024                    DAVIS WRIGHT TREMAINE LLP
                                         KELLI L. SAGER
                                         DAN LAIDMAN
                                         SAM F. CATE-GUMPERT


                                         By: /s/Kelli L. Sager
                                                 Kelli L. Sager

                                         Attorneys for Defendant
                                         PARAMOUNT PICTURES
                                         CORPORATION

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Paramount Pictures Corporation, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 18, 2024            DAVIS WRIGHT TREMAINE LLP
                                 KELLI L. SAGER
                                 DAN LAIDMAN
                                 SAM F. CATE-GUMPERT

                                 By: /s/ Dan Laidman
                                             Dan Laidman
                                 Attorneys for Defendant
                                 PARAMOUNT PICTURES
                                 CORPORATION

MOTION TO DISMISS
4861-6734-2263v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899