DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
50 California Street, 23rd Floor
San Francisco, California   94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

Attorneys for Defendant
PARAMOUNT PICTURES CORPORATION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY TUBB, an individual,<br><br>                          Plaintiff,<br><br>        vs.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation,<br><br>                          Defendant. | Case No. **2:24-cv-01417-GW-BFMx**<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br>**[Fed. R. Civ. Proc. 12(b)(6)]**<br><br>Hearing Date:  June 24, 2024<br>Time:               8:30 a.m.<br>Courtroom:      9D<br><br>Action Filed:  February 21, 2024 |

Defendant Paramount Pictures Corporation ("Paramount") respectfully submits this Reply in support of its Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("MTD").[1]

_____

[1] Plaintiff's Opp. incorporates his separate response to Paramount's SLAPP Motion (C.C.P. § 425.16); similarly, this Reply incorporates the SLAPP Reply.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      SUMMARY OF ARGUMENT ........................................................ 1

II.     PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW. .......................... 1

     A.     Plaintiff's Lanham Act Claim Fails.......................................... 1

          1.     The First Amendment Bars Plaintiff's Lanham Act Claim. ...... 1

          2.     Plaintiff Cannot Demonstrate A Plausible Likelihood Of Confusion. ..................................................................... 5

     B.     Plaintiff's Misappropriation Claims Fail As A Matter Of Law. .......... 6

          1.     The First Amendment Bars Plaintiff's Claims........................ 6

          2.     The Transformative Use Defense Bars These Claims. .............. 9

          3.     Plaintiff's Claims Are Preempted By The Copyright Act. ...... 12

          4.     Plaintiff's Contract Permitted The Use.............................. 15

          5.     Other Defects Independently Bar Plaintiff's Statutory Claim. ........................................................................ 16

     C.     Plaintiff's Derivative Negligence Claim Is Meritless. ...................... 18

     D.     Plaintiff's Contract Claim Fails.............................................. 19

     E.     Plaintiff's Declaratory Relief Claim Fails.................................... 20

     F.     Plaintiff Has No "Injunctive Relief" Claim. ................................ 20

III.    CONCLUSION .......................................................................... 21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

Page

**Cases**

Academy of Motion Picture Arts and Sciences v. Creative House Promotions,
  944 F.2d 1446 (9th Cir. 1991) ...................................................................6

Acc MGFB Properties v. Viacom,
  54 F.4th 670 (11th Cir. 2022) ...................................................................3

Aldrin v. Topps Co., Inc.,
  2011 WL4500013 (C.D. Cal. Sept. 27, 2011) ......................................... 17

Allen v. National Video,
  610 F.Supp. 612 (S.D.N.Y. 1985).............................................................6

AMF Inc. v. Sleekcraft Boats,
  599 F.2d 341 (9th Cir. 1979) ............................................................... 5, 6

BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.,
  119 Cal.App.4th 848 (2004) ................................................................... 19

Brown v. Ames,
  201 F.3d 654 (5th Cir. 2000) ................................................................. 13

Brown v. Electronic Arts,
  724 F.3d 1235 (9th Cir. 2013) ...................................................... 2, 13, 21

Burnett v. Twentieth Century Fox,
  491 F.Supp.2d 962 (C.D. Cal. 2007) ........................................................6

Cardtoons v. MLBPA,
  95 F.3d 959 (10th Cir. 1996) ...................................................................8

Comedy III Prods., Inc. v. Gary Saderup, Inc.,
  25 Cal.4th 387 (2001) ..................................................... 7, 10, 11, 17

Cusano v. Klein,
  473 Fed. App'x 803 (9th Cir. 2012) ...................................................... 15

Daly v. Viacom, Inc.,
  238 F.Supp.2d 1118 (N.D. Cal. 2002) ......................................................7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Daniel v. Wayans,*
   8 Cal.App.5th 367 (2017) ........................................................... 4, 11, 12

*de Havilland v. FX Networks,*
   21 Cal.App.5th 845 (2018) ................................................... *passim*

*Dickinson v. Ryan Seacrest Enterprises,*
   2019 WL3035090 (C.D. Cal. Mar. 26, 2019)...................................2

*Dorsey v. National Enquirer,*
   973 F.2d 1431 (9th Cir. 1992) ................................................1

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001) .............................................. 13

*Duncan v. Cohen,*
   2008 WL2891065 (N.D. Cal. July 22, 2008)....................................4

*E.S.S. Entertainment 2000 v. Rock Star Videos,*
   547 F.3d 1095 (9th Cir. 2008) ........................................... 2, 3

*Erlich v. Menezes,*
   21 Cal.4th 543 (1999) ...................................................... 19

*ETW Corp. v. Jireh Publ'g,*
   332 F.3d 915 (6th Cir. 2003) ...............................................7

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of*
   *Culinary Workers,*
   542 F.2d 1076 (9th Cir. 1976) .............................................1

*Garrido v. Burger King Corp.*
   558 So.2d 79 (Fla. Dist. Ct. App. 1990) ................................. 14

*Guglielmi v. Spelling-Goldberg Prods.,*
   25 Cal.3d 860 (1979) .................................................... 8, 9

*HMH Pub. Co. v. Brincat,*
   504 F.2d 713 (9th Cir. 1974) ..............................................6

*Hoffman v. Cap. Cities/ABC, Inc.,*
   255 F.3d 1180 (9th Cir. 2001) ........................................... 17

*Hollywood Unlocked, Inc. v. Lifetime Entm't Servs., LLC,*
   2021 WL3265037 (C.D. Cal. Mar. 17, 2021)....................................7

iii

Joseph Burstyn, Inc. v. Wilson,
    343 U.S. 495 (1952) ............................................................................... 17

Jules Jordan Video v. 144942 Canada,
    617 F.3d 1146 (9th Cir. 2010) ............................................... 12, 13, 14

KNB Enterprises v. Matthews,
    78 Cal.App.4th 362 (2000) ................................................................. 13

Landham v. Lewis Galoob Toys,
    227 F.3d 619 (6th Cir. 2000) .............................................................. 10

Laws v. Sony Music Entm't,
    448 F.3d 1134 (9th Cir. 2006) ............................................... 12, 13, 14

Lewis v. Activision Blizzard, Inc.,
    2012 WL5199505 (N.D. Cal. Oct. 22, 2012) ................................... 15

Mattel, Inc. v. MCA Recs., Inc.,
    296 F.3d 894 (9th Cir. 2002) ................................................................5

Midler v. Ford Motor Co.,
    849 F.2d 460 (9th Cir. 1988) ................................................. 13, 14, 17

Milo & Gabby, LLC v. Amazon.com,
    12 F.Supp.3d 1341 (W.D. Wash. 2014)............................................ 15

Mintz v. Blue Cross,
    172 Cal.App.4th 1594 (2009) ............................................................ 19

Montz v. Pilgrim Films & Television, Inc.,
    649 F.3d 975 (9th Cir. 2011) ............................................................. 14

New W. Corp. v. NYM Co. of California,
    595 F.2d 1194 (9th Cir. 1979) ..............................................................6

