DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
50 California Street, 23rd Floor
San Francisco, California   94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

Attorneys for Defendant
PARAMOUNT PICTURES CORPORATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY TUBB, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation,<br><br>                    Defendant. | Case No. **2:24-cv-01417-GW-BFM**<br><br>**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION [C.C.P. § 425.16]**<br><br>[Reply In Support Of Motion to Dismiss (F.R.C.P. 12(b)(6)) Concurrently Filed]<br><br>Hearing Date:    June 24, 2024<br>Time:                 8:30 a.m.<br>Courtroom:        9D<br><br>Action Filed:  February 21, 2024 |

Defendant Paramount Pictures Corporation ("Paramount") respectfully submits this Reply to Plaintiff Barry Tubb's Opposition ("Opp.") to Paramount's Special Motion to Strike Plaintiff's Complaint pursuant to California Code of Civil Procedure § 425.16 ("SLAPP Motion" or "Mot.").[1]

---

[1] Plaintiff's Opp. incorporates his response to Paramount's Motion To Dismiss (F.R.C.P. 12(b)(6)) ("MTD"); Paramount similarly incorporates its MTD Reply.

# **TABLE OF CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT ........................................................................ 1

II.  THE SLAPP STATUTE APPLIES TO PLAINTIFF'S CLAIMS ................. 1

III. PLAINTIFF HAS NOT SHOWN A PROBABILITY OF
     PREVAILING .............................................................................................. 8

    A.   Plaintiff's Misappropriation Claims Fail ........................................... 8

        1.   The First Amendment Bars Plaintiff's Claims .......................... 8

        2.   The Transformative Use Defense Bars These Claims. ............ 11

        3.   Plaintiff's Claims Are Preempted By The Copyright Act. ...... 13

        4.   Plaintiff's Contract Permitted The Use. .................................. 16

        5.   Other Defects Independently Bar Plaintiff's Statutory
            Claim. ...................................................................................... 17

    B.   Plaintiff's Derivative Negligence Claim Is Meritless. ...................... 19

    C.   Plaintiff's Contract Claim Fails ........................................................ 19

    D.   Plaintiff Cannot Maintain An "Injunctive Relief" Claim. ................. 20

IV.  CONCLUSION ........................................................................................... 20

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page**

**Cases**

Baral v. Schnitt,
  1 Cal. 5th 376 (2016) ...........................................................................7

Brodeur v. Atlas Entertmt.,
  248 Cal.App.4th 665 (2016) ............................................................. 5, 6

Brown v. Ames,
  201 F.3d 654 (5th Cir. 2000) ............................................................. 15

Cardtoons v. MLBPA,
  95 F.3d 959 (10th Cir. 1996) ...............................................................9

Comedy III Prods., Inc. v. Gary Saderup, Inc.,
  25 Cal.4th 387 (2001) ......................................................... 9, 11, 12, 18

Commonwealth Energy Corp. v. Investor Data Exchange,
  110 Cal.App.4th 26 (2003) ...................................................................5

Daly v. Viacom, Inc.,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...............................................8

Daniel v. Wayans,
  8 Cal.App.5th 367 (2017) ......................................................... 2, 4, 7, 13

de Havilland v. FX Networks,
  21 Cal.App.5th 845 (2018) ...................................................... *passim*

Doe v. Gangland Productions, Inc.,
  730 F.3d 946 (9th Cir. 2013) ......................................................... 4, 5, 6, 7

Downing v. Abercrombie & Fitch,
  265 F.3d 994 (9th Cir. 2001) ............................................................. 14

Duncan v. Cohen,
  2008 WL 2891065 (N.D. Cal. July 22, 2008).......................................7

Dyer v. Childress,
  147 Cal.App.4th 1273 (2007) ...................................................... 4, 5, 6

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Erlich v. Menezes,
    21 Cal.4th 543 (1999) .................................................................. 19

Estate of B.H. v. Netflix, Inc.,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022)..................................4

ETW Corp. v. Jireh Publ'g,
    332 F.3d 915 (6th Cir. 2003) ........................................................9

FilmOn.com Inc. v. DoubleVerify Inc.,
    7 Cal.5th 133 (2019) ....................................................................3

Geiser v. Kuhns,
    13 Cal.5th 1238 (2022) ................................................................4

Guglielmi v. Spelling-Goldberg Prods.,
    25 Cal.3d 860 (1979) ............................................................. 9, 10

Hilton v. Hallmark Cards,
    599 F.3d 894 (9th Cir. 2010) .................................................. 3, 9

Hollywood Unlocked, Inc. v. Lifetime Entm't Servs., LLC,
    2021 WL 3265037 (C.D. Cal. Mar. 17, 2021)..............................8

In re NCAA Student-Athlete Name & Likeness Licensing Litigation,
    724 F.3d 1268 (9th Cir. 2013) .....................................................9

Ingels v. Westwood One Broadcasting Services, Inc.,
    129 Cal.App.4th 1050 (2005) ......................................................2

Joseph Burstyn, Inc. v. Wilson,
    343 U.S. 495 (1952)................................................................... 17

Jules Jordan Video v. 144942 Canada,
    617 F.3d 1146 (9th Cir. 2010) .............................................. 14, 15

KNB Enterprises v. Matthews,
    78 Cal.App.4th 362 (2000) ........................................................ 15

Kronemyer v. IMDB,
    150 Cal.App.4th 941 (2007) ........................................................4

Laws v. Sony Music Entm't,
    448 F.3d 1134 (9th Cir. 2006) .............................................. 14, 15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

M.G. v. Time Warner, Inc.,
  89 Cal. App. 4th 623 (2001) ............................................................... 4, 6

Maloney v. T3Media, Inc.,
  853 F.3d 1004 (9th Cir. 2017) .............................................. 9, 14, 15, 16

Midler v. Ford Motor Co.,
  849 F.2d 460 (9th Cir.1988) ........................................................ 15, 17

Navellier v. Sletten,
  29 Cal.4th 82 (2002) .............................................................................7

Newcombe v. Adolf Coors Co.,
  157 F.3d 686 (9th Cir. 1998) .................................................................9

Ojjeh v. Brown,
  43 Cal.App.5th 1027 (2019) .......................................................... 7, 15

R.A.V. v. City of St. Paul,
  505 U.S. 377 (1992) ..............................................................................9

Rivero v. American Fed. of State, County and Muni. Empl'ees, AFL-CIO,
  105 Cal.App.4th 913 (2003) ..................................................................5

