UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1417-GW-BFMx | Date | October 30, 2024 |
|---|---|---|---|
| Title | *Barry Tubb v. Paramount Pictures Corporation* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:

None Present    None Present

**PROCEEDINGS:** IN CHAMBERS - FURTHER TENTATIVE RULING AS TO UNDER-SUBMISSION DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION [C.C.P. § 425.16] [23]; and DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Fed. R. Civ. Proc. 12(b)(6)] [24]

Attached hereto is the Court's Further Tentative Ruling as to under-submission Defendant's Motions [23, 24]. The Court sets a hearing for November 7, 2024 at 8:30 a.m.

Initials of Preparer    JG

*Tubb v. Paramount Pictures Corp.*, Case No. 2:24-cv-01417-GW-(BFMx)
Further Tentative Ruling as to Under-Submission Motions to Dismiss (12(b)(6)) and Strike (anti-SLAPP)

## I. Introduction

Paramount Pictures Corporation ("Defendant") filed a "Special Motion to Strike" pursuant to California Code of Civil Procedure § 425.16 – California's "anti-SLAPP" statute – on April 18, 2024. The Court held hearings on July 1 and August 1, 2024. At the August 1 hearing, several things occurred which frame the Court's further thinking on Defendant's motion, as addressed herein. First, the parties agreed that the Court could consider – for purposes of both the pending anti-SLAPP motion and a pending Rule 12(b)(6) motion[1] – the applicable Screen Actors Guild Collective Bargaining Agreement ("SAGCBA"). Second, the Court confirmed that plaintiff Barry Tubb ("Plaintiff") was abandoning his first and seventh causes of action, for declaratory relief and injunctive relief, respectively. Third, the Court confirmed its initial view – offered both in advance of, and at, the July 1 hearing – that Plaintiff's second claim, a Lanham Act claim, could not proceed because of the impact of the governing "*Rogers* test," and would therefore be dismissed without leave to amend as a result of the Rule 12(b)(6) motion (a determination that the Court again confirms today). Fourth, the Court clarified that there were four remaining causes of action: for statutory misappropriation of publicity, in violation of California Civil Code § 3344; common law misappropriation of publicity; negligent hiring, supervision, and or retention of employees and agents; and breach of contract. Fifth, Defendant confirmed to the Court its view that its anti-SLAPP motion was of a type that should be judged by Rule 12(b)(6)-type standards/principles (as opposed to summary judgment-type standards/principles), and Plaintiff appeared to take no issue with that contention. The Court is now prepared to discuss the four remaining causes of action further in connection with the anti-SLAPP motion.

---

[1] With – as discussed herein – the Complaint's declaratory relief and injunctive relief claims abandoned, the Lanham Act claim dismissed with prejudice, and the remaining claims stricken pursuant to the anti-SLAPP motion, there is no continuing need to assess the Rule 12(b)(6) motion today (except insofar as the filed in connection with that motion have been incorporated the briefs on the anti-SLAPP motion).

1

To begin with, here, the Court sees no reason to waver[2] from its determination, first announced in the Tentative Ruling[3] issued June 28, 2024, *see* Docket No. 44, that Defendant has satisfied the first required step of the anti-SLAPP process.[4] Particularly given that the focus at step one is to be on the defendant's "activity" that gives rise to its asserted liability, *see, e.g.*, *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002), and the notion that the anti-SLAPP statute and the "public interest" concept resident therein are to be given a "broad" construction, *see, e.g.*, *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021), for the reasons addressed in that Tentative Ruling, the Court again confirms that position. *Compare Jordan-Benel v. Universal City Studios*, 859 F.3d 1184, 1189-93 (9th Cir. 2017).[5]

From there, however, having now reviewed the SAGCBA (and gotten agreement from the parties that the Court *may* review that document), the Court has to change its determination on the issue the Court *initially* believed would preclude Plaintiff from being able to demonstrate a reasonable probability of prevailing on the merits with respect to his four remaining claims. *See, e.g.*, *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002); *see also Langer v. Kiser*, 57 F.4th 1085, 1105 (9th Cir.