No Doubt v. Activision,
    192 Cal.App.4th 1018 (2011) ..............................................................2

Opperman v. Path, Inc.,
    205 F.Supp.3d 1064 (N.D. Cal. 2016) .............................................. 14

Parks v. LaFace Records,
    329 F.3d 437 (6th Cir. 2003) ................................................................3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Polydoros v. Twentieth Century Fox,
   67 Cal.App.4th 318 (1997) .................................................................4

ProCD, Inc. v. Zeidenberg,
   86 F.3d 1447 (7th Cir. 1996) ............................................................ 17

R.A.V. v. City of St. Paul,
   505 U.S. 377 (1992)...........................................................................7

Rogers v. Grimaldi,
   875 F.2d 994 (2d Cir. 1989).................................................... 1, 2, 3, 4

Ryan v. Editions Ltd. W., Inc.,
   786 F.3d 754 (9th Cir. 2015) ........................................................... 14

Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
   40 F.3d 247 (7th Cir. 1994), as amended on denial of reh'g (Jan. 11, 1995).......6

Sarver v. Chartier.,
   813 F.3d 891 (9th Cir. 2016) ............................................. 8, 9, 16, 17

Schneider v. CDCR,
   151 F.3d 1194 (9th Cir. 1998) ......................................................... 20

Shorter v. Los Angeles Unified Sch. Dist.,
   2013 WL6331204 (C.D. Cal. Dec. 4, 2013).........................................4

Stewart Surfboards v. Disney Book Group,
   2011 WL12877019 (C.D. Cal. May 11, 2011) ......................................6

Timed Out, LLC v. Youabian,
   229 Cal.App.4th 1001 (2014) .......................................................... 13

Toho Co. v. Sears, Roebuck & Co.,
   645 F.2d 788 (9th Cir. 1981) .............................................................6

Twentieth Century Fox v. Empire Distrib.,
   875 F.3d 1192 (9th Cir. 2017) ................................................... 2, 3, 4

Vernor v. Autodesk, Inc.,
   621 F.3d 1102 (9th Cir. 2010) ......................................................... 17

Vijay v. Twentieth Century Fox Film Corp.,
   2014 WL 5460585 (C.D. Cal. Oct. 27, 2014)................................. 9, 11, 12, 21

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Waits v. Frito-Lay, Inc.,*
    978 F.2d 1093 (9th Cir. 1992) ................................................... 13, 14

*Walsh v. Nevada Dep't of Human Resources,*
    471 F.3d 1033 (9th Cir. 2006) ............................................................4

*Wells v. Chattanooga Bakery, Inc.,*
    448 S.W.3d 381 (Tenn. Ct. App. 2014)............................................ 15

*White v. Samsung Elecs. Am., Inc.,*
    971 F.2d 1395 (9th Cir. 1992), <u>as amended</u> (Aug. 19, 1992)...................... 6, 17

*Winchester Mystery House v. Global Asylum,*
    210 Cal.App.4th 579 (2012) .......................................................... 2, 3

*Winter v. DC Comics,*
    30 Cal.4th 881 (2003) ........................................................................1

*Woloszynska v. Netfilx, Inc.,*
    2023 WL7166828 (N.D. Cal. Oct. 30, 2023) ................................. 10, 11, 12, 19

*Worldwide Media, Inc. v. Twitter, Inc.,*
    2018 WL5304852 (N.D. Cal. Oct. 24, 2018) ................................... 19

*Zacchini v. Scripps–Howard Broadcasting Co.,*
    433 U.S. 562 (1977)...................................................................... 7, 8, 9

**Statutes**

California Civil Code
    § 3344(a) ......................................................................................... 17
    § 3344(b)(2) ............................................................................... 17, 18

Copyright Act............................................................................ 12, 13, 15

Lanham Act .................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................ 20

**Constitutional Provisions**

First Amendment............................................................................ *passim*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF ARGUMENT

Plaintiff ignores nearly all of the controlling authorities discussed in Paramount's Motion, and mischaracterizes the few decisions he does mention. These cases make clear that Plaintiff's Lanham Act claim is barred by well-established First Amendment protections, which he cannot evade by making arguments that the Ninth Circuit already rejected.  Plaintiff's meritless right-of-publicity and derivative state law claims also are barred by controlling law. Because Plaintiff cannot overcome the dispositive defenses raised in the Motion, his entire Complaint should be dismissed with prejudice.[2]

### II.   PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

**A.   Plaintiff's Lanham Act Claim Fails.**

**1.   The First Amendment Bars Plaintiff's Lanham Act Claim.**

There is no dispute that Plaintiff's Lanham Act claim arises entirely from the content of Paramount's Film "Top Gun: Maverick" ("Maverick" or "Film") – specifically, the depiction of Plaintiff as "Wolfman" in a group photograph shown for several seconds in what he describes as a "key scene" in the Film.  See MTD 6; MTD Opp. 2-3.  The constitutionally-based Rogers[3] test squarely applies to cases like this one:  it recognizes that Lanham Act claims based on expressive works "implicate the First Amendment right of free speech, which must be balanced

---

[2] Claims purporting to arise from expressive works, like Plaintiff's claims here, should be resolved at the earliest possible stage.  MTD 5, 22; see also Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers, 542 F.2d 1076, 1082-83 (9th Cir. 1976) (recognizing threat to First Amendment rights from the "mere pendency" of a lawsuit); Dorsey v. National Enquirer, 973 F.2d 1431, 1435 (9th Cir. 1992) ("speedy resolution" at the "earliest stage" of a case is essential for cases involving First Amendment rights); Winter v. DC Comics, 30 Cal.4th 881, 891 (2003) (same for right-of-publicity cases targeting expressive works).

[3] Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989).

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

against the public interest in avoiding consumer confusion" and that "consumers are less likely" to mistake a depiction in an expressive work as "a sign of association, authorship, or endorsement." <u>Twentieth Century Fox v. Empire Distrib.</u>, 875 F.3d 1192, 1198 (9th Cir. 2017) ("<u>Empire</u>").

Plaintiff's attempt to evade application of the <u>Rogers</u> test is baseless.  His argument that it applies only to titles has been squarely rejected by the Ninth Circuit.  MTD Opp. 6, 9.  As the court explained in <u>E.S.S. Entertainment 2000 v. Rock Star Videos</u>, 547 F.3d 1095 (9th Cir. 2008), "there is no principled reason why it ought not also apply" to a use "in the body of the work." <u>Id.</u> at 1099. <u>Accord</u> <u>Brown v. Electronic Arts</u>, 724 F.3d 1235, 1241 (9th Cir. 2013) ("[w]e have consistently employed the <u>Rogers</u> test in § 43(a) cases involving expressive works … including where the trademark or other identifying material in question was used in the body of a work rather than in the title"; dismissing Lanham Act claim involving use of celebrity's persona in videogame).  <u>See also</u> <u>Dickinson v. Ryan Seacrest Enterprises</u>, 2019 WL 3035090, at *9 (C.D. Cal. Mar. 26, 2019) (<u>Rogers</u> barred claims based on non-consensual appearance of celebrity in television show); MTD 5-7.