Sarver v. Chartier,
  813 F.3d 891 (9th Cir. 2016) ..................................................... *passim*

Schneider v. CDCR,
  151 F.3d 1194 (9th Cir. 1998) ............................................................ 20

Symmonds v. Mahoney,
  31 Cal.App.5th 1096 (2019) .................................................................2

Tamkin v. CBS,
  193 Cal.App.4th 133 (2011) ............................................................. 2, 4

Taus v. Loftus,
  40 Cal.4th 683 (2007) ...........................................................................6

Terry v. Davis Community Church
  131 Cal. App. 4th 1534 (2005) ........................................................ 4, 6

Timed Out, LLC v. Youabian,
  229 Cal.App.4th 1001 (2014) ....................................................... 14, 15

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Vijay v. Twentieth Century Fox Film Corp.*,
   2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) ..................................... 11, 12, 13

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ................................................... 15

*Weinberg v. Feisel*,
   110 Cal.App.4th 1122 (2003) .....................................................5

*White v. Samsung Electronics America, Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ................................................... 17

*Woloszynska v. Netflix, Inc.*,
   2023 WL 7166828 (N.D. Cal. Oct. 30, 2023) ........................... *passim*

*Yonay v. Paramount Pictures Corp.*,
   2024 WL 2107721 (C.D. Cal. Apr. 5, 2024) .....................................3

*Zacchini v. Scripps–Howard Broadcasting Co.*,
   433 U.S. 562 (1977) ............................................... 8, 9, 10, 11

**Statutes**

California Civil Code
   § 3344............................................................. 15, 17, 18
   § 3344(a) ............................................................... 17
   § 3344(b)(1)-(2) ......................................................... 18
   § 3344(b)(2) ............................................................ 18

California Code of Civil Procedure
   § 425.16(a) ..............................................................1

**Rules**

Federal Rules of Civil Procedure
   Rule 12(b)(6)........................................................... 20

**Constitutional Provisions**

United States Constitution
   First Amendment.................................................... *passim*

**Other Authorities**

1 Nimmer on Copyright § 1.17 (2024) ................................... 15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.       SUMMARY OF ARGUMENT

Plaintiff's scattershot Opposition simply reinforces that he has no valid legal claim based on Paramount's film "Top Gun: Maverick" ("Maverick" or the "Film").

There is no dispute that Plaintiff's claims here arise <u>entirely</u> from the content of the Film, namely, its inclusion of a Photograph depicting Plaintiff's character and others from the Original Film, in what Plaintiff describes as a "pivotal" scene. Cmplt. ¶ 38.  Courts repeatedly have found right-of-publicity and related claims based on such expressive works to be constitutionally barred.  The Ninth Circuit also has held, in analogous circumstances, that these state law claims are preempted by federal copyright law.  Plaintiff simply ignores most of the authorities cited in Paramount's SLAPP Motion, instead advancing arguments that the Ninth Circuit and California courts already have rejected.

Plaintiff's tack-on contract and negligence claims fare no better.  He makes no serious effort to respond to Paramount's showing of why these claims are defective, and his eleventh-hour effort to concoct an entirely new basis for his contract claim is meritless.  For all of these reasons, this Court should strike all of Plaintiff's state-law claims with prejudice.

## II.      THE SLAPP STATUTE APPLIES TO PLAINTIFF'S CLAIMS.

Plaintiff concedes, as he must, that fictional films are fully protected by free speech rights, and that the Film at issue here was "successful, top selling, [and] widely disseminated."  Opp. 1.  Because Plaintiff's state law claims all arise directly from the content of this popular expressive work, they easily fall within the broad scope of the SLAPP statute.  SLAPP Mot. 5-7.  Although Plaintiff focuses much of his Opposition on trying to evade the statute, he either distorts or ignores well-established controlling law.

<u>First</u>, Plaintiff's attempt to invent his own narrow public interest standard for "the movie industry" contravenes the statute's express language.  SLAPP Opp. 6. Section 425.16 must "be construed broadly" (C.C.P. § 425.16(a)); it sets no

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

different standards for films (whether fictional or not).  Courts repeatedly have held that claims arising from the creation and content of a popular expressive work, like Plaintiff's claims here, meet the public interest test without any further parsing of a particular work's plot.  See Tamkin v. CBS, 193 Cal.App.4th 133, 144 (2011) (claims arising from fictional TV show met public interest test "because the public was demonstrably interested in the creation and broadcasting of that episode, as shown by" online discussion of the show "and the ratings for the episode"); Ingels v. Westwood One Broadcasting Services, Inc., 129 Cal.App.4th 1050, 1067 (2005) (claims "involving the creation or dissemination of any works of a motion picture or television studio" are covered by SLAPP statute) (quotation omitted); SLAPP Mot. 6.

Symmonds v. Mahoney, 31 Cal.App.5th 1096 (2019), is instructive.  There, the court held that the SLAPP statute applied to claims arising from musician Eddie Money's decision to replace his drummer, because his "music and concerts were of interest to the public," as demonstrated by media coverage and evidence "that he had sold millions of records and had hundreds of thousands of people following him on social media."  Id. at 1109.  The court cited Tamkin, and also Daniel v. Wayans, 8 Cal.App.5th 367 (2017), which applied the SLAPP statute to right-of-publicity and other claims brought by an actor in a fictional comedy film, on the grounds that star Marlon Wayans "is a popular and prolific entertainer" and evidence showed that "the making of A Haunted House 2 was an issue of public interest."  Id. at 386.

Plaintiff does not dispute that the Film is a subject of widespread public interest; his own allegations and extensive media coverage make this clear.  SLAPP Mot. 6; SLAPP Opp. 1.  Instead, he compares its content to the movie in Sarver v. Chartier, 813 F.3d 891 (9th Cir. 2016), to make the nonsensical argument that the Film is not of public interest because "the viewer cannot surmise the ethnicity/ nationality of the enemy fighter pilots," and it spends too much time on the "emotional struggle" of its characters.  SLAPP Opp. 12.  This ignores the cases

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

discussed above, and the clear guidance of the California Supreme Court and Ninth Circuit that subjective judgments about the seriousness or value of a particular expressive work are irrelevant to the application of the SLAPP statute.  E.g., FilmOn.com Inc. v. DoubleVerify Inc., 7 Cal.5th 133, 151 (2019) (public interest test is "not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction"); Hilton v. Hallmark Cards, 599 F.3d 894, 905 (9th Cir. 2010) ("the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice").