---

[2] The Court does note, however, that a decision that was addressed during the July 1, 2024 oral argument on the pending anti-SLAPP motion, and in the supplemental briefing following that oral argument, *Urbano v. Timberlake*, No. 2:22-cv-04512-FLA-E, is now set for a hearing before the Ninth Circuit on December 3, 2024. *See* https://www.ca9.uscourts.gov/calendar/monthly_sittings/143278.html (last visited October 29, 2024). However, the Court does not believe that *Urbano* is even slightly similar, on its facts, to this case, so it does not expect that the outcome of that appeal is likely to have an impact on the Court's decision herein.

[3] In the Tentative Ruling in footnote 4, the Court noted the pending en banc proceeding in *Martinez v. ZoomInfo Techs., Inc.*, 82 F.4th 785 (9th Cir. 2023), *reh'g en banc granted*, *vacated by*, 90 F.4th 1042 (2024), as possibly raising a number of issues that might affect the decisions herein. As of October 29, 2024, the Ninth Circuit's website still reflects *Martinez* as a "pending en banc case." *See* https://www.ca9.uscourts.gov/en-banc/ (last visited October 29, 2024). The latest update on that website reflected that the parties had 120 days from July 30, 2024, to file a status report on the topic of whether they had agreed to resolve the dispute out of court. *See* Docket No. 44, at pg. 4 of 44, n.4; *see also Batis v. Dun & Bradstreet Holdings, Inc.*, 106 F.4th 932, 935 (9th Cir. 2024) (discussing the pause in place in the *Martinez en banc* proceedings).

[4] In that initial Tentative Ruling, the Court also laid out the general principles and procedures for processing anti-SLAPP motions, particularly in a *federal* court. Familiarity with that discussion is presumed here.

[5] The Court notes that at least two California appellate decisions have criticized *Jordan-Benel* since its issuance. *See Norman v. Ross*, 101 Cal.App.5th 617, 648-51, 653-54 (2024); *Musero v. Creative Artists Agency, LLC*, 72 Cal.App.5th 802, 818-19 (2021).

2023). The initial interpretation the Court had of the parties' Memorandum of Agreement would be inconsistent with the SAGCBA, which is effectively incorporated into the Memorandum of Agreement by virtue of the latter's provision stating that it "is subject to . . . the provisions of any Collective Bargaining Agreement covering the services of Artist hereunder, and . . . the provisions thereof shall supersede the provisions of this Agreement to the extent that they are inconsistent therewith." Docket No. 1-1, Memorandum of Agreement's Additional Terms and Conditions, ¶ L. At the very least, the basis the Court had initially explained for why it believed Plaintiff could *not* demonstrate a reasonable probability of prevailing is now a more open question.

As Defendant reiterated at the August 1 hearing, however, the "consent" issue that formed the basis of the Court's initial view was only one basis Defendant had advanced for why it believed that Plaintiff would not be able to demonstrate a reasonable probability of prevailing at the second anti-SLAPP step. The Court must now – as it indicated at the August 1 hearing that it would – engage in considering *other* reasons Defendant had presented for that conclusion.

First, as a brief refresher for where we are at this point, as the Court noted in its initial Tentative Ruling, once it determines that Defendant has satisfied step one, at step two of the anti-SLAPP process the Court must assess whether Plaintiff can demonstrate a reasonable probability of prevailing on the merits of his claims. *See, e.g.*, *Equilon Enters.*, 29 Cal.4th at 67; *Langer*, 57 F.4th at 1105; *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). The Court again refers to its initial Tentative Ruling for its discussion of how the Ninth Circuit and California courts have understood that concept. Of most note here, while this only requires a plaintiff to demonstrate "minimal merit" for his claims, *see, e.g.*, *Olson v. Doe*, 12 Cal.5th 669, 679 (2022); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1130 (9th Cir. 2017), that standard does *not* apply when a defendant challenges only the "legal deficiencies" of a plaintiff's pleadings, not the claims' factual sufficiency, *see Herring Networks*, 8 F.4th at 1156; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir. 2018), and a defendant may also attempt to show that a plaintiff cannot demonstrate a reasonable probability of prevailing by focusing on a *defense* to a claim subject to anti-SLAPP analysis, *see, e.g.*, *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1020 (9th Cir. 2017); *De

3

*Havilland v. FX Networks, LLC*, 21 Cal.App.5th 845, 855 (2018).