Plaintiff next tries to cast doubt on the applicability of the <u>Rogers</u> test by citing a <u>state</u> court decision, involving only <u>state law</u> claims.  MTD Opp. 7 (citing <u>No Doubt v. Activision</u>, 192 Cal.App.4th 1018 (2011)); <u>see</u> <u>id.</u> at 2025.  That court's decision not to apply the <u>Rogers</u> test to a state law claim is irrelevant; the court even acknowledged that under controlling Ninth Circuit law, the <u>Rogers</u> test applies to Lanham Act claims involving expressive works.  <u>Id.</u> at 1025, 1038.

Plaintiff's citation to <u>Winchester Mystery House v. Global Asylum</u>, 210 Cal.App.4th 579 (2012), is also off-point.  There, a state appeals court <u>rejected</u> the plaintiffs' argument that application of the <u>Rogers</u> test in a trademark case should be limited to "iconic" trademarks, holding that even if the Circuit had adopted such

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 a limitation (which it has not),[4] it was not binding; it then applied the Rogers test to

2 the plaintiffs' Lanham Act claims arising from the use of their trademarks in a film.

3 210 Cal.App.4th at 589-90.  In this Circuit, Rogers applies to Lanham Act claims

4 involving expressive works, like Plaintiff's Second Cause of Action here.  Under

5 that test, Plaintiff's claim plainly fails.

6     First, given Plaintiff's own allegation that he appears in a "pivotal" scene of

7 Maverick, and that the use of his "likeness in the scene is essential," he cannot

8 credibly dispute that the artistic relevance prong of Rogers is met here.  Cmplt. ¶¶ 2,

9 38; MTD 5-6.  Nonetheless, he remarkably "question[s]" whether the Photograph

10 has "artistic relevance," arguing the Film "is 'about' Maverick and Rooster, it is not

11 specifically 'about' Barry Tubb or his character, Wolfman…."  MTD Opp. 8.  But

12 the Ninth Circuit rejected this same argument in E.S.S., finding artistic relevance in

13 a videogame's depiction of the plaintiff's strip club, even though the game was not

14 "about" the club.  547 F.3d at 1100.  Emphasizing the "low threshold" for finding

15 artistic relevance, the court held it was sufficient that the use of the mark helped to

16 establish the "look and feel" of the city where the game takes place.  Id.  Accord

17 MGFB Properties v. Viacom, 54 F.4th 670, 681 (11th Cir. 2022) ("artistic relevance

18 does not turn on whether the work is about the trademark or its holder").[5]  The use

19 of the Photograph depicting the Top Gun "Class of 1986" (including Plaintiff as

20

21 _____

22     [4] E.g., Empire, 875 F.3d at 1197 (iconicity is a consideration, not a

23 requirement, under the first prong of Rogers analysis); E.S.S., 547 F.3d at 1100
   (lack of "cultural significance" of plaintiff's mark had no bearing on its relevance to

24 defendant's work).

25     [5] Plaintiff's citation to Parks v. LaFace Records, 329 F.3d 437 (6th Cir.
   2003), is misplaced; it involved the use of Rosa Parks' name as the title of a song

26 the defendant admitted had "absolutely nothing to do with" her.  Id. at 452.
   Subsequent cases distinguished Parks from cases like this one, emphasizing that the

27 song's "irrelevant title" with "no artistic relevance to the work" posed a unique risk

28 of misleading "the consuming public."  Empire, 875 F.3d at 1199.

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Wolfman), is artistically relevant to the Film, as Plaintiff's own allegations make clear.

Second, Plaintiff does not even address the second prong of Rogers, effectively conceding that nothing in the Film was "explicitly misleading" to consumers.  MTD 6-7; MTD Opp. 6-9.  This constitutes "a waiver or abandonment of those issues warranting dismissal" of his Lanham Act claim.  Shorter v. Los Angeles Unified Sch. Dist., 2013 WL6331204, at *5 (C.D. Cal. Dec. 4, 2013); see also Walsh v. Nevada Dep't of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff "effectively abandoned" claim, and forfeited right to raise it on appeal, where opposition "failed to address" arguments in the defendant's motion to dismiss).  See also MTD 6-7.[6]

Finally, Plaintiff makes the convoluted assertion that Paramount "admits" there is no First Amendment protection here because it also claims its use was permitted under the parties' Agreement.  MTD Opp. 9.[7]  This is nonsensical.  The Film's use of the Photograph is constitutionally protected; the fact that Paramount also had the right to use Plaintiff's image in connection with the Wolfman character provides an additional reason why his claims fail.  E.g., MTD 8-12, 16-17; see also Daniel v. Wayans, 8 Cal.App.5th 367, 393-394 (2017) (dismissing misappropriation claims on First Amendment grounds and because contract permitted use).  Accord Polydoros v. Twentieth Century Fox, 67 Cal.App.4th 318, 326 (1997) ("industry

---

[6] Plaintiff's separate discussion of the standard likelihood-of-confusion factors is irrelevant to the second prong of Rogers, which "ask[s] not only about the likelihood of consumer confusion but also whether there was an explicit indication, overt claim, or explicit misstatement that caused such consumer confusion." Empire, 875 F.3d at 1199 (quotation omitted).

[7] Plaintiff cites Duncan v. Cohen, 2008 WL2891065 (N.D. Cal. July 22, 2008), but it is off-point; it did not involve Lanham Act claims or the Rogers test, but only whether state law claims arising from the solicitation of funds to make a film were subject to the SLAPP statute.  Id. at *1-2; MTD Opp. 9.

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

custom" of obtaining releases does not diminish First Amendment protections where consent is not required); de Havilland v. FX Networks, 21 Cal.App.5th 845, 861 (2018) (noting producers "may enter into agreements with individuals portrayed in those works for a variety of reasons," but "the First Amendment simply does not require" them).  Under controlling First Amendment law, Plaintiff's Lanham Act claim fails.

### 2. Plaintiff Cannot Demonstrate A Plausible Likelihood Of Confusion.

Plaintiff's claim independently fails because it is clear from the Film itself that there is no plausible likelihood of consumer confusion.  MTD 7-8.  Paramount cited numerous cases in which courts evaluating Lanham Act claims arising from the content of expressive works reached that conclusion as a matter of law; where the allegations do not involve the marketing of competing goods, the traditional likelihood-of-confusion analysis is unnecessary.  Id.  Plaintiff simply ignores this entire argument and the supporting authorities.  MTD Opp. 9-13.