Nor does Sarver remotely support Plaintiff's narrowly-cabined interpretation of the SLAPP statute, which would limit its application to films about a specific, "real American conflict."  Cf. SLAPP Opp. 12.  Although the setting for the fictional film in Sarver was an actual conflict, the Ninth Circuit did not make that a requirement; it found public interest in the film's depiction of the "dangers" of military conflict and "soldiers' experiences"; and also because the film "reached widespread public audiences."  Sarver, 813 F.3d at 902.  The same is true of the Film here:  it is set against the backdrop of an actual U.S. military training program called "Top Gun";[2] it depicts the emotional tolls and physical dangers faced by military pilots, and the evolving role of pilots given the advent of drone warfare; and it reached widespread public audiences.  SLAPP Opp. 6-7.[3]  Moreover, courts routinely apply the SLAPP statute to claims arising from films that do not depict "real" events, but tell personal stories of fictional characters against a backdrop of

_____

[2] Ex. B at 00:43-01:01; Ex. C at 00:45-01:00; see also Yonay v. Paramount Pictures Corp., 2024 WL 2107721, at *7 (C.D. Cal. Apr. 5, 2024) (in copyright case involving Maverick, court noted that "Top Gun is a real fighter pilot school"); id. at 11.

[3] Indeed, there was much public commentary about the very aspects of the Film that Plaintiff mentions, i.e., the omission of an identifiable "villain," and the significant focus on the complex relationships and emotional experiences of Navy pilots engaged in exceptionally dangerous work.  E.g., Ex. F at 17, 19, 24, 30, 45.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  wider social themes, some serious and some not.  E.g., Kronemyer v. IMDB, 150

2  Cal.App.4th 941, 949 (2007) ("the motion picture My Big Fat Greek Wedding was

3  a topic of widespread public interest"); Woloszynska v. Netflix, Inc., 2023 WL

4  7166828, at *3 (N.D. Cal. Oct. 30, 2023) (SLAPP statute applied to claims based on

5  use of plaintiff's photograph in fictional TV program that "encompasses topics

6  including crime, death, abuse, and grief, that are clearly issues of public interest");

7  Estate of B.H. v. Netflix, Inc., 2022 WL 551701, at *1 (N.D. Cal. Jan. 12, 2022)

8  (public interest found where plaintiff alleged TV show at issue "was a 'huge hit'

9  and 'cultural event'" and the program broadly addressed "societal ills" like "youth

10  suicide, depression, and sexual assault").[4]

11    Second, Plaintiff's heavy reliance on Dyer v. Childress, 147 Cal.App.4th

12  1273 (2007), is misplaced.  Most notably, Dyer effectively was superseded by the

13  California Supreme Court's recent holding that the SLAPP public interest test is

14  met if the challenged speech "may reasonably be understood to implicate a public

15  issue, even if it also implicates a private dispute."  Geiser v. Kuhns, 13 Cal.5th

16  1238, 1253 (2022).  But even prior to Geiser, courts criticized Dyer[5] and limited the

17  

18    [4] Plaintiff is not assisted by M.G. v. Time Warner, Inc., 89 Cal. App. 4th 623
(2001), Doe v. Gangland Productions, Inc., 730 F.3d 946 (9th Cir. 2013), and Terry

19  v. Davis Community Church 131 Cal. App. 4th 1534 (2005) (SLAPP Opp. 9-10),

20  all of which applied the SLAPP statute.  None of these cases suggest that speech
about less serious subjects – or addressing serious topics in different ways – is

21  excluded from the statute's broad scope.  Plaintiff creates a false dichotomy by

22  ignoring cases finding that films about much-less-weighty topics met the public
interest test.  E.g., Kronemyer, 150 Cal.App.4th at 949; Daniel, 8 Cal.App.5th at

23  386.

24    [5] The court in Tamkin found Dyer incorrectly "focused on the lack of a
discernable public interest in Dyer's persona," whereas "the statutory language

25  compels us to focus on the conduct of the defendants"; there is "no requirement in

26  the anti-SLAPP statute that the plaintiff's persona be a matter of public interest."
Tamkin, 193 Cal.App.4th at 144.  The Tamkin court also noted that Dyer did not

27  address whether there was a public interest in the creative process underlying the

28  film, which independently could satisfy the test.  Id.

REPLY ISO SPECIAL MOTION TO STRIKE
4881-3338-0039v.1 0012079-000393

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ruling to its unusual facts, where the plaintiff had <u>no</u> connection to the content of the film at issue but merely was known to the screenwriter, who named a character after him as "an inside joke." <u>Dyer</u>, 147 Cal.App.4th at 1277.[6]

Importantly, <u>Dyer</u> never has been applied where, as here, the allegedly actionable reference to the plaintiff is related to a work's content. Here, Plaintiff claims his portrayal is in a "key" scene in the Film, which is the "focal point of the storyline." SLAPP Opp. 3. By seeing the Photograph depicting the 1986 Top Gun class (including Plaintiff's character, Wolfman), two of Maverick's trainees learned that classmate Rooster is Goose's son. That connection to the events depicted in the Original Film, namely, Goose's death in a flight exercise, is central to the Film's depiction of the emotional toll faced by military personnel engaged in high-risk assignments, including the impact it can have on their interpersonal relationships and the exercise of their military duties. SLAPP Mot. 3-4.[7]

Plaintiff's strained and contradictory attempts to deny the connection between the Film's plot and its inclusion of him as Wolfman in the class photo (e.g.,

---

[6] <u>E.g.</u>, <u>Gangland</u>, 730 F.3d at 957 (distinguishing <u>Dyer</u> on this basis); <u>Sarver</u>, 813 F.3d at 902 (finding <u>Dyer</u> inapposite where alleged use of plaintiff's identity was relevant to film's story); <u>Brodeur v. Atlas Entertmt.</u>, 248 Cal.App.4th 665, 676-77 (2016) (same; also finding <u>Dyer</u> inapplicable where plaintiff is a public figure).

[7] Plaintiff's remaining cases are all distinguishable; none of them involved the content of popular expressive works, or even widely disseminated speech. SLAPP Opp. 1, 5. In <u>Rivero v. American Fed. of State, County and Muni. Empl'ees, AFL-CIO</u>, 105 Cal.App.4th 913, 916-17, 924-25 (2003), the claims arose from a union's statements about the demotion of a janitorial supervisor. <u>Commonwealth Energy Corp. v. Investor Data Exchange</u> arose from a telemarketing pitch promoting a company "to a very few number of people." 110 Cal.App.4th 26, 34 (2003). And <u>Weinberg v. Feisel</u>, 110 Cal.App.4th 1122, 1132 (2003), involved a private dispute among a "small group" of coin collectors.