If a defendant raises a legal defense to a plaintiff's claim in the course of an anti-SLAPP motion, some case law indicates that the burden is on the plaintiff to overcome that defense. *See* Weil & Brown et al., *Cal. Prac. Guide: Civ. Pro. Before Trial* (The Rutter Group 2023), ¶ 7:823, at 7(II)-52; *see also Birkner v. Lam*, 156 Cal.App.4th 275, 285 (2007) (indicating that a plaintiff can meet second-step burden where defenses are at issue by showing defenses are not applicable to case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses). Others support a conclusion that a defendant advancing an affirmative defense properly bears the burden of proof on the defense. *See, e.g.*, *Dickinson v. Cosby*, 17 Cal.App.5th 655, 683 (2017). The Ninth Circuit appears to have adopted the latter approach (and has explained that, as to some defenses – including the transformative use defense – the defendant must establish them "as a matter of law," whereas as to others the defendant merely must establish "a probability of prevailing"). *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015). Inconsistent descriptions of how this burden operates do not matter here, however, because the defense Defendant has established as to Plaintiff's two misappropriation claims is clear, and is not one that Plaintiff can overcome.

**II. Discussion**

    A.  <u>Statutory and Common Law Misappropriation of Publicity – Copyright Preemption</u>

In its initial conclusion that Plaintiff would not be able to demonstrate a reasonable probability of prevailing, the Court focused on the "lack of consent" element required for Plaintiff to prove up both common law and statutory misappropriation of publicity claims. *See, e.g.*, *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (noting "lack of consent" as element for claim of misappropriation of the right of publicity); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138-39 (9th Cir. 2006) (indicating that California statutory right of publicity claim includes elements of common law cause of action). As a result of the parties' supplemental briefing and the Court's consideration of the SAGCBA and its provision in paragraph 22(A) requiring "separate[] bargaining" for

4

"reuse of photography . . . in other pictures," the lack-of-consent issue is off the table, at least for the time-being.[6]

However, the Court also previously noted that Defendant had additionally argued that Plaintiff's two misappropriation claims are barred: by application of the First Amendment; by application of the "transformative use" defense; by application of Copyright Act preemption; because Plaintiff *has not* alleged a "use" within the meaning of Civil Code Section 3344; and because Plaintiff *has* alleged conduct falling within a "definable group" exemption to operation of Civil Code Section 3344. In its initial Tentative Ruling, the Court embarked on a discussion of the potential First Amendment impact on Plaintiff's claims, but ultimately avoided having to reach a conclusion on that topic because of the "lack of consent" issue. The Court again elects to avoid making a final determination on Defendant's First Amendment argument here because Defendant's copyright preemption argument clearly torpedoes these two claims. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 305 (9th Cir. 1992) ("[W]here we are able to resolve the case on nonconstitutional grounds, we ordinarily must avoid reaching the constitutional issue.").

As just-noted, one of the defenses Defendant raises in its attempt to demonstrate that Plaintiff cannot show a reasonable probability of prevailing on either his statutory or common law misappropriation of publicity claims is Copyright Act preemption. As explained below, Defendant is clearly correct based upon binding Ninth Circuit authority.

Copyright Act preemption involves a two-part test. *See Maloney*, 853 F.3d at 1010; *Laws*, 448 F.3d at 1137. "First, we decide 'whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.'" *Maloney*, 853 F.3d at 1010 (quoting *Laws*, 448 F.3d at 1137) (omitting internal quotation marks). "Second, assuming it does, we determine 'whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Id.* (quoting *Laws*, 448 F.3d at 1138). "Whether copyright preemption applies is a question of law . . . ." *Ryan v.*

---

[6] The Court might *ultimately* conclude that Defendant has presented the better understanding of the term "photography" as used in the SAGCBA, but for purposes of surviving step two of the anti-SLAPP process the Court believes Plaintiff has now done just enough on the lack-of-consent issue.