Instead, Plaintiff offers a superficial treatment of the factors from AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), underscoring what a poor fit they are for this case.[8]  Sleekcraft involved competing manufacturers using similar trademarks to advertise related products; in that context, the Ninth Circuit identified factors to consider in evaluating "whether confusion between related goods is likely."  Id. at 346, 348.  But courts routinely have declined to apply Sleekcraft to Lanham Act claims arising from artistic works, finding that looking at the work itself demonstrated the absence of any plausible likelihood of confusion.  E.g.,

---

[8] In Mattel, Inc. v. MCA Recs., Inc., the Ninth Circuit made this observation directly, noting the "traditional test" articulated in Sleekcraft "fails to account for the full weight of the public's interest in free expression" when the alleged use is for an expressive purpose, rather than as a source-identifier.  296 F.3d 894, 900 (9th Cir. 2002).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Burnett v. Twentieth Century Fox, 491 F.Supp.2d 962, 973 (C.D. Cal. 2007) (granting motion to dismiss Lanham Act claim arising from depiction of plaintiff in animated TV show without considering Sleekcraft factors); Stewart Surfboards v. Disney Book Group, 2011 WL12877019, at *6-8 (C.D. Cal. May 11, 2011) (same; rejecting Lanham Act claims based on a book cover depicting plaintiff's trademark on a surfboard); MTD 6-7.

Likewise, Plaintiff's Lanham Act claim fails because no reasonable viewer watching the Film would be confused. The most any reasonable viewer would glean from Plaintiff's inclusion in the Photograph shown in the Film is that he portrayed Wolfman in the Original Film, which is entirely accurate. Plaintiff offers no response to this point, which independently justifies dismissal of his Lanham Act claim. MTD 7-8.[9]

**B.    Plaintiff's Misappropriation Claims Fail As A Matter Of Law.**

    **1.    The First Amendment Bars Plaintiff's Claims.**

The MTD detailed consistent case law across the country holding that right-

---

[9] None of the cases that Plaintiff cites in his discussion of the Sleekcraft factors involved remotely similar Lanham Act claims, or the content of expressive works. The only cases involving the use of a "celebrity's persona" are inapposite (MTD Opp. 10-11): Allen v. National Video, 610 F.Supp. 612, 617 (S.D.N.Y. 1985) (celebrity impersonator's appearance in an advertisement); White v. Samsung Elecs. Am., Inc., 971 F.2d 1395, 1396 (9th Cir. 1992), as amended (Aug. 19, 1992) (use of celebrity's likeness in advertisement); Academy of Motion Picture Arts and Sciences v. Creative House Promotions, 944 F.2d 1446, 1449 (9th Cir. 1991) ("marketing" of product resembling an Oscar statute). His other cases are even further afield. MTD Opp. 9-11. See Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 790 (9th Cir. 1981) (dispute over use of Godzilla mark on garbage bags); New W. Corp. v. NYM Co. of California, 595 F.2d 1194. 1196 (9th Cir. 1979) (dispute over use of confusingly similar magazine titles); HMH Pub. Co. v. Brincat, 504 F.2d 713, 715 (9th Cir. 1974) (dispute over use of Playboy-related marks for automotive businesses). And Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 249 (7th Cir. 1994), as amended on denial of reh'g (Jan. 11, 1995) did not even involve a Lanham Act claim.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   of-publicity claims based on the content of expressive works are constitutionally

2   barred.  MTD 8-10.  See also Hollywood Unlocked, Inc. v. Lifetime Entm't Servs.,

3   LLC, 2021 WL3265037, at *3 (C.D. Cal. Mar. 17, 2021) ("First Amendment

4   precludes right-of-publicity claims concerning 'expressive works, whether factual

5   or fictional'") (quoting Daly v. Viacom, Inc., 238 F.Supp.2d 1118, 1123 (N.D. Cal.

6   2002)); de Havilland, 21 Cal.App.5th at 858 ("[c]ourts long ago recognized that a

7   celebrity's right of publicity does not preclude" use in expressive work) (citation

8   omitted).  Plaintiff simply ignores this part of the MTD, and does not even mention

9   most of the cited cases.

10          Instead, in his SLAPP Opp., Plaintiff tries to rely on Zacchini v. Scripps–

11   Howard Broadcasting Co., 433 U.S. 562 (1977), which is inapposite.  Zacchini, a

12   "human cannonball" performer, sued a television station that broadcast his "entire

13   act," which he claimed made the public "less willing to pay to see" it live.  433 U.S

14   at 563-64, 575, 578.  In allowing his case to proceed, the Supreme Court majority

15   repeatedly emphasized that the station showed Zacchini's "entire performance,"

16   which went "to the heart of [his] ability to earn a living as an entertainer" given the

17   unique nature of his work.  Id. at 576 (emphasis added).  It expressly noted that if

18   the station had "merely reported" about Zacchini's act, "with or without showing

19   his picture … we would have a very different case."  Id. at 570 (emphasis added).[10]

20   See also Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 401 (2001)

21   (noting Zacchini "was not an ordinary" right-of-publicity case because the

22   defendant "appropriated the plaintiff's entire act, a species of common law

23   copyright violation");  ETW Corp. v. Jireh Publ'g, 332 F.3d 915, 956-957 (6th Cir.

24   2003) (rejecting Tiger Woods' misappropriation claims arising from the

---

[10] The majority did not apply constitutional strict scrutiny, which subsequent decisions have held is required for any claims arising from the content of expressive works.  E.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992) (content-based speech regulation is subject to the highest level of scrutiny).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  unauthorized use of his likeness in a painting on constitutional grounds;

2  distinguishing <u>Zacchini</u>); <u>Cardtoons v. MLBPA</u>, 95 F.3d 959, 962 (10th Cir. 1996)

3  (finding claims based on use of athletes' images in expressive works were

4  constitutionally barred; distinguishing <u>Zacchini</u>).

5      Here, Plaintiff's image as Wolfman appears in the Film for a few seconds, in

6  a group Photograph.  This is not remotely similar to <u>Zacchini</u>, where the broadcast

7  decimated the market for the plaintiff's extremely unique kind of performance.  <u>See</u>

8  <u>Guglielmi v. Spelling-Goldberg Prods.</u>, 25 Cal.3d 860, 875 (1979) (Bird, C.J.,

9  concurring) ("in balancing the interests at stake, the Supreme Court observed that

10 respondents had not merely made some use of Zacchini's name and likeness, but

11 had usurped Zacchini's entire act").[11]

12     Plaintiff also cannot evade <u>Sarver v. Chartier</u>.  The Ninth Circuit applied

13 constitutional strict scrutiny, relying on post-<u>Zacchini</u> authority, in finding that

14 right-of-publicity claims involving expressive works are presumptively

15 unconstitutional.  813 F.3d 891 at 905-906 (9th Cir. 2016).  In this context, and in

16 distinguishing <u>Zacchini</u>, the Court referenced Sarver's status as a private figure (and

17 the absence of any impact on his ability to earn a living) in finding there was no

18 "compelling interest" sufficient to overcome this presumptive unconstitutionality.