Plaintiff's other citation to <u>Weinberg,</u> for the proposition that publishing "private information" cannot make that information a matter of public interest (SLAPP Opp. 6), is a <u>non</u> <u>sequitur</u>. This case does not involve any "private" information, and the content of the Film was of public interest. SLAPP Mot. 3.

REPLY ISO SPECIAL MOTION TO STRIKE
4881-3338-0039v.1 0012079-000393

SLAPP Opp. 11-16) mirror the arguments that the <u>Brodeur</u> court rejected.  There, the plaintiff similarly argued that a passing reference to him in the film "American Hustle" had "'no bearing' on the film's depiction of American culture during the 1970's, and that there is no 'connection' between the topics of the film and that scene." 248 Cal.App.4th at 677.  But the court refused "to dissect the creative process," finding it sufficient that the reference to Brodeur helped evoke the era in which "American Hustle" took place.  <u>Id.</u>  The use of the Photograph depicting the "Top Gun" pilots from the Original Film – including Plaintiff, as Wolfman – is even more related to the storyline in Maverick.  That connection is more than sufficient to satisfy the public interest test.  <u>Id.</u>  <u>See</u> <u>also</u> <u>Woloszynska</u>, 2023 WL 7166828, at *4 (SLAPP statute applied to plaintiff's misappropriation claim arising from use of photograph depicting her in a fictional TV show, because the "Photograph helps tell the story and advances the Show's themes").[8]

  <u>Finally</u>, Plaintiff cannot evade the SLAPP statute by arguing that his claims "arise out of a commercial transaction" simply because he had a contract with Paramount involving the Original Film.  SLAPP Opp. 17.  It was clearly established decades ago that "conduct alleged to constitute breach of contract may also come

---

[8] Plaintiff's assertion that he did not "insert himself into a public debate" is irrelevant.  SLAPP Opp. 13.  Such conduct may be <u>sufficient</u> to show a public interest, but is not a <u>requirement</u>.  <u>See</u> <u>Taus v. Loftus</u>, 40 Cal.4th 683, 704 n.8, 712 (2007) (explaining SLAPP "public interest" test is different from "public figure" standard in defamation law; the former encompasses speech involving plaintiffs who do not seek out attention).  Even the <u>Dyer</u> court recognized this principle, acknowledging the test was met in <u>M.G.</u> and <u>Terry</u> even though the plaintiffs were private individuals and their connection to broader matters of public interest was "not of [their] making."  <u>Dyer</u>, 147 Cal.App.4th at 1282.  <u>See</u> <u>also</u> <u>Gangland</u>, 730 F.3d at 956 (the "proper inquiry is whether the <u>broad topic</u> of defendant's conduct … is connected to a public issue or an issue of public interest") (emphasis added).  In any event, given <u>his own allegations</u>, Plaintiff cannot credibly dispute that he is a person in the public eye, and he voluntarily participated in Top Gun, which relates to the scene in Maverick.  SLAPP Mot. 3, 7; Cmplt. ¶¶ 25-30.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

within constitutionally protected speech or petitioning"; the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's <u>activity</u> that gives rise to his or her asserted liability." <u>Navellier v. Sletten</u>, 29 Cal.4th 82, 92 (2002) (original emphasis).  Here, the conduct by Paramount that is the asserted basis for all of Plaintiff's claims (including four tort claims) is the use of the Photograph in the Film; that falls squarely within the SLAPP statute's protections.  <u>See</u> SLAPP Mot. 5.[9]

Consistent with this principle, courts have applied the SLAPP statute to analogous right-of-publicity and related claims arising from the content of expressive works, regardless of whether the plaintiff had a contractual relationship with the defendant.  <u>E.g.</u>, <u>Daniel</u>, 8 Cal.App.5th at 387-88, 393 (SLAPP statute applied to claims arising from filmmaker's online posts about plaintiff in connection with movie in which plaintiff performed after signing a contract regarding use of his image); <u>Woloszynska</u>, 2023 WL 7166828, at *2-4 (same for misappropriation claim based on use of photograph depicting plaintiff in a fictional TV show, where the parties disputed whether use was covered by a consent agreement).  The SLAPP statute applies here for all of the same reasons.[10]

_____

[9] <u>E.g.</u>, <u>Baral v. Schnitt</u>, 1 Cal. 5th 376, 396 (2016) (SLAPP statute applies to any claims for which "relief is sought based on allegations arising from activity protected by the statute").  When a claim would not exist "but for" defendant's speech or "conduct in furtherance of speech," the statute applies.  <u>E.g.</u>, <u>Navellier</u>, 29 Cal. 4th at 90 (claims arose from protected activity because "but for [that activity], plaintiffs' present claims would have no basis"); <u>Gangland</u>, 730 F.3d at 955 (rejecting argument that lawsuit was about "breach of promise" rather than speech; "[b]ut for the broadcast and Defendants' actions in connection with that broadcast, Plaintiff would have no reason to sue").

[10] The only case Plaintiff cites on this point, <u>Duncan v. Cohen</u>, 2008 WL 2891065 (N.D. Cal. July 22, 2008), is inapposite.  There, the claims did not arise from the <u>content</u> of an expressive work, but from the use of the plaintiff's name "to solicit funds" to make a film.  <u>Id.</u> at *2.  <u>Duncan</u> also has been superseded by more recent decisions holding that production conduct falls within the SLAPP statute.  <u>E.g.</u>, <u>Ojjeh v. Brown</u>, 43 Cal.App.5th 1027, 1032 (2019).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

III.     **PLAINTIFF HAS NOT SHOWN A PROBABILITY OF PREVAILING.**

A.     **Plaintiff's Misappropriation Claims Fail.**

    1.     **The First Amendment Bars Plaintiff's Claims.**

      The SLAPP Motion detailed the consistent case law across the country holding that right-of-publicity claims based on the content of expressive works are constitutionally barred.  SLAPP Mot. 7-10.  As another court in this district stated, the "First Amendment precludes right-of-publicity claims concerning 'expressive works, whether factual or fictional.'"  Hollywood Unlocked, Inc. v. Lifetime Entm't Servs., LLC, 2021 WL 3265037, at *3 (C.D. Cal. Mar. 17, 2021) (quoting Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002)).  Accord de Havilland v. FX Networks, 21 Cal.App.5th 845, 858 (2018) ("[c]ourts long ago recognized that a celebrity's right of publicity does not preclude" use in expressive work; "[o]nly the use of an individual's identity in advertising infringes on the persona.") (citation omitted).  Plaintiff simply ignores this part of the SLAPP Motion, and does not even mention most of the cited cases.