*Editions Ltd. W., Inc.*, 786 F.3d 754, 759 (9th Cir. 2015).

Defendant first asserts that there is no dispute that photographs fall within the subject matter of copyright. This is clearly true. *See* 17 U.S.C. § 101 (defining "[p]ictorial, graphic, and sculptural works" to include, among other things, photographs); *id.* § 102(a) (indicating that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated" and that "[w]orks of authorship" include "pictorial, graphic, and sculptural works"); *Maloney*, 853 F.3d at 1011.[7]

Defendant next argues that, through his misappropriation/right-of-publicity claims, Plaintiff "seeks to control [Defendant's] reproduction and display of a photograph," Docket No. 23, at 13:16-17, rights that are equivalent to the rights to display works to the public and to reproduce works. *See* 17 U.S.C. §§ 106 (1), (5) (giving the owner of copyright the exclusive right "to reproduce the copyrighted work in copies" and, in the case of pictorial, graphic, or sculptural works, "to display the copyrighted work publicly"). Again, Ninth Circuit precedent forecloses the question on this point in Defendant's favor. *See Maloney*, 853 F.3d at 1019 ("Plaintiffs . . . do not identify any use of their likenesses independent of the display, reproduction, and distribution of the copyrighted material in which they are depicted. We have held that under those circumstances, *none* of plaintiffs' claims [which included statutory and common law publicity-right claims] is qualitatively different from a copyright claim.") (citing *Laws*, 448 F.3d at 1143-44).

Plaintiff's response on the topic of Copyright Act preemption is limited. After his introductory discussion presenting the test for Copyright Act preemption, the section of his argument related to that topic encompasses a single paragraph. In that paragraph, he stakes out only one position – that it is Defendant's use of his *likeness/persona*, not the publication of the *photograph* itself, that serves as the alleged misappropriation.[8] He

---

[7] Plaintiff attempts to argue that what is at issue here is not a photograph, but his likeness/persona. For reasons addressed *infra*, that assertion holds no water under Ninth Circuit precedent.

[8] Even if the Court were to consider Plaintiff's Opposition to Defendant's Rule 12(b)(6) motion in connection with this issue, there is little additional argument in that brief. At most, Plaintiff connects his likeness/image theory to the "extra element" rule that traditionally can take a claim outside of Copyright

cites Nimmer on Copyright and *Timed Out, LLC v. Youabian, Inc.*, 229 Cal.App.4th 1001, 1012-13 (2014), in support of this position. Again, Plaintiff's argument is foreclosed by Ninth Circuit precedent. Under *Laws*, 448 F.3d at 1139, Plaintiff cannot attempt to avoid Copyright Act preemption by arguing that he is focused on protecting use of his image or persona, at least where the conduct he complains about is reflected in a fixed copyrightable work. *See also Maloney*, 853 F.3d at 1011-16; *Jules Jordan Video v. 144942 Canada*, 617 F.3d 1146, 1153-55 (9th Cir. 2010).

In its Reply, Defendant correctly notes that Plaintiff does not even attempt to address the Ninth Circuit authority recited above that considers, and rejects, Plaintiff's exact arguments. Specifically, in *Maloney*, the plaintiffs:

> maintain[ed] that photograph-based publicity-right claims categorically fall outside the subject matter of copyright because such claims protect an individual's persona, which itself cannot be fixed in a tangible medium of expression. [The defendant], by contrast, insists that the publicity right protects against the non-consensual use of one's name or likeness on merchandise or in advertising. [The defendant] would permit publicity-right claims to proceed in those contexts, but find preemption where, as here, a likeness has been captured in an artistic work and the work itself is being distributed for personal use.