19 Plaintiff ignores this rationale, inaccurately concluding that Sarver's private-figure

20 status means that every misappropriation claim involving a celebrity must be

21 immune from a First Amendment challenge.  <u>E.g.</u>, SLAPP Opp. 20.  That grossly

22 misreads <u>Sarver</u>, which squarely held that films like "The Hurt Locker" are not

23 "commercial" speech, and made clear that without the kind of compelling interest

24 identified in <u>Zacchini</u>, right-of-publicity claims based on expressive works are

25 constitutionally barred.  <u>Id.</u> at 905-906.  It also ignores the facts here, which do <u>not</u>

26 _____

27     [11] The other cases Plaintiff cited in his SLAPP Opp. are easily distinguishable

28 cases involving advertisements and products.  SLAPP Opp. 19; <u>see</u> SLAPP Reply at
   n.12.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

involve the use of Plaintiff's "entire act," product merchandizing, or advertising, which the <u>Sarver</u> panel distinguished.  913 F.3d at 905-06.  And it ignores the panel's question whether California's right-of-publicity law applies to expressive works at all, given the California Supreme Court's holding in <u>Guglielmi</u> that the First Amendment barred heirs of famed actor Rudolph Valentino from pursing a right-of-publicity claim based on a fictional film about him.  <u>Id.</u> at 906 n.9 (citing <u>Guglielmi</u>, 25 Cal.3d at 869).

Subsequently, in <u>de Havilland</u>, the California Court of Appeal unequivocally rejected the notion that <u>Sarver</u>'s rationale only applies to private figures:  it held that the First Amendment barred famed actress Olivia de Havilland's right-of-publicity claims based on the depiction of her in a TV show, even though she is a "living legend" of Hollywood's Golden Age and "an internationally-known celebrity."  21 Cal. App. 5th at 869.  Instead, the court held that the program was "as constitutionally protected as was the film in <u>Sarver</u>.'"  <u>Id.</u> at 860.

As discussed above, Plaintiff's image appears in the Film for approximately four seconds, in a group photograph providing a visual reference to the Original Film.  The Film is plainly not a "commercial transaction," nor was this use a wholesale usurpation of "an entire performance," akin to the highly unusual circumstances and narrow holding in <u>Zacchini</u>.  Under controlling authority, Plaintiff's misappropriation claims are constitutionally barred.[12]

## 2.    The Transformative Use Defense Bars These Claims.

California's transformative use doctrine is an independent basis for striking Plaintiff's right-of-publicity claims.  <u>See</u> MTD 10-12; <u>de Havilland</u>, 21 Cal.App.5th

---

[12] Plaintiff's prior contractual relationship with Paramount does not change this constitutional protection.  <u>Vijay v. Twentieth Century Fox Film Corp.</u>, 2014 WL 5460585, at *5 (C.D. Cal. Oct. 27, 2014) ("no law indicates that ... [a contractual] agreement would render inapplicable a constitutional defense to a tort cause of action").

at 862-63.  His cursory treatment of this defense incorrectly assumes that the

defense only applies if the use involves an altered likeness.  SLAPP Opp. 21-22;

MTD Opp. 19 ("[t]his is not an avatar, cartoon depiction, robot, or video game

character").  But "that is not the test."  Woloszynska v. Netfilx, Inc., 2023

WL7166828, at *7 (N.D. Cal. Oct. 30, 2023) (plaintiffs "improperly focus[ed] on

whether the Photograph [with their image] itself was transformed").  Instead, the

question is "whether the celebrity likeness is one of the 'raw materials' from which

an original work is synthesized, or whether the depiction … of the celebrity is the

very sum and substance of the work in question."  Id. at *6 (quoting Comedy III, 25

Cal.4th at 406).[13]

Plaintiff also misunderstands the test as applied in Comedy III.  There, the

Court held that the defendant's work was not sufficiently transformative because it

consisted entirely of "lithographs and T-shirts bearing a likeness of The Three

Stooges," so their images were literally "the very sum and substance of the work."

25 Cal.4th at 393, 406.  But that does not mean that only distorted or altered

"likenesses" can be protected as a transformative use.  To the contrary, in de

Havilland, this defense protected the defendants' depiction of a famous actress in

their docudrama, even though they "wanted to make the appearance of [de

Havilland] as real as possible."  21 Cal.App.5th at 863.  The appellate court found

that de Havilland's likeness was merely one element among many in a program

whose "marketability and economic value does not derive primarily from [de

---

[13] Nevertheless, the depiction of Plaintiff in the Photograph is as Wolfman – a
fictional character – not as Barry Tubb; the items Plaintiff identifies as being in the
Photograph (the "cowboy hat and flight suit" he wore in Top Gun (MTD Opp. 19)),
and his inclusion in the fictional 1986 Top Gun class, are aspects of Wolfman's
persona – not Plaintiff's.  That alone is "transformative."  MTD 12; Landham v.
Lewis Galoob Toys, 227 F.3d 619, 626 (6th Cir. 2000) (rejecting misappropriation
claim where actor failed to show defendant's toy invoked "his own persona, as
distinct from that of the fictional character" he portrayed).  Plaintiff has no response
to this dispositive point.

1 Havilland's] fame but rather comes principally from ... the creativity, skill, and
2 reputation of [the show's] creators and actors." Id. at 864.

3      The same is true here.  Plaintiff only appears on-screen in the Film as part of
4 a group photo for roughly four seconds of a Film lasting more than two hours.[14]
5 The Film indisputably derives its marketability primarily from megastar Tom
6 Cruise, and the contributions of many on-screen performers and off-screen creators.
7 See MTD 11.  As in de Havilland, the transformative use doctrine applies here
8 because Plaintiff's image is merely one of the "raw materials" from which
9 Maverick "is synthesized."  Id. at 864 (quoting Comedy III, 25 Cal.4th at 406).

10      Courts have applied this defense even where the plaintiffs had a contractual
11 relationship with the defendant.  See, e.g., Vijay, 2014 WL5460585, *1 (C.D. Cal.
12 Oct. 27, 2014).  There, the court dismissed with prejudice an actor's right-of-
13 publicity claims arising from his work on the film "Titanic"; applying the
14 transformative use test, the court held that the plaintiff's "appearance is but a
15 minuscule portion of [Titanic], heavily edited and synthesized with significant
16 artistic expression."  Id. at *4.  The court rejected the argument that the plaintiff's
17 "employment agreement … trumps the First Amendment defense," holding that in
18 adjudicating a right-of-publicity claim based on the use of his likeness in the film,
19 all that mattered was that the use was transformative.  Id. at *5.  See also
20 Woloszynska, 2023 WL7166828, at *1, 7 (rejecting plaintiffs' misappropriation
21 claim arising from use of their image in a photograph in a fictional television show;
22 although there was a dispute about whether a written release barred the claim, court
23 nonetheless found use was transformative, reasoning that "the Photograph is a small
24 part of a complex and elaborate television production, and the scenes in the Show
25 are transformed by music, dialogue, and film editing in the final product"); Daniel,
26

---

27      [14] The de Havilland court noted that the actress depicting the plaintiff
28 appeared in "about 4.2 percent" of the program – far more than Plaintiff's image
appears in the Film.  Id. at 863, 865.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

8 Cal. App. 5th at 396-97 (striking right-of-publicity claims by actor in fictional film based on filmmaker's online posts related to the movie; the defendant's use of "two unaltered images" was transformative by virtue of "the combination of the juxtaposed images with his commentary").