      Instead, he tries to rely on Zacchini v. Scripps–Howard Broadcasting Co., 433 U.S. 562 (1977), which is inapposite.  Zacchini, a "human cannonball" performer, sued a television station that broadcast his "entire act," which he claimed made the public "less willing to pay to see" it live.  433 U.S at 563-64, 575, 578.  In a 5-4 decision allowing the case to proceed, the Supreme Court majority repeatedly emphasized that the station showed Zacchini's "entire performance," which went "to the heart of [his] ability to earn a living as an entertainer" given the unique nature of his work.  Id. at 576 (emphasis added).  It expressly noted that if the station had "merely reported" about Zacchini's act, "with or without showing his picture … we would have a very different case."  Id. at 570 (emphasis added).[11]

_____

    [11] The majority did not apply constitutional strict scrutiny, which subsequent cases have held is required for any claims arising from the content of expressive

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The California Supreme Court later emphasized, "Zacchini was not an ordinary right of publicity case:  the defendant television station had appropriated the plaintiff's entire act, a species of common law copyright violation." Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 401 (2001) (emphasis added). The Sixth Circuit similarly observed that courts "must look beyond Zacchini[,]" which was "very 'narrowly drawn' in that it involved the wholesale reproduction of a live 'entire act.'" ETW Corp. v. Jireh Publ'g, 332 F.3d 915, 956-957 (6th Cir. 2003) (finding First Amendment barred golfer Tiger Woods' misappropriation claims arising from unauthorized use of his likeness in a painting). Accord Cardtoons v. MLBPA, 95 F.3d 959, 962 (10th Cir. 1996) (claims based on use of athletes' images in expressive works were constitutionally barred; distinguishing Zacchini).

Here, Plaintiff's image as Wolfman appears in the Film for a few seconds, in a group Photograph.  This is not remotely similar to the situation in Zacchini, where the broadcast decimated the market for the plaintiff's extremely unique kind of performance.  See Guglielmi v. Spelling-Goldberg Prods., 25 Cal.3d 860, 875 (1979) (Bird, C.J., concurring) ("in balancing the interests at stake, the Supreme Court observed that respondents had not merely made some use of Zacchini's name and likeness, but had usurped Zacchini's entire act").[12]

---

works. E.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992) (content-based speech regulation is subject to the highest level of scrutiny).

[12] Plaintiff's other cases are inapposite.  SLAPP Opp. 19 (Newcombe v. Adolf Coors Co., 157 F.3d 686, 689 (9th Cir. 1998) (beer commercial); Hilton, 599 F.3d. at 899 (use of Paris Hilton's image on greeting cards); In re NCAA Student-Athlete Name & Likeness Licensing Litigation, 724 F.3d 1268, 1276 (9th Cir. 2013) (video game where players "manipulate the characters in the performance of the same activity for which they are known in real life")).  The Ninth Circuit has distinguished these cases from cases involving the use of a likeness in an expressive work.  See Sarver, 913 F.3d at 905-906; Maloney v. T3Media, Inc., 853 F.3d 1004, n.13 (9th Cir. 2017).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's attempt to distinguish Sarver also falls flat.  The Ninth Circuit applied constitutional strict scrutiny, relying on post-Zacchini authority, in finding that right-of-publicity claims involving expressive works are presumptively unconstitutional.  813 F.3d at 903, 905-906.  In this context, and in distinguishing Zacchini, the Court referenced Sarver's status as a private figure (and the absence of any impact on his ability to earn a living) in finding there was no "compelling interest" sufficient to overcome this presumptive unconstitutionality.  Plaintiff ignores this rationale, inaccurately concluding that Sarver's private-figure status means that every misappropriation claim involving a celebrity must be immune from a First Amendment challenge.  E.g., SLAPP Opp. 20.  That grossly misreads Sarver, which squarely held that films like "The Hurt Locker" are not "commercial" speech, and made clear that without the kind of compelling interest identified in Zacchini, right-of-publicity claims based on expressive works are constitutionally barred.  Id. at 905-906.  It also ignores the facts here, which do not involve the use of Plaintiff's "entire act," product merchandizing, or advertising, which the Sarver panel distinguished.  And it ignores the panel's question whether California's right-of-publicity law applies to expressive works at all, which cites to the California Supreme Court's holding in Guglielmi that the First Amendment barred heirs of famed actor Rudolph Valentino from pursing a right-of-publicity claim based on a fictional film about him.  Id. at 906 n.9 (citing Guglielmi, 25 Cal.3d at 869).

Subsequently, in de Havilland, the California Court of Appeal unequivocally rejected the notion that Sarver's rationale only applies to private figures:  it held that the First Amendment barred famed actress Olivia de Havilland's right-of-publicity claims based on the depiction of her in a TV show, even though she is a "living legend" of Hollywood's Golden Age and "an internationally-known celebrity."  21 Cal. App. 5th at 869.  Instead, the court held that the program was "as constitutionally protected as was the film in Sarver.'"  Id. at 860.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As discussed above, Plaintiff's image appears in the Film for approximately four seconds, in a group photograph providing a visual reference to the Original Film.  The Film is plainly not a "commercial transaction," nor was this use a wholesale usurpation of "an entire performance," akin to the highly unusual circumstances and narrow holding in Zacchini.  Under controlling authority, Plaintiff's misappropriation claims are constitutionally barred.[13]

**2.    The Transformative Use Defense Bars These Claims.**

California's transformative use doctrine is an independent basis for striking Plaintiff's right-of-publicity claims.  See SLAPP Mot. 10-12; de Havilland, 21 Cal.App.5th at 862-63.  Plaintiff incorrectly assumes that this defense only applies to the use of an altered likeness.  SLAPP Opp. 21-22; MTD Opp. 19 ("[t]his is not an avatar, cartoon depiction, robot, or video game character").  But "that is not the test."  Woloszynska, 2023 WL 7166828, at *7 (plaintiffs "improperly focus[ed] on whether the Photograph [with their image] itself was transformed").  Instead, the question is "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction … of the celebrity is the very sum and substance of the work in question."  Id. at *6 (quoting Comedy III, 25 Cal.4th at 406).