*Maloney*, 853 F.3d at 1010. Faced with these competing arguments, the Ninth Circuit:

> conclude[d] that a publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness on merchandise or in advertising. But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Id.* at 1011; *see also id.* at 1016 ("In sum, our cases clarify that a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising. But where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for

---

Act preemption. However, given the Ninth Circuit authority discussed above, that rule makes no difference when this particular type of claim is at issue.

exercising his exclusive rights under the Copyright Act.").[9]

The plaintiffs in *Maloney* also sought to argue that "photograph-based publicity-right claims categorically fall outside the 'subject matter of copyright'" because they seek to protect likenesses or personas, not "any right in the particular photographic 'works of authorship.'"  *Id.*  Again, the Ninth Circuit squarely rejected this contention, distinguishing decisions such as *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), which Plaintiff also relies upon in part here.  See *Maloney*, 853 F.3d at 1011-14; *Aronson v. Dog Eat Dog Films, Inc.*, 738 F.Supp.2d 1104, 1114-16 (W.D. Wash. 2010). In doing so, it relied, with approval, on *Laws*' earlier handling of *Downing*.  See *Maloney*, 853 F.3d at 1013-14 ("*Laws* strongly implies that misuse of an individual's likeness is the 'basis' of a publicity-right claim when the name or image is exploited in advertising or on merchandise.  It correspondingly implies that one's likeness does not form the basis of a publicity-right claim when 'the tort action challenges control of the artistic work itself,' or involves 'the mere republication of the photograph.'") (quoting *Laws*, 448 F.3d at 1141-42).[10]  Ultimately, the Ninth Circuit summed up its approach in *Maloney* as follows:

> We believe that our holding strikes the right balance by permitting athletes to control the use of their names or likenesses on merchandise or in advertising, while permitting photographers, the visual content licensing industry, art print services, the media, and the public, to use these culturally important images for expressive purposes.  Plaintiffs' position, by contrast, would give the subject of every photograph a de facto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright Act.

*Maloney*, 853 F.3d at 1019.

Because the plaintiffs in *Maloney* sought to hold the defendant "liable for

---

[9] Having not addressed *Maloney* at all, Plaintiff has offered no reason why this case should be considered distinguishable from that precedent based on the "personal use" concept.  The Court is not aware of any precedent subsequent to *Maloney* expanding upon the meaning, or importance, of that brief phrase in this context.

[10] Subsequent district court decisions have recognized *Maloney*'s limitation of cases such as *Downing*.  See *Young v. NeoCortext, Inc.*, 690 F.Supp.3d 1091, 1101 (C.D. Cal. 2023); *see also Andersen v. Stability AI Ltd.*, 700 F.Supp.3d 853, 873 n.15 (N.D. Cal. 2023); *Sessa v. Ancestry.com Operations Inc.*, 561 F.Supp.3d 1008, 1031-33 (D. Nev. 2021), *reconsideration granted on other grounds*, 713 F.Supp.3d 997 (D. Nev. Jan. 17, 2024).

8

exercising rights governed exclusively by copyright law, the claims [were] preempted by section 301 of the Copyright Act." *Id.* Like in *Maloney*, in his briefing on this motion Plaintiff does "not contend that [his] likeness[ was] ever used on merchandise or in advertising," *id.*, notwithstanding his references to promotions at various points in his Complaint, *see* Complaint ¶¶ 80, 90, 94.[11] Plaintiff has not explained why *Maloney* does not dictate the answer in this case; indeed, as noted, he completely ignores the case.

Plaintiff's other attempts (in his Rule 12(b)(6) Opposition brief) to avoid this preemption determination do not do the trick. Reliance on a handful of cases – which make use of a celebrity's name, likeness, or voice – does not help Plaintiff because those uses were for the purpose of selling commercial products and services, or advertising, something that is not at issue here, and/or concerned the voice, etc., itself, rather than the voice as it was contained or reflected in a copyrighted medium. Indeed, the Ninth Circuit has already explained as much, as detailed above. *See Maloney*, 853 F.3d at 1012-16. Plaintiff's state court authority, *Timed Out* (which preceded *Maloney*), does not mention either *Laws* or *Jules Jordan*. In any event, *Timed Out* involved a situation where models' likenesses were being used "to promote Defendants' business," 229 Cal.App.4th at 1004, 1013, an exception that – as noted – does not apply here. Beyond not being binding, therefore, the Court concludes that *Timed Out* is not even persuasive on this topic.