Just as in the cited cases, Plaintiff's exceedingly brief appearance in the Film is merely one of the raw materials from which it is synthesized. His right-of-publicity claims are barred by the transformative use defense as a matter of law.[15]

### 3. Plaintiff's Claims Are Preempted By The Copyright Act.

The Ninth Circuit consistently has held that right-of-publicity purporting to arise from the expressive use of a likeness that is captured in a copyrightable work are preempted by the Copyright Act. See MTD 12-16 (citing, inter alia, Maloney v. T3Media, 853 F.3d 1004 (9th Cir. 2017); Jules Jordan Video v. 144942 Canada, 617 F.3d 1146 (9th Cir. 2010); Laws v. Sony Music Entm't, 448 F.3d 1134 (9th Cir. 2006)). Plaintiff not only fails to even mention – let alone distinguish – these controlling authorities, he proffers the same arguments these decisions rejected.

His response to this dispositive defense boils down to his insistence that misappropriation claims "differ from copyright claims in that they deal with the use of Plaintiff's persona independent of the copyright." MTD Opp. 21. But the Ninth Circuit has rejected this same argument. Maloney, 853 F.3d at 1011. The court distinguished situations where the plaintiff's likeness was used "non-consensually on merchandise or in advertising," but found that if the plaintiff's likeness is fixed "in a copyrighted artistic visual work" that the defendant used in an expressive work like a film, "a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his

---

[15] Courts routinely apply transformative use in granting early dispositive motions. E.g., de Havilland, 21 Cal.App.5th at 862 (SLAPP motion); Daniel, 8 Cal. App. 5th at 397 (same); Woloszynska, 2023 WL7166828, at *7 (same); Vijay, 2014 WL5460585 at *5 (motion to dismiss).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exclusive rights under the Copyright Act." <u>Id.</u> at 1016.  In that situation – precisely the circumstance here – the claim is preempted.  <u>Id.</u>  <u>Accord</u> <u>Laws</u>, 448 F.3d at 1141 ("it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium"); <u>Jules Jordan</u>, 617 F.3d at 1154 (argument that misappropriation claim based on use of actor's performance as captured in films was not preempted because it sought to protect his "persona," was "reject[ed] … for the same reason we rejected it in <u>Laws</u>").

Plaintiff does not try to distinguish these cases because he cannot.  Instead, he simply cites inapposite cases in which the defendants used the plaintiffs' names and likenesses to sell commercial products and services.  <u>E.g.</u>, <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1000 (9th Cir. 2001) (retailer used plaintiffs' names and likenesses to advertise clothing); <u>Timed Out, LLC v. Youabian</u>, 229 Cal.App.4th 1001, 1004 (2014) (use of models' photographs to market cosmetic surgery business);[16] <u>Midler v. Ford Motor Co.</u>, 849 F.2d 460, 462 (9th Cir. 1988) (plaintiff's voice imitated in car commercial); <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1097 (9th Cir. 1992) (same; snack food commercial).[17]  These decisions are entirely

_____

[16] The court emphasized that it was "Defendants' use of the Models' likenesses pictured in the photographs <u>to promote Defendants' business</u> that constitute[d] the alleged misappropriation," 229 Cal.App.4th at 1013 (emphasis added).

[17] Plaintiff relies heavily on <u>Brown v. Ames</u>, 201 F.3d 654 (5th Cir. 2000), devoting much his brief to lengthy quotations from the Fifth Circuit's decision. MTD Opp. 23-24.  The Ninth Circuit distinguished <u>Brown</u> on the ground that it involved the use of the plaintiffs' likenesses in "merchandise," such as posters, catalogs, and tape and CD covers – not a use in an expressive work.  <u>Maloney</u>, 853 F.3d at 1012 n.6; <u>Laws</u>, 448 F.3d at 1141.  Plaintiff's other cited case, <u>KNB Enterprises v. Matthews</u>, 78 Cal.App.4th 362 (2000), supports Paramount.  <u>Id.</u> at 374 ("a section 3344 claim is preempted … where an actor … with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work.")  Here, Plaintiff has no copyright interest in the Photograph; he alleges it was taken by Herb Ritts, who had a work-for-hire agreement with

irrelevant here, as explained in the MTD and in the line of governing cases Plaintiff ignores.  MTD 14-16.  The Ninth Circuit also has noted that <u>Midler</u> and <u>Waits</u> involved <u>imitations</u> of the plaintiffs' voices, rather than copyrighted recordings of the actual voices.  <u>Laws</u>, 448 F.3d at 1140-41 (noting "federal copyright law preempts a claim … when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium").  Here, as in <u>Laws</u> (and unlike <u>Midler</u> and <u>Waits</u>), the entire "likeness" that Paramount allegedly misappropriated comes from a copyrighted medium – the Photograph.[18]

Finally, Plaintiff's hyperbolic assertion that finding preemption here would make it "acceptable … to steal the image and likeness of a person" if someone else

---

Paramount.  SLAPP Mot. 13 n.13.  (The Ninth Circuit does not require the defendant to be the copyright holder for preemption to apply.  <u>See</u> <u>Jules Jordan</u>, 617 F.3d at 1154-55.)

Plaintiff's selective quotations from the Nimmer treatise overlook that it "draw[s] a line between entertainment works used for their own sake and commercial works used for advertising purposes ...."  1 Nimmer on Copyright § 1.17 (2024); <u>see also</u> <u>Maloney</u>, 853 F.3d at 1018 (Nimmer would "limit[] liability to misappropriation for the purposes of trade[, ...] which do not ordinarily include the use of a person's identity in … entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses") (citing Nimmer § 1.17) (internal quotations and citation omitted).  <u>E.g.</u>, McCarthy, Rights of Publicity and Privacy § 11:52 (2d ed.) ("the situation changes when a performer who authorizes a recording of his or her performance of an expressive work … later objects to the reproduction or performance of that recording in an expressive, non-advertising use.  In those cases, a claim of infringement of the right of publicity should be preempted by copyright law.").

[18] The other copyright preemption cases that Plaintiff cites have no bearing here because they do not involve right-of-publicity claims.  MTD Opp. 21-23 (citing <u>Ryan v. Editions Ltd. W., Inc.</u>, 786 F.3d 754, 760 (9th Cir. 2015) (contractual attorney's fees provision not preempted); <u>Montz v. Pilgrim Films & Television, Inc.</u>, 649 F.3d 975, 981 (9th Cir. 2011) (breach of implied contract claim); <u>Opperman v. Path, Inc.</u>, 205 F.Supp.3d 1064, 1081 (N.D. Cal. 2016) (intrusion-upon-seclusion claim); <u>Garrido v. Burger King Corp.</u> 558 So.2d 79, 81 (Fla. Dist. Ct. App. 1990) (claims for conversion and misappropriation of "ideas")).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

has a purported copyright claim (MTD Opp. 24) has been rejected by the Ninth
Circuit.  The court explained in <u>Maloney</u> that its "holding strikes the right balance
by permitting" plaintiffs "to control the use of their names or likenesses on
merchandise or in advertising, while permitting … the media" and others to use
artistic works bearing their likenesses "for expressive purposes."  853 F.3d at 1019.
In contrast, the Court found that "Plaintiffs' position, … would give the subject of
every photograph a de facto veto over the artist's rights under the Copyright Act,
and destroy the exclusivity of rights that Congress sought to protect by enacting the
Copyright Act."  <u>Id.</u>  Under controlling law, Plaintiff's misappropriation claims are
preempted.  <u>See</u> MTD 16.[19]

## 4. Plaintiff's Contract Permitted The Use.

Plaintiff's misappropriation claims also fail because the parties' Agreement
gave Paramount the right to use Plaintiff's likeness in connection with the Wolfman
character.  MTD 16-18.