In Comedy III, the Court held that the defendant's work was not sufficiently transformative because it consisted entirely of "lithographs and T-shirts bearing a likeness of The Three Stooges," so their images were literally "the very sum and substance of the work."  25 Cal.4th at 393, 406.  But that does not mean that only distorted or altered "likenesses" can be protected as a transformative use.  To the

---

[13] Plaintiff's prior contractual relationship with Paramount has no bearing on the application of the First Amendment to his right-of-publicity claims.  E.g., Vijay v. Twentieth Century Fox Film Corp., 2014 WL 5460585, at *5 (C.D. Cal. Oct. 27, 2014) ("no law indicates that ... [a contractual] agreement would render inapplicable a constitutional defense to a tort cause of action").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contrary, in <u>de Havilland</u>, this defense protected the defendants' depiction of a famous actress in their docudrama, even though they "wanted to make the appearance of [de Havilland] as real as possible." 21 Cal.App.5th at 863.  The appellate court found that de Havilland's likeness was merely one element among many in a program whose "marketability and economic value does not derive primarily from [de Havilland's] fame but rather comes principally from ... the creativity, skill, and reputation of [the show's] creators and actors." <u>Id.</u> at 864.

The same is true here.  Plaintiff appeared for roughly <u>four seconds</u> of a Film lasting more than <u>two hours</u>.  The Film indisputably derives its marketability primarily from megastar Tom Cruise, and the contributions of many on-screen performers and off-screen creators.  <u>See</u> SLAPP Mot. 11.  As in <u>de Havilland</u>, the transformative use doctrine applies here because Plaintiff's image is merely one of the "raw materials" from which Maverick "is synthesized." <u>Id.</u> at 864 (quoting <u>Comedy III</u>, 25 Cal.4th at 406).[14]

Notably, courts have applied this defense in rejecting misappropriation claims arising from expressive works even where the plaintiffs had a contractual relationship with the defendant.  For example, in <u>Vijay</u>, an actor hired as an extra on the film "Titanic" alleged that he was used in a more prominent "principal performance" role that took more time to film, but he only was paid his original extra rate.  2014 WL 5460585, *1 (C.D. Cal. Oct. 27, 2014).  The court dismissed his right-of-publicity claims with prejudice; applying the transformative use test, the court held that the plaintiff's "appearance is but a minuscule portion of [Titanic], heavily edited and synthesized with significant artistic expression." <u>Id.</u> at *4.  The court rejected the argument that the plaintiff's "employment agreement … trumps the First Amendment defense," holding that in adjudicating a right-of-publicity

---

[14] In any event, the Photograph is used to invoke a <u>fictional</u> character – Wolfman – not Barry Tubb.  That itself makes it transformative.  SLAPP Mot. 11. Plaintiff has no response.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  claim based on the use of a likeness in the film, all that mattered was that the use

2  was transformative.  Id. at *5.

3      Woloszynska also is instructive.  Like this case, the plaintiffs challenged the

4  use of their image in a photograph that was shown briefly in a fictional television

5  show.  2023 WL 7166828, at *1.  The photograph had been taken by a casting

6  agency, and the parties disputed the scope of the accompanying consent agreement.

7  Id. at *4.  But the Woloszynska court found the transformative use defense barred

8  plaintiff's misappropriation claim as a matter of law, reasoning that "the Photograph

9  is a small part of a complex and elaborate television production, and the scenes in

10  the Show are transformed by music, dialogue, and film editing in the final product."

11  Id. at *7.  Because the photograph was "hardly the very 'sum and substance' of the

12  Show," but just one of many raw materials used in the broader creative process, it

13  did not matter that it presented a literal depiction of the plaintiffs.  Id.  Accord

14  Daniel, 8 Cal. App. 5th at 396-97 (striking right-of-publicity claims by actor in

15  fictional film based on filmmaker's online posts related to the movie; the

16  defendant's use of "two unaltered images" was transformative by virtue of "the

17  combination of the juxtaposed images with his commentary").

18      Just as in the cited cases, Plaintiff's exceedingly brief appearance in the Film

19  is merely one of the raw materials from which it is synthesized.  His right-of-

20  publicity claims are barred by the transformative use defense as a matter of law.[15]

21  ### 3.    Plaintiff's Claims Are Preempted By The Copyright Act.

22      The Ninth Circuit consistently has held that right-of-publicity claims are

23  preempted by the Copyright Act where, as here, they purport to arise from the

24

25  _____

26  [15] Plaintiff's bald assertion that this defense "is a question of fact" (SLAPP
   Opp. 22) is incorrect.  Courts routinely apply transformative use in granting early

27  dispositive motions.  E.g., de Havilland, 21 Cal.App.5th at 862 (SLAPP motion);
   Daniel, 8 Cal. App. 5th at 397 (same); Woloszynska, 2023 WL 7166828, at *7

28  (same); Vijay, 2014 WL 5460585 at *5 (motion to dismiss).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expressive use of a likeness that is captured in a copyrightable work.  <u>See</u> SLAPP Mot. 12-16 (citing, <u>inter alia</u>, <u>Maloney</u>, 853 F.3d at 1011-16; <u>Jules Jordan Video v. 144942 Canada</u>, 617 F.3d 1146 (9th Cir. 2010); <u>Laws v. Sony Music Entm't</u>, 448 F.3d 1134 (9th Cir. 2006)).  Plaintiff not only fails to even mention – let alone distinguish – these controlling authorities, he proffers the same arguments these decisions rejected.

His response to this dispositive defense boils down to his insistence that misappropriation claims "differ from copyright claims in that they deal with the use of Plaintiff's persona independent of the copyright."  SLAPP Opp. 23.  But the Ninth Circuit has <u>rejected</u> this argument.  <u>Maloney</u>, 853 F.3d at 1011.  The court distinguished situations where the plaintiff's likeness was used "non-consensually on merchandise or in advertising," but found that if the plaintiff's likeness is fixed "in a copyrighted artistic visual work" that the defendant used in an expressive work like a film, "a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his exclusive rights under the Copyright Act."  <u>Id.</u> at 1016.  In that situation – precisely the circumstance here – the claim is preempted.  <u>Id.</u>  <u>Accord</u> <u>Laws</u>, 448 F.3d at 1141 ("it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium"); <u>Jules Jordan</u>, 617 F.3d at 1154 (same).