While Plaintiff also contends that Defendant's alteration of the original photograph for purposes of inclusion in the film *destroyed* any copyright, Defendant correctly notes that Plaintiff offers no authority in support of that proposition, which would – as Defendant also observes – run headlong into principles involving creation of derivative works. Of tangential relation to that point, Defendant asserts that, for purposes of Copyright Act preemption, it does not matter *who* owns the copyright in the photograph (an issue Plaintiff does not raise in any event). Defendant is correct. *See Jules Jordan*, 617 F.3d at 1154-55 (rejecting district court's reasoning below when the lower court had held "that the right of publicity is preempted by the Copyright Act only when the distribution is made by the exclusive copyright holder" because "[w]hether a

---

[11] As Plaintiff makes no argument that his claims are saved from Copyright Act preemption because the photograph in question is used in a non-expressive, promotional, manner, the Court has no cause to consider Defendant's arguments, or its cited authority, on that topic.

claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of copyright," such that "[i]f a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired"); *see also Sessa v. Ancestry.com Operations Inc.*, 561 F.Supp.3d 1008, 1031 (D. Nev. 2021) ("The defendant need not own the copyright at issue for copyright preemption to apply."), *reconsideration granted on other grounds*, 713 F.Supp.3d 997 (D. Nev. 2024). *But see cf. Serova v. Sony Music Entm't*, 13 Cal.5th 859, 892 (2022) (observing, in rejecting copyright preemption argument, that "Serova is plainly not asserting ownership in copyrightable material associated with *Michael*. She sues as a consumer, not a purported rights holder claiming infringement. More than that, Serova's claims do not depend on who owns such rights."). As a result, whether Defendant owned the copyright in the photograph as a work-made-for-hire, or the copyright properly resides with the photographer, is of no import to the issue addressed here (even though, whoever the copyright holder is would certainly take a great deal of interest in Plaintiff's apparently-unsupported proposal that the photograph's copyright had been *destroyed*-by-alteration).

Because of the impact of Copyright Act preemption, Plaintiff cannot demonstrate a reasonable probability of prevailing on his statutory and common law misappropriation of publicity claims. *See Maloney*, 853 F.3d at 1020; *Aronson*, 738 F.Supp.2d at 1116. There is no need to consider the other reasons Defendant has identified for why it believes Plaintiff cannot demonstrate a probability of prevailing on these two claims. *See Maloney*, 853 F.3d at 1008 (noting that district court had granted anti-SLAPP motion based on Copyright Act preemption and declined to reach other defenses asserted by defendant); *id.* at 1020 n.17 (taking same approach as district court).

B. Breach of Contract

Defendant does not argue copyright preemption with respect to Plaintiff's breach of contract claim. As to that claim, as the Court has now already noted, the argument that the terms of the Memorandum of Agreement allowed Defendant to do what it did here is no longer persuasive once the Court considers the SAGCBA. Outside of that now-defunct (at least for present purposes) argument, Defendant's only anti-SLAPP step-two

argument was that the contract claim "fails because [Plaintiff] does not, and cannot, identify any obligation in the Agreement that Paramount purportedly breached." Docket No. 23, at 21:7-8. Of course, as is well-understood, a breach of contract claim under California law requires a plaintiff to demonstrate – not surprisingly – the defendant's *breach* of *the contract*, among other things. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020); *Salami v. Los Robles Reg'l Med. Ctr.*, 103 Cal.App.5th 1023, 1027 (2024).