Plaintiff acknowledges, as he must, that the Agreement clearly and
unambiguously states that Paramount "will be the sole and exclusive owner of all
rights in the role or character portrayed by [Plaintiff], including name, likeness and
distinctive characterizations thereof," and has "the right to merchandise and exploit
such role or character, <u>and the right to use [Plaintiff's] name and likeness in
connection therewith</u> …."  Pl. Ex. A at 7 ¶ A (emphasis added); MTD Opp. 28.

_____

[19] <u>See</u> <u>also</u> <u>Cusano v. Klein</u>, 473 Fed. App'x 803, 804 (9th Cir. 2012) (suit by
KISS band-member concerning reproduction of still and video footage of his
performances and appearances was preempted); <u>Milo & Gabby, LLC v.
Amazon.com</u>, 12 F.Supp.3d 1341, 1350 (W.D. Wash. 2014) (plaintiffs' right of
publicity claims arising from distribution of photographs were preempted); <u>Lewis v.
Activision Blizzard, Inc.</u>, 2012 WL5199505, *4 (N.D. Cal. Oct. 22, 2012)
(plaintiff's right of publicity and unjust enrichment claims preempted where they
arose from use of her voice recordings in a sound recording); <u>Wells v. Chattanooga
Bakery, Inc.</u>, 448 S.W.3d 381, 390 (Tenn. Ct. App. 2014) (right of publicity claim
based on use of plaintiff's photograph was preempted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff does not dispute that this provision – which gives Paramount the right to use Plaintiff's likeness in connection with the Wolfman character – does <u>not</u> include language limiting this right to the Original Film.  <u>Id.</u>; MTD 17.

Instead, Plaintiff tries to misdirect by incorrectly asserting that "Paramount fails to note" another provision in the Agreement about uses of Plaintiff's "name, photograph, likeness, … in connection with advertising, publicizing, and exploiting the Picture…"  MTD Opp. 28.  Paramount <u>directly</u> addressed that provision, and explained why it has no application here:  it involves the use of Plaintiff's <u>own</u> <u>persona</u>, as made clear by the fact that the full sentence provides for the use of Plaintiff's "biography."  SLAPP Mot. 18.  Plaintiff disingenuously omits that word in quoting the Agreement, then says nothing to respond to Paramount's explanation about the distinction between a use of Plaintiff's persona to promote the Original Film, and the use of his likeness in connection with the Wolfman character.  MTD Opp. 28.  Plaintiff does not explain how Paramount's right to use Plaintiff's likeness to exploit the Wolfman character could be limited to the Original Film, when the Agreement expressly authorized Paramount to exploit the character in, <u>inter alia</u>, merchandise.  MTD 16.  His contract claim fails on this additional basis.[20]

**5.    Other Defects Independently Bar Plaintiff's Statutory Claim.**

Plaintiff's statutory claim suffers from two additional legal defects, neither of which Plaintiff can overcome.  MTD 18-20.  <u>First</u>, Section 3344 does not apply to the use of a likeness in an expressive work like a film.  <u>Id.</u> (citing <u>de Havilland</u>, 21 Cal.App.5th at 857; <u>Sarver</u>, 813 F.3d at 905, n.9).  Plaintiff does not address either case here, or their recognition that movies are constitutionally-protected expressive

---

[20] Plaintiff emphatically asserts that he only agreed "to render his services as an actor" in Top Gun (MTD Opp. 27), but Plaintiff did not render <u>any</u> acting services in connection with the Film.  The use at issue was of a group photograph that included Plaintiff <u>as Wolfman</u>, consistent with the language in the Agreement that expressly allows Paramount's use of Plaintiff's likeness as that character.  MTD 16.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  works, "not speech proposing a commercial transaction."  <u>Sarver</u>, 813 F.3d at 905;

2  <u>see also</u> MTD Opp. 13-16.  His assertion in his MTD Opp. that the Film is merely

3  "a product" because it is "distributed for profit" and "distributed in physical

4  formats" (MTD Opp. 14-15) ignores black-letter law holding that expressive works

5  do not get lesser First Amendment protections if they "are published and sold for

6  profit …."  <u>Joseph Burstyn, Inc. v. Wilson</u>, 343 U.S. 495, 501 (1952).[21]

7       On its face, Section 3344 is limited to the nonconsensual use of a likeness

8  "on or in <u>products, merchandise, or goods</u>, or for purposes of advertising or selling,

9  or soliciting purchases of, <u>products, merchandise, goods, or services</u>."  Cal. Civ.

10  Code § 3344(a) (emphasis added).  All of the cases Plaintiff cites involved this kind

11  of commercial use.  <u>E.g.</u>, <u>Midler</u>, 849 F.2d at 462 (car advertisement); <u>White</u>, 971

12  F.2d at 1396 (electronics advertisement); <u>Comedy III</u>, 25 Cal.4th at 395 (t-shirts and

13  lithographs).[22]  In <u>de Havilland</u>, the court distinguished those cases from uses

14  arising from the content of expressive works, like the case here.  21 Cal.App.5th at

15  857-58.  Plaintiff's failure to cite <u>a single case</u> permitting a Section 3344 claim to

16  arise from a film or other expressive work simply underscores that the statute does

17  not reach such conduct.

18       <u>Second</u>, Plaintiff's Section 3344 claim fails because his likeness was shown

19  in the Film only as part of a "definable group" depicted in the Photograph.  Civ.

20  Code § 3344(b)(2); MTD 19-20.  Plaintiff's only response is the <u>non sequitur</u> that

21

22  ────────────

23  [21] <u>See also</u> <u>Aldrin v. Topps Co., Inc.</u>, 2011 WL4500013, at *2 (C.D. Cal. Sept. 27, 2011) ("expressive activity does not lose its constitutional protection because it is undertaken for profit"); <u>Hoffman v. Cap. Cities/ABC, Inc.</u>, 255 F.3d 1180, 1186 (9th Cir. 2001) (article "meant to draw attention to the for-profit magazine in which it appears … does not fall outside of the protection of the First Amendment because it may help to sell copies").

27  [22] <u>ProCD, Inc. v. Zeidenberg</u>, 86 F.3d 1447 (7th Cir. 1996), and <u>Vernor v. Autodesk, Inc.</u>, 621 F.3d 1102 (9th Cir. 2010), are <u>software</u> cases that did not involve Section 3344 claims; they are irrelevant to Paramount's Motion.