Plaintiff does not try to distinguish these cases because he cannot.  Instead, he simply cites inapposite cases in which the defendants used the plaintiffs' names and likenesses to sell commercial products and services.  <u>E.g.</u>, <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1000 (9th Cir. 2001) (retailer used plaintiffs' names and likenesses to advertise clothing); <u>Timed Out, LLC v. Youabian</u>, 229 Cal.App.4th 1001, 1004 (2014) (use of models' photographs to market cosmetic surgery

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  business);[16] Midler v. Ford Motor Co., 849 F.2d 460, 462 (9th Cir.1988) (plaintiff's

2  voice imitated in car commercial); Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1097

3  (9th Cir. 1992) (same; snack food commercial).[17]  These decisions are entirely

4  irrelevant here, as explained in the SLAPP Motion and in the line of governing

5  cases Plaintiff ignores.  SLAPP Mot. 13-16.[18]

6        Finally, Plaintiff's hyperbolic assertion that preemption would legitimize

7  "steal[ing]" of people's images (MTD Opp. 24) has been rejected by the Ninth

8  Circuit.  The court explained in Maloney that its "holding strikes the right balance

9  _____

10       [16] Plaintiff disingenuously uses ellipses to omit language making clear that it

11  was the use of the photographs "to promote Defendants' business that constitutes
    the alleged misappropriation."  229 Cal.App.4th at 1013 (emphasis added).

12       [17] Plaintiff's MTD Opp. relies heavily on Brown v. Ames, 201 F.3d 654 (5th

13  Cir. 2000).  MTD Opp. 23-24.  The Ninth Circuit distinguished Brown on the

14  ground that it involved the use of the plaintiffs' likenesses in "merchandise," such
    as posters, catalogs, and tape and CD covers – not in an expressive work.  Maloney,

15  853 F.3d at 1012 n.6; Laws, 448 F.3d at 1141.  Plaintiff's other cited case, KNB

16  Enterprises v. Matthews, 78 Cal.App.4th 362 (2000), supports Paramount.  Id. at

17  374 ("a section 3344 claim is preempted … where an actor … with no copyright
    interest in the work seeks to prevent the exclusive copyright holder from displaying

18  the copyrighted work.")  Here, Plaintiff has no copyright interest in the Photograph;
    he alleges it was taken by Herb Ritts, who had a work-for-hire agreement with

19  Paramount.  SLAPP Mot. 13 n.13.  (The Ninth Circuit does not require the

20  defendant to be the copyright holder for preemption to apply.  See Jules Jordan, 617
    F.3d at 1154-55.)

21       Plaintiff's selective quotations from the Nimmer treatise overlook that it

22  "draw[s] a line between entertainment works used for their own sake and

23  commercial works used for advertising purposes ...."  1 Nimmer on Copyright §
    1.17 (2024); see also Maloney, 853 F.3d at 1018 (Nimmer would "limit[] liability to

24  misappropriation for the purposes of trade[, ...] which do not ordinarily include the
    use of a person's identity in … entertainment, works of fiction or nonfiction, or in

25  advertising that is incidental to such uses") (citing Nimmer § 1.17) (internal

26  quotations and citation omitted).

27       [18] The other copyright preemption cases that Plaintiff cites are inapposite;
    none of them involve right-of-publicity claims.  MTD Opp. 21-23; MTD Reply

28  n.18.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

by permitting" plaintiffs "to control the use of their names or likenesses on merchandise or in advertising, while permitting … the media" and others to use artistic works bearing their likenesses "for expressive purposes."  853 F.3d at 1019. In contrast, "Plaintiffs' position, … would give the subject of every photograph a de facto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright Act." <u>Id.</u>  Under controlling law, Plaintiff's misappropriation claims are preempted.  <u>See</u> SLAPP Mot. 12-16.

### 4.    Plaintiff's Contract Permitted The Use.

Plaintiff's misappropriation claims also fail because the parties' Agreement gave Paramount the right to use Plaintiff's likeness in connection with the Wolfman character.  SLAPP Mot. 17-18.

Plaintiff acknowledges, as he must, that the Agreement clearly and unambiguously states that Paramount "will be the sole and exclusive owner of all rights in the role or character portrayed by [Plaintiff], including name, likeness and distinctive characterizations thereof," and has "the right to merchandise and exploit such role or character, <u>and the right to use [Plaintiff's] name and likeness in connection therewith</u> …."  Pl. Ex. A at 7 ¶ A (emphasis added); MTD Opp. 28. Plaintiff does not dispute that this provision – which gives Paramount the right to use Plaintiff's likeness in connection with the Wolfman character – does <u>not</u> include language limiting this right to the Original Film.  <u>Id.</u>; SLAPP Mot. 17-18.

Instead, Plaintiff inaccurately asserts that "Paramount fails to note" <u>another</u> provision in the Agreement about uses of Plaintiff's "name, photograph, likeness, … in connection with advertising, publicizing, and exploiting the Picture…"  MTD Opp. 28.  Paramount <u>directly</u> addressed that provision, and explained why it has no application here:  it involves the use of Plaintiff's <u>own persona</u>, as made clear by the fact that the full sentence provides for the use of Plaintiff's "biography."  SLAPP Mot. 18.  Plaintiff disingenuously omits that word in quoting the Agreement, then

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

says nothing to respond to Paramount's explanation of the distinction between a use of Plaintiff's persona to promote the Original Film, and the use of his likeness in connection with the Wolfman character.  MTD Opp. 28.  He does not attempt to explain how Paramount's right to use Plaintiff's likeness to exploit the character could be limited to the Original Film, when the Agreement expressly allows the use, inter alia, in merchandise.  SLAPP Mot. 17-18.  His contract claim fails on this additional basis.[19]

### 5.   Other Defects Independently Bar Plaintiff's Statutory Claim.

Plaintiff's statutory claim suffers from two additional legal defects, neither of which Plaintiff can overcome.  SLAPP Mot. 19-20.  First, Section 3344 does not apply to the use of a likeness in an expressive work like a film.  Id. (citing de Havilland, 21 Cal.App.5th at 857; Sarver, 813 F.3d at 905, n.9).  Plaintiff's bald assertion that the Film is merely "a product" because it is "distributed for profit" and "distributed in physical formats" (MTD Opp. 14-15) ignores these cases, and black-letter law holding that expressive works do not get lesser First Amendment protections if they "are published and sold for profit …."  Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501 (1952).