In response, Plaintiff first "incorporate[d] by reference" his argument in opposition to Defendant's Rule 12(b)(6) motion "in support of [his] position that he can establish a reasonable probability of success on his breach of contract claim." Docket No. 36, at 24:4-8. As an initial matter, the Court considers this a strange approach, considering that Rule 12(b)(6) motions have nothing to do with whether a plaintiff can demonstrate a "probability of success," but are instead directed merely to the question of whether a plaintiff has successfully *stated a claim*. Beyond that point – at least in his anti-SLAPP Opposition – Plaintiff only argues that the Memorandum of Agreement's scope is "clear an[d] unambiguous" and "makes NO mention whatsoever of the use of Plaintiff's image and likeness in any sequels." *Id.* at 24:9-13.[12] Yet, if Plaintiff is correct in this regard, this leaves the Court with the obvious question: what, then, is the breach of that agreement? What *term(s)* has/have been breached? Plaintiff's subsequent statement that "the Agreement is clear that" his image could "not [be used in] *Top Gun: Maverick*" is fundamentally inconsistent with its earlier – and, upon the Court's review of the Memorandum of Agreement, correct – statement that the Memorandum of Agreement makes "NO mention whatsoever" of use in any sequel.[13]

Turning to Plaintiff's Rule 12(b)(6) Opposition on this claim (in light of Plaintiff's incorporation of that Opposition), Plaintiff repeats his position (in numerous

---

[12] The parties do not appear to disagree on this point. As Defendant states in its anti-SLAPP Reply brief, "there is nothing in the Agreement that imposed any requirements or limitations on Paramount with respect to any film besides Top Gun." Docket No. 40, at 19:18-20.

[13] In his briefing, Plaintiff asserted that "a plain reading" of the Memorandum of Agreement makes clear that Defendant's actions here constituted a breach. Docket No. 36, at 24:20-25:2. It is somewhat odd that a "plain reading" argument would not then cite to the language that, plainly-read, allegedly demonstrated as much.

11

ways) that the Memorandum of Agreement is limited to *Top Gun*. He then references the SAGCBA's provision that required a performer to bargain separately, after his original employment agreement, for the reuse of his Image. But he does not look to that provision as a basis for Defendant's breach. Instead, he uses it to make the point that "notwithstanding the fact that the sequel in this matter was not conceived at the time, neither Plaintiff nor Paramount could . . . have agreed to have his Image appear in a sequel." Docket No. 37, at 27:20-23. Whether or not Plaintiff is correct about that, how does the inability of two parties to reach an agreement on "Topic B" amount to a breach of an agreement covering "Topic A"?[14] Putting aside that conceptual problem, the breach of contract claim in Plaintiff's Complaint is plainly limited to a theory that Defendant breached the Memorandum of Agreement and its attached "Rider to Additional Terms and Conditions." *See* Complaint, ¶¶ 114-117, 119-124.

In short, Plaintiff perceives that he has been wronged, and has searched for a theory that would allow him to right that wrong. Breach of contract, however, at least so far as the Memorandum of Agreement is concerned, does not appear to be a viable host for that complaint.

At least initially, Plaintiff did not request an opportunity to amend his Complaint. *See Verizon Del. Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *see also Herring Networks*, 8 F.4th at 1160. However, his counsel raised the topic at the initial oral argument on the motion, *see* Docket No. 48, at 42:14-15, and Plaintiff now believes that, at a minimum, he "should be granted leave to amend [his] complaint to include the 1983 SAG Amendment." Docket No. 56, at 10:1-4. The Court is interested to hear from Defendant why such amendment should not be permitted.[15]

---

[14] In both his anti-SLAPP Opposition and his Rule 12(b)(6) Opposition (and again at the July 1, 2024 argument on this motion), Plaintiff refers/referred to a term of the Memorandum of Agreement that prohibits any modification of the Memorandum of Agreement, except in writing, and goes so far as to assert that Defendant "breached the terms of the Agreement because it did not obtain Plaintiff's approval to exploit his Image in 'a written instrument signed by each party' as required by Paragraph 10." Docket No. 37, at 29:5-8; *see also* Docket No. 50, at 8:13-16. But Plaintiff has not pled that there was a non-written *modification* of the Memorandum of Agreement (and Defendant has not *defended* by asserting that there *was* a modification, written or otherwise). Plaintiff's theory is simply that Defendant did something that it was not expressly permitted to do under *any* agreement.

[15] In its Reply briefs in support of its motions, Defendant asserted that "Plaintiff chose not to assert any claim based on the SAGCBA because it does not support his position; moreover, any purported breach of

### C. Negligent Hiring/Supervision/Retention

This leaves Plaintiff's fifth cause of action, for "Negligent Hiring, Supervision, and or Retention of Employees and Agents." Defendant argued that this claim is "entirely reliant on [Plaintiff's] right-of-publicity claims, and fails for the same reasons," Docket No. 23, at 20:9-10, and that it independently fails because Plaintiff had not pleaded any cognizable duty on Defendant's part.

In responding, Plaintiff again first incorporated his Opposition to Defendant's Rule 12(b)(6) motion. As to the topic of duty, Plaintiff looked only to the Memorandum of Agreement, following from the principle announced in *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1610 (2009), that a duty of care may arise by contract. He argues that "under the Agreement, Paramount owed a duty of care to Plaintiff to ensure the use of his image and likeness was in accordance with the Agreement." Docket No. 36, at 26:6-7.[16]

In Reply, Defendant argues that Plaintiff "effectively concede[d]" that the negligence claim was entirely derivative of his misappropriation claims and should likewise be dismissed, and also argues that Plaintiff cannot locate a tort duty of care solely by looking to the Memorandum of Agreement, citing *Erlich v. Menezes*, 21 Cal.4th 543 (1999), for the principle that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Id.* at 551. *See also BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal.App.4th 848, 853 (2004) ("The only allegations of defendants' misconduct are based on their alleged breach of contract, despite plaintiff's gloss that in doing so, they breached their duties. This is an improper attempt to recast a breach of contract cause of action as a tort claim. Nor is there any social policy that would demand resort to tort remedies."). Here, Plaintiff clearly grounds his perceived tort duty-of-care in nothing more than the contract itself. *See* Docket No. 36, at 26:6-7

---

the SAGCBA may be subject to an arbitration clause, and could only result in narrowly circumscribed remedies." Docket No. 40, at 20:25-28; 39, at 20:25-27; *see also* Docket No. 57, at 11 n.10; Docket No. 60, at 10:4-11.

[16] Plaintiff's Rule 12(b)(6) Opposition presents only these exact same contentions. *See* Docket No. 37, at 25:9-26:13. There is therefore no need to consider that Opposition separately here, despite Plaintiff's incorporation of that Opposition by reference.

("[U]nder the Agreement, Paramount owed a duty of care to Plaintiff to ensure the use of his image and likeness was in accordance with the Agreement."); Docket No. 37, at 26:5-6 (same).

Irrespective of where the line is drawn in the potential tension between the rule mentioned in *Mintz* and cases following the rule set forth in *Erlich*, as noted above in connection with the breach of contract claim, Plaintiff has not located any term or duty in the Memorandum of Agreement respecting Defendant's use of Plaintiff's image outside of *Top Gun*. Beyond that, a review of the Complaint's fifth cause of action bears out Defendant's contention – and Plaintiff's silence in response to the assertion – that the claim is based upon Plaintiff's misappropriation allegations (which the negligence claim follows in the Complaint), not on his contract claim (which the negligence claim precedes). *See* Complaint ¶ 103. For each of these reasons, it appears to the Court that Defendant is correct – Plaintiff cannot establish a probability of prevailing on this cause of action.

### III. Overall Conclusion

The Court is very likely to grant Defendant's anti-SLAPP motion in its entirety, confirms that it is granting Defendant's Rule 12(b)(6) motion as to Plaintiff's Lanham Act claim without leave to amend, and notes Plaintiff's abandonment of his declaratory relief and injunctive relief claims. The only conceivably open question on Defendant's anti-SLAPP motion is whether Plaintiff should be given leave to amend his breach of contract claim.