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

he is "identifiable" (MTD Opp. 16-17), but that ignores the express language of the statute, which applies the group depiction exemption to individuals who are "readily identifiable from a photograph" but are "represented in the photograph solely as a result of being present at the time the photograph was taken and have not been singled out."  Id. § 3344(b)(1)-(2).  It is plain from the Film itself that Plaintiff is not "singled out" in any way; indeed, in two of the three frames he cites, he is almost entirely cropped out.  See Ex. B at 44:22-44:28; Ex. E.  Moreover, Plaintiff concedes that neither he nor the Wolfman character are mentioned in the scene's dialogue (MTD Opp. 17); instead, the Film depicts Hangman looking at the picture and pointing to Goose, the character portrayed by Anthony Edwards.  Ex. B at 44:22-44:28.[23]

In other words, Plaintiff only appears in the scene because he is part of the group, and his character was standing next to Cruise's character "at the time the photograph was taken."  Civ. Code § 3344(b)(2).  This falls squarely within the definable group exception.

**C.    Plaintiff's Derivative Negligence Claim Is Meritless.**

Plaintiff effectively concedes that his negligence claim is entirely derivative of his misappropriation claims, and subject to dismissal on the same grounds.  MTD 20.  He also fails to rebut Paramount's showing that this claim independently fails, because his contract with Paramount for Top Gun did not create any tort duty of care regarding the use of his image in a different film 30 years later.  MTD Opp. 25-

---

[23] Plaintiff quotes dialogue from the Film referring to the person "next to" Maverick in the Photograph (MTD Opp. 17), but the character is plainly referring to Goose, not Wolfman.  Ex. B at 44:22-44:28.  Plaintiff acknowledges elsewhere in his Opp. that the entire point of the scene is Hangman's realization that Goose is Rooster's father.  MTD Opp. 2-3.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

26.[24]  To the contrary, the California Supreme Court has held that "conduct amounting to a breach of contract becomes tortious <u>only when it also violates a duty independent of the contract</u> arising from principles of tort law." <u>Erlich v. Menezes</u>, 21 Cal.4th 543, 551 (1999) (emphasis added).  <u>See also</u> <u>BFGC Architects Planners, Inc. v. Forum/Mackey Construction, Inc.</u>, 119 Cal.App.4th 848, 853 (2004) ("[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations").  Because Plaintiff does not, and cannot, identify any such duty "independent of the contract," his negligence claim fails.  <u>See</u> <u>also</u> <u>Woloszynska</u>, 2023 WL7166828, at *7-8 (striking negligence claim because plaintiffs failed to show "that Defendants had any duty, legal or otherwise, not to use the Photograph [depicting the plaintiffs] in the Show"); <u>Worldwide Media, Inc. v. Twitter, Inc.</u>, 2018 WL5304852, at *10 (N.D. Cal. Oct. 24, 2018)  (dismissing plaintiff's negligence claim as "an impermissible restatement of its breach of contract claims").

## D.      Plaintiff's Contract Claim Fails.

As discussed above, Paramount's use of Plaintiff's image in character as Wolfman was authorized under the Agreement.  This alone defeats his contract claim.  <u>See</u> Section III.A.4, <u>supra</u>; MTD 20.

Additionally, Plaintiff failed to identify any obligation in the Agreement that Paramount purportedly breached.  MTD 20-21.  Instead, his Opposition underscores that there is <u>nothing</u> in the Agreement that imposed any requirements or limitations on Paramount with respect to any film besides Top Gun.  MTD Opp. 27-29.  His repeated emphasis that the Agreement only covered his services on the Original

---

[24] The only case Plaintiff cites, <u>Mintz v. Blue Cross</u>, 172 Cal.App.4th 1594 (2009), is inapposite; it involved a health care plan administrator's duty of care to plan members in making benefits determinations.  <u>Id.</u> at 1611.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Film[25] proves Paramount's point:  for there to have been a breach, the Agreement had to prohibit Paramount from using Plaintiff's likeness in a sequel, but it does not. As in the Complaint, Plaintiff's Opposition simply points to a provision stating that "modifications" must be in writing, but this boilerplate language does not create any additional obligations.  MTD 20-21; MTD Opp. 28.[26]  His breach of contract claim should be dismissed.

### E.    Plaintiff's Declaratory Relief Claim Fails.

Plaintiff does not dispute that his declaratory relief claim is wholly derivative of his other claims, and subject to the same defenses.  MTD 21.  He also fails to respond to the point that, to the extent he seeks a declaration about "merchandise" or "advertising," there is no justiciable controversy because he does not allege that Paramount used (or sought to use) his image in that way, nor can he do so.  Id.; MTD Opp. 5.  He provides no basis for salvaging this meritless claim.

### F.    Plaintiff Has No "Injunctive Relief" Claim.

Plaintiff's "injunctive relief" claim is not a proper cause of action, and his request to enjoin the distribution of the Film is an unconstitutional prior restraint.

---

[25] Id. 28-29 ("[i]n no place is a sequel contemplated or mentioned"; "[t]here is no mention of any sequel").

[26] For the first time in his Opp., Plaintiff vaguely alludes to a provision of the SAG collective bargaining agreement that he claims required separate bargaining "after his agreement for original employment."  MTD Opp. 27.  But the Complaint does not mention the SAG agreement, or attach it; nor is it pleaded as a basis for any alleged claim.  See Cmplt. ¶¶ 113-124.  Plaintiff's newly-minted argument should be disregarded.  See Schneider v. CDCR, 151 F.3d 1194, 1197 (9th Cir. 1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (original emphasis).  Plaintiff chose not to assert any claim based on the SAG agreement because it does not support his position; moreover, any purported breach of the SAG agreement may be subject to an arbitration clause, and could only result in narrowly circumscribed remedies. Plaintiff wanted to evade the SAG agreement by bringing meritless tort claims; he cannot invoke it now to try to save those claims.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MTD 21.  Plaintiff does not address these points at all; he simply repeats boilerplate language from the Complaint, without citing any authority.  MTD Opp. 29-30.  This deficient claim also should be stricken.

### III.   CONCLUSION

For all of these reasons, Paramount respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.  See Brown, 724 F.3d at 1248 (affirming dismissal of Lanham Act claim without leave to amend because no amendment could overcome constitutional protections); Vijay, 2014 WL 54605854, at *5 ("[g]iven that Plaintiff's claims for appropriation of likeness and right of publicity are based on his brief scene in two expressive works, it is unfathomable that Plaintiff would be able to amend his complaint to allege facts that would cure these two causes of action of their defects.").

DATED: June 10, 2024

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT


By: /s/Kelli L. Sager
                Kelli L. Sager

Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Paramount Pictures Corporation, certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 10, 2024                    DAVIS WRIGHT TREMAINE LLP
                                        KELLI L. SAGER
                                        DAN LAIDMAN
                                        SAM F. CATE-GUMPERT

                                        By: /s/ Dan Laidman
                                                    Dan Laidman
                                        Attorneys for Defendant
                                        PARAMOUNT PICTURES
                                        CORPORATION

REPLY ISO MOTION TO DISMISS
4879-5151-7639v.1 0012079-000393

22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899