On its face, Section 3344 is limited to the nonconsensual use of a likeness "on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services."  Cal. Civ. Code § 3344(a) (emphasis added).  All of the cases Plaintiff cites involved this kind of commercial use.  E.g., Midler, 849 F.2d at 462 (car advertisement); White v.

---

[19] Plaintiff says he only agreed "to render his services as an actor" in Top Gun (MTD Opp. 27), but he did not render any acting services in connection with the Film.  The use at issue is a group photograph that included Plaintiff as Wolfman, which is consistent with the Agreement's language giving Paramount the right to use Plaintiff's likeness as that character.  SLAPP Mot. 17.  His invocation of a standard provision requiring modifications to be in writing (MTD Opp. 28-29) is a non sequitur; no "modification" was required.

Samsung Electronics America, Inc., 971 F.2d 1395,  (9th Cir. 1992) (electronics ad); Comedy III, 25 Cal. 4th at 395 (t-shirts and lithographs).[20]  In de Havilland, the court distinguished cases involving products or advertising from cases involving the content of expressive works.  21 Cal.App.5th at 857-58.  Plaintiff does not cite a single case permitting a Section 3344 claim to arise from an expressive work.

Second, Plaintiff's Section 3344 claim fails because his likeness was shown in the Film only as part of a "definable group" depicted in the Photograph.  Civ. Code § 3344(b)(2); SLAPP Mot. 19.  It is irrelevant whether he is "identifiable" (MTD Opp. 16-17); the express language of the statute applies the "definable group" exemption to individuals who are "readily identifiable from a photograph" but are "represented in the photograph solely as a result of being present at the time the photograph was taken and have not been singled out."  Id. § 3344(b)(1)-(2).  It is plain from the Film itself that Plaintiff is not "singled out" in any way.  See Ex. B at 44:22-44:28; Ex. E.  Plaintiff concedes that neither he nor the Wolfman character are mentioned in the scene's dialogue (MTD Opp. 17); instead, the Film depicts Hangman looking at the picture and pointing to Goose, the character portrayed by Anthony Edwards.  Ex. B at 44:22-44:28.[21]

In short, Plaintiff only appears in the scene because he is part of the group, and his character was standing next to Cruise's character "at the time the photograph was taken."  Civ. Code § 3344(b)(2).  This falls squarely within the definable group exception.

_____

[20] His only other cases are software cases that did not involve Section 3344 claims.  See MTD Reply at n.22.

[21] Plaintiff's suggestion that it is "unclear" whether Hangman is referring to Wolfman (MTD Opp. 17) is absurd.  The point of the scene – which Plaintiff acknowledges (MTD Opp. 2-3) – is Hangman's realization that Goose is Rooster's father.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.     Plaintiff's Derivative Negligence Claim Is Meritless.**

Plaintiff effectively concedes that his negligence claim is entirely derivative of his misappropriation claims, and subject to dismissal on the same grounds. SLAPP Mot. 20.  He also fails to rebut Paramount's showing that this claim independently fails because his contract with Paramount for Top Gun did not create any tort duty of care regarding the use of his image in a different film 30 years later. E.g., Erlich v. Menezes, 21 Cal.4th 543, 551 (1999) ("conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law") (emphasis added).  Because Plaintiff does not, and cannot, identify any such duty "independent of the contract," his negligence claim fails.  See also Woloszynska, 2023 WL 7166828, at *7-8 (striking negligence claim because plaintiffs failed to show duty).

**C.     Plaintiff's Contract Claim Fails.**

Because Paramount's use of Plaintiff's image in character as Wolfman was authorized under the Agreement, this alone defeats Plaintiff's contract claim.  See Section III.A.4, supra; SLAPP Mot. 17-18.

Additionally, Plaintiff fails to identify any obligation in the Agreement that Paramount purportedly breached.  SLAPP Mot. 21.  This underscores that there is nothing in the Agreement that imposed any requirements or limitations on Paramount with respect to any film besides Top Gun.  MTD Opp. 27-29.  For there to have been a breach, the Agreement had to affirmatively prohibit Paramount from using Plaintiff's likeness in a sequel, but it does not.  A boilerplate provision stating that "modifications" must be in writing does not create any additional obligations. SLAPP Mot. 21.[22]  His breach of contract claim should be stricken.

---

[22] For the first time in his Opp., Plaintiff vaguely alludes to a provision of the SAG collective bargaining agreement that he claims required separate bargaining "after his agreement for original employment."  MTD Opp. 27.  But the Complaint does not mention the SAG agreement, or attach it; nor is it pleaded as a basis for

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**D.      Plaintiff Cannot Maintain An "Injunctive Relief" Claim.**

Plaintiff's "injunctive relief" claim is not a proper cause of action, and his request to enjoin the distribution of the Film is an unconstitutional prior restraint. SLAPP Mot. 21-22.  Plaintiff does not address these points at all, or cite any authority.  This deficient claim also should be stricken.

## IV.      CONCLUSION

Where, as here, it is clear from the work at issue that right-of-publicity and derivative claims are constitutionally barred, courts have not hesitated to dismiss the claims with prejudice.  For all the reasons discussed above and in the SLAPP Motion, Paramount respectfully requests that the Court strike Plaintiff's state-law claims with prejudice.

DATED: June 10, 2024                    DAVIS WRIGHT TREMAINE LLP
                                        KELLI L. SAGER
                                        DAN LAIDMAN
                                        SAM F. CATE-GUMPERT

                                        By: /s/ Kelli L. Sager
                                                    Kelli L. Sager
                                        Attorneys for Defendant
                                        PARAMOUNT PICTURES
                                        CORPORATION

---

any alleged claim.  See Cmplt. ¶¶ 113-124.  Plaintiff's newly-minted argument should be disregarded.  See Schneider v. CDCR, 151 F.3d 1194, 1197 (9th Cir. 1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (original emphasis).  Plaintiff chose not to assert any claim based on the SAG agreement because it does not support his position; moreover, any purported breach of the SAG agreement would likely be subject to an arbitration clause, and could only result in narrowly circumscribed remedies.  Plaintiff wanted to evade the SAG agreement by bringing meritless tort claims; he cannot invoke it now to try to save those claims.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for defendant Paramount Pictures Corporation, certifies that this brief contains 6,881 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 10, 2024             DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
SAM F. CATE-GUMPERT

By: /s/ Dan Laidman
                                  Dan Laidman
Